1  TAMARA REID, NSB #9840
   HOLLAND & HART LLP
2  5441 Kietzke Lane, Second Floor
   Reno, NV 89511
3  T: (775) 327-3000 / Fax: (775) 786-6179
   Email treid@hollandhart.com
4
   TERRY GROSS
5  ADAM BELSKY
   GROSS BELSKY ALONSO LLP
6  One Sansome Street, Suite 3670
   San Francisco, California 94104
7  Telephone:  (415) 544-0200
   Facsimile:  (415) 544-0201
8  Email: terry@gba-law.com
   *Attorneys for Plaintiff*
9  BLACK ROCK CITY LLC

10         **THE UNITED STATES DISTRICT COURT**

11           **FOR THE DISTRICT OF NEVADA**

12

13

| | |
|---|---|
| BLACK ROCK CITY LLC | **CASE NO.:** |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |
| PERSHING COUNTY BOARD OF COMMISSIONERS | |
| and | |
| PAT IRWIN, in his official capacity as Chairman, Pershing County Board of Commissioners, | |
| and | |
| CAROL SHANK, in her official capacity as Vice-Chairman, Pershing County Board Of Commissioners, | |
| and | |
| DARIN BLOYED, in his official capacity as a Pershing County Commissioner, | |
| and | |
| JAMES SHIRLEY, in his official capacity as District Attorney, Pershing County, Nevada, | |

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

and

RICHARD MACHADO, in his official
capacity as Sheriff, Pershing County, Nevada

Defendants.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

## I.    <u>INTRODUCTION</u>

1.     Plaintiff Black Rock City LLC ("BRC") brings this complaint, by and through counsel, against the Pershing County Board of Commissioners ("Board"), Pat Irwin, in his official capacity as Chairman, Pershing County Board of Commissioners ("Irwin"), Carol Shank, in her official capacity as Vice-Chairman, Pershing County Board of Commissioners ("Shank"), Darin Bloyed, in his official capacity as a Pershing County Commissioner ("Bloyed"),  James Shirley, in his official capacity as District Attorney, Pershing County, Nevada ("Shirley"), and Richard Machado, in his official capacity as Sheriff, Pershing County, Nevada ("Machado"), for, inter alia, declaratory and injunctive relief against the enforcement of preempted state laws, a local ordinance, and a state court judgment in violation of BRC's rights under federal law and its free speech and due process constitutional rights, under the Supremacy Clause and First, and Fourteenth Amendments to the U.S. Constitution, as well as for breach of contract.

2.     BRC operates the well-known Burning Man Event (also referred to herein as the "Burning Man Event" or the "Event"), which has been held since 1991 in Black Rock Desert, Pershing County, Nevada (also referred to herein as the "County").

3.     As the Burning Man website explains, over 50,000 people attend the Event each year "to be part of an experimental community, which challenges its members to express themselves and rely on themselves to a degree that is not normally encountered in one's day-to-day life."  *See* http://www.burningman.com/whatisburningman/.  The Burning Man website continues: "Art is an unavoidable part of this experience, and in fact, is such a part of the experience that Larry Harvey, founder of the Burning Man project, gives a theme to each year, to encourage a common bond to help tie each individual's contribution together in a

meaningful way.  Participants are encouraged to find a way to help make the theme come alive, whether it is through a large-scale art installation, a theme camp, gifts brought to be given to other individuals, costumes, or any other medium that one comes up with."  *Id.*  In short, one of the Event's primary purposes is to encourage communication and individual expression through art and other media, all directed towards exploring a common theme.

4.     Except for 2007, when it took place on private land, the Event has taken place for twenty-one years on federal land administered by the Bureau of Land Management ("BLM"), an agency of the U.S. Department of the Interior, and since 1992 pursuant to permit issued by the BLM (the "BLM Permit").  The BLM Permit, issued under authority of and pursuant to standards set by federal law, specifies BRC's rights and obligations for a wide variety of activities, including public safety issues including, among others, security, fire protection, and emergency services, consumption of liquor, and protection of minors.  The BLM Permit currently in force requires BRC to pay BLM's actual costs, including costs incurred by other state and local agencies in providing services, and directs BRC to contract with the Pershing County Sheriff's Office ("Sheriff's Office") for law enforcement services as well as other relevant state and local agencies, as BRC has done.

5.     In 2004, the County enacted a festival ordinance (the "Festival Ordinance") purportedly pursuant to the direction of a Nevada state law, Nev. Rev. Stat. §244.354 (the "Festival Statute").  BRC has maintained that the Festival Ordinance could not constitutionally be applied to the federally-permitted Burning Man Event, and prior to the events giving rise to this lawsuit it never was so applied.  Rather, BRC and the County, in order to avoid litigation on whether the Festival Ordinance was preempted for events on federal land pursuant to a federal permit or whether the Festival Ordinance violated the First Amendment, entered into agreements in 2005 and 2011 that provided that the County would not apply the Festival Ordinance to the Burning Man Event, and that BRC would make annual payments to the County and local charities.  The County committed in these agreements that it would not seek to apply the Festival Ordinance to the Burning Man Event in the future.

6. All of that has changed. Recent actions by the Defendants have compromised the integrity of the BLM permitting process, subjected BRC to overlapping and potentially conflicting state and federal standards regarding conduct of the Festival, and imposed new unnecessary, unlawful, and potentially ruinous fees on BRC, threatening BRC's ability to conduct Burning Man in 2013 and going forward. These actions are unlawful for five principal reasons.

7. First, the Defendants have denied BRC its federal rights under the BLM Permit by seeking to apply conflicting and preempted State law in derogation of the Supremacy Clause.

8. Second, the Defendants have orchestrated their attack on Burning Man through the vehicle of a collusive state lawsuit as to which BRC was not a party and which was presided over by a judge who (1) is personally opposed to the Event because of what he considers to be its purported culture and content and gave public testimony before the Commission in support of the amended Festival Ordinance whose lawfulness he would later uphold, (2) personally witnessed an affidavit in support of the state court petition, (3) summarily granted the petition without the benefit of motion, briefing, or notice to BRC, and (4) signed the order granting the petition the day before the petition was filed, all in violation of the Due Process Clause of the Fourteenth Amendments.

9. Third, the Defendants have acted not out of a neutral and objective concern for public safety issues, but because of their opposition to what they consider to be the content and culture of Burning Man, in violation of the First Amendment.

10. Fourth, the imposition of excessive and arbitrary fees in connection with the Festival Ordinance, all of which reflects content-driven opposition to the purported culture and content of the Event, will limit BRC's ability to support artistic and other protected speech in connection with future Events and may jeopardize the very conduct of future Events.

11. Fifth, the County has breached its contractual obligations to BRC in violation of Nevada law.

///

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

## II.   JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).   The Court has authority to grant the declaratory and injunctive relief sought herein pursuant to 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act) and 28 U.S.C. § 1651 (the All Writs Act).

13.     This Court has personal jurisdiction over the Defendants because they are found in this judicial district and because they conduct and transact business in this district.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## III.   ADDITIONAL FACTUAL ALLEGATIONS

### (a)   Parties

15.     Black Rock City LLC ("BRC") is a limited liability company organized under Nevada law, with its principal place of business in San Francisco, California.  BRC is the organizer and promoter of the Burning Man Event, a yearly artistic and performance event which has taken place each year since 1986 on the Labor Day weekend.  BRC also organizes and promotes other artistic and performance events throughout the year; provides funds and support to nonprofit organizations that work with local communities to place large-scale art in public spaces in those communities; provides funds and support to a nonprofit dedicated to installing solar and renewable energy systems in the non-profit, public, low-income and educational sectors; and provides funds and support to art events and communities throughout the world, in substantial part based on revenues generated by the Event.

16.     Defendant Board is the duly-elected legislative body of Pershing County, Nevada, which has claimed responsibility for implementing the Festival Statute, has enacted the Festival Ordinance and Revised Festival Ordinance, and has required BRC to obtain a County Festival License (all as defined herein), and take other actions contrary to BRC's legal rights and interests as described herein.

17.     Defendant Irwin, in his official capacity, at all relevant times has been a Commissioner and member of the Board and the duly elected Chairman of the Board.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

18.     Defendant Shank, in her official capacity, at all relevant times has been a Commissioner and member of the Board and the duly elected Vice Chairman of the Board.

19.     Defendant Bloyed, in his official capacity, at all relevant times has been a Commissioner and member of the Board.

20.     Defendant Machado, in his official capacity, at all relevant times has been Sheriff of Pershing County, Nevada.

21.     Defendant Shirley, in his official capacity, at all relevant times has been District Attorney of Pershing County, Nevada.

**(b)     The Burning Man Event**

22.     The Burning Man Event is quite different from a music concert or other commercial event in which attendees are invited to watch performances.  To quote BLM, it is "a combination art festival, social event, and experiment in community living."  Burning Man 2006-2010 Special Recreation Permit NV-020-06-EA-11, Environmental Assessment, available at:     http://www.blm.gov/pgdata/etc/medialib/blm/nv/field_offices/winnemucca_ field_office/nepa/recreation/0.Par.72197.File.dat/Burning%20Man%20EA%202006.pdf.    It is the gathering and creation of a large community, most of whose members contribute and participate in the artistic structures or events that occur at Burning Man.  BRC does not provide any entertainment for participants, but rather through maintenance of the Event and the provision of guidance and funding to support artistic and other aspects of the Event enables the participants and members of the community that provide any "entertainment" or community interaction.

23.     At the annual Burning Man Event, in the Nevada desert, BRC designs and maintains a temporary "city" (referred to each year as "Black Rock City") (the "City").  During the Event, hundreds of art installations and civic spaces are built in the City by participants, and literally thousands of small events or gatherings are conducted in which participants share creative ideas.  There are more than 600 "theme camps" funded and built solely by participants with support from BRC, which are large artistic installations or spaces combined with a participatory element, and in each theme camp the group presents a performance, event or

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

space which induces attendees to participate.  Participants publish several daily newspapers, broadcast several radio stations, take photographs and create "yearbooks" to give away.  Many attendees engage in artistic expression by dressing in costume and participating in many of the events and performances.

24.     Virtually all of the myriad art installations, spaces open to participants, stages and music and performance venues are designed, created, funded and operated by participants, with an infrastructure and guidance provided by BRC.  Thus, BRC builds a statute of a human figure and provides one central gathering area (the Center Camp Café); it BRC provides the City's infrastructure, laying out the perimeter of the Event and the City streets; it assists in placement of participants' camps; and provides security, portapotties, medical facilities, and similar types of infrastructure services; provides support in the form of heavy equipment, expertise, and expertise in building; and provides grants to artists and participants who are bringing large scale art installations to the City.

25.     Thus, the intention of BRC is to bring together a community of individuals of similar artistic and spiritual ideas, and to create an environment in which individuals are encouraged and enabled to express artistic interests and join other artists in the creation of their vision.

26.     Further, the Burning Man Event operates on a "gift economy," and this decision to avoid commerce at the Event has created a generous outpouring from participants.  Unlike at other concerts or festivals, nothing is permitted to be sold or bartered at the Burning Man Events (the only exception is for ice and coffee, which are sold by volunteers, with all profits donated to local municipalities).  There is no food vending, no vending of drinks, no vending of clothes or supplies.  In place of commercial vending or barter, members of the community bring items, performances and services, and freely gift these to any participant.  Groups of participants gather together during the year to build community artistic spaces which they bring to the Black Rock Desert, and freely invite participants to share in them, which include art installations, camps in which music, performances, food, drink, clothing, and other items and services are freely gifted, others which provide materials so that participants create their

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

own artworks and costumes, or camps where services such as medical and healing services, bicycle repair, counseling, discussions are provided, all free of charge.  For example, there are more than 100 camps which provide stages and sound systems for performances, music, speeches and discussions.  The world-renowned TED conferences regularly holds a conference at Burning Man, in which thousands of people come to discuss many important issues about community, the environment and the world.

27.  Another principle of the Burning Man Events is to be free from commodification.  This means that no advertising of any sort is permitted at any Event, and, further, that BRC does not license the use of the "Burning Man" trademark to anyone for commercial purposes.  While at music festivals or sporting events, one often sees many banners bearing the names and logos of commercial companies, and a lot of "branded" materials are distributed by various companies, there is virtually no such activity that takes place at the Burning Man Events.  In furtherance of this principle, BRC refuses to license the Burning Man trademark to be used in advertisements or to permit sponsors or advertising at the Event.  BRC volunteers throughout the year review any attempts by commercial companies to utilize Burning Man trademarks and imagery from the Burning Man Events and report these to BRC, and BRC has an active group that prevents any such use of Burning Man trademarks.  Thus, due to this core principle of the Burning Man community, BRC does not receive any income from advertising or licensing of its well-known trademarks, and regularly rejects offers to license its trademarks.

**(c)**   **The BLM Permit & Prior Agreements with Pershing County Officials**

28.  The BLM Permit provides that BRC "shall be authorized to conduct the Burning Man event on public lands in Pershing County, Nevada for a one-year period (2012)," on the "southern portion of the Black Rock Desert [in the] High Rock Canyon Emigrant Trails National Conservation Area."  *See* BLM Permit, Exhibit A at 1; *see also* BLM Decision Letter, Exhibit B at 1, available at https://www.blm.gov/epl-front-office/projects/nepa/28954/37411/39211/SRP_Decision_Burning_Man.pdf.  The BLM Permit also specifically addresses, and affirmatively specifies standards and provisions for, aspects of the conduct of the Festival,

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

including sanitation, emergency medical facilities and services, fire protection, security, participant camping, traffic, access and parking control, illumination, water supply and food supply, communication services, consumption of liquor and unlawful drugs, and safety for the Event.  (*Id.*, Stipulations at ¶ 24); Exhibit C at pp. 8-10, 12-53.  Incorporated by reference into the BLM Permit is the "Burning Man Operating Plan" (the "Operating Plan"), which supplements the specific provisions of the BLM Permit and governs virtually every aspect of the conduct of the Festival.  *See* Exhibit C.  The Operating Plan provides a comprehensive blueprint for the management of the Burning Man event and the protection of the participants' health and safety.  Among many other provisions, it specifically has provisions addressing "Protection of Minors" and "Illegal Substance Policy" *Id.*, Sections IV.C.6 and .7, respectively).

29.     The BLM Permit requires BRC to reach agreement with the Sheriff's Office and a number of state and local government agencies concerning the provision of local services by these agencies, stating that "BRC shall complete formal agreements with all affected parties, *e.g.*, Pershing County Sheriff's Department, Washoe County Sheriff's Department, Nevada Department of Public Safety-Investigations Division, Nevada Highway Patrol, and Nevada Department of Health and Human Safety for the purpose of addressing concerns and impacts associated with social services *e.g.* law enforcement and emergency medical services and physical infrastructure *e.g.* transportation systems and human waste disposal."  Exhibit A, Stipulations at ¶ 23.

30.     From 1995 until 2005, as part of the BLM permit, the fee paid by BRC to BLM was a flat fee based on attendance, and this fee covered all governmental services, including services provided by state and local governmental entities or agencies.  Thus, from 1995 to 2005 BLM contracted with the Sheriff's Office, the Washoe County Sheriff's Office, and the Nevada Highway Patrol, and BLM paid these agencies for their services.

31.     In 2006, BLM imposed a different scheme, moving to a cost recovery system in which BRC would pay for BLM's actual costs, which meant that BRC would be responsible to pay for the reasonable, justified and documented costs for services provided by other agencies

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

according to established BLM cost recovery guidelines.  BLM further directed, instead of BLM contracting with local government agencies and then requesting reimbursement from BRC, that BRC contract directly with state and local government agencies for the provision of local services, including contracting with the Sheriff's Office for law enforcement services. This BLM scheme remained in effect through the present, and BRC complied in full with these new requirements.

32.     Accordingly, between 2006 and 2011 BRC annually entered into law enforcement agreements with the Sheriff's Office.  Those agreements required that BRC pay the Pershing County Sheriff the actual expenses that the Sheriff and County expected to incur in providing law enforcement staffing services and judicial administration related to the annual Burning Man Event.  The payments under these annual agreements were as follows:

2006:  $66,000;

2007:  $110,000;

2008:  $121,000, plus $27,500 for a prosecution payment (for a vandalism arrest and trial that year);

2009:  $142,000 for law enforcement and $14,000 for prosecution costs;

2010:  $145,000 for law enforcement, $7,000 for vehicle usage, and $14,000 for prosecution costs;

2011:  $154,000 for law enforcement, $7,000 for vehicle usage and $14,000 for prosecution costs.

33.     Pursuant to the annual law enforcement agreements, the County was required to provide documentation after each year's Event of all expenses incurred for judicial administration and law enforcement.  The 2011 law enforcement agreement provided for a payment of $154,000 for law enforcement expenses, and $15,000 for judicial administration expenses.  The required documentation provided after the 2011 Burning Man Event showed that actual law enforcement expenses were only $120,000.  The County has not provided any

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

documentation to account for judicial administration expenses, despite the fact that such documentation is required to be provided under the 2011 law enforcement agreement.

34.     In addition to providing documentation regarding law enforcement expenses, the County has annually provided a report of citations issued and arrests made during the Burning Man Event.  In 2011 the report revealed the following small number of minor infractions for the eight-day Event with a peak population of 53,963 participants: one arrest for battery, three arrests for domestic battery, two arrests for possession of controlled substances, two citations for battery, and seven trespass advisements.  In addition, there were six reports relating to missing/found children.  No serious criminal violations were reported.

35.     The 2011 report stated that the Sheriff's Office staffed the 2011 Burning Man Event with 22 deputy sheriffs who worked in three staggered shifts. The Sheriff reported that "[t]here were sufficient personnel most of the time to handle the incidents as they occurred," and stated that he wanted an additional four officers and two investigators staffed on the Thursday, Friday, and Saturday nights of the Burning Man Event.

36.     From 2006 to 2011, BRC additionally offered to reimburse the County for any expenses in excess of law enforcement and related judicial administration expenses that the County reasonably incurred as a result of the Burning Man Event.  The County did not identify or ask for reimbursement for any other expenses.

### (d)     The County Amends the Festival Ordinance To Impact the Burning Man Event, Increase The Fees Charged, and To Attempt to Force BRC to Void the 2005 and 2011 Agreements

37.     The State of Nevada requires each county to adopt an ordinance regulating and licensing outdoor assemblies of more than 1,000 people ("the Festival Statute").  Nev. Rev. Stat. §244.354.  The Festival Statute details some requirements that may be imposed in a county ordinance, including discretionary judgments that a county may make in determining whether or not to issue a permit.  Some of these requirements are specific, *e.g.*, for adequate drinking water, adequate food supplies, adequate medical facilities, adequate parking space for

vehicles, and adequate communication systems.  Nev. Rev. Stat. §244.3545.  But the Festival Statute also authorizes a catchall provision allowing counties to impose any other condition "determined by the board to be necessary to protect the health, welfare and property of local residents and persons attending the assembly."  Nev. Rev. Stat. §244.3545.13.  *See* Exhibit D.

38.    Pursuant to the Festival Statute, in 2004, the County enacted the Festival Ordinance, requiring a fee to be paid to the County by any event occurring in the County attended by more than 1,000 people.  Pershing County, NV., Code, § 5.16.020.  *See* Exhibit E.

39.    From the time the Festival Ordinance was first enacted, there have been substantial questions about the County's legal right to apply the Ordinance to an Event occurring on federal land that has received a permit from BLM.  For example, the Washoe and Storey County festival ordinances exempt from their scope any events taking place on federal land.  *See* Washoe County, NV., Code §§ 25.263-25.305, Exhibit F; *id.* at § 25.269 (stating "A person must secure a license . . . to conduct or operate any outdoor event . . . to take place on public or private lands in the unincorporated area of Washoe County, except for . . .federal lands."); Storey County Codes, Ch. 8.28, Exhibit G; *id.* at §  8.28.020 (stating "[N]o person shall conduct . . . a parade, special event or filming activity in, on or upon any county street, sidewalk, alley, park, way, public place or public property which is owned or controlled by the county, or private property without first having obtained a written permit from the county manager or his designee.").

40.    In November 2005, to resolve these questions by stipulation and to avoid litigation between the County and BRC, the County and BRC entered into a written agreement. In this contract, the County agreed that the Festival Ordinance would not apply to the Burning Man Event and that the County would amend its Festival Ordinance to exempt the Burning Man Event from its scope, and BRC agreed to yearly payments to the County and County charities of at least $40,000, with the amount increasing according to a formula as the number of attendees at the Festival increased.  As to the disposition of funds, 75% would be paid directly to the County and 25% would be paid to nonprofit groups in the County that serve County residents.  BRC and the County agreed that this payment to the County would be to

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

cover any additional expenses that the County may incur as a result of the Burning Man Event being held in the County, even though the County had not identified as such additional expenses.  This agreement was memorialized in an Agreement and Settlement (the "2005 Agreement") executed on behalf of the County on November 14, 2005.  *See* Exhibit H.  The 2005 Agreement contained the following specific additional provisions, all reflecting the Burning Man exemption from both the Festival Statute and the Festival Ordinance:

> \*   \*   \*
>
> **3.   <u>Modification of Festival Ordinance.</u>   The County agrees to amend the current Pershing County Festival Ordinance such that it implements this Agreement. *The County also agrees not to enact any other similar legislation that would tax or require Black Rock City to pay any festival, assembly or use fees to the County unless a state or federal law/statute requires such enactment of an ordinance, at which time the County will give notice and have an open meeting discussion with Burning Man.***
>
> **4.   <u>Operation of Agreement.</u>   The parties agree that this Agreement shall continue in effect each year. The term of the Agreement will continue as long as the Burning Man Event is held in Pershing County.**
>
> **5.   <u>BLM Payment of Law Enforcement Fees.</u> The Agreement is subject to and premised upon the continued payment of law enforcement fees for the Pershing County Sheriff's Office (herein "Local Law Enforcement Costs") through the BLM. In the event that the BLM determines that the BLM will not pay for Local Law Enforcement Costs, both parties agree to make reasonable efforts to persuade BLM officials to continue to pay Local Law Enforcement Costs. If efforts are unsuccessful in persuading BLM officials to continue payment of Local Law Enforcement Costs, the parties agree to negotiate in good faith to attempt to keep the Agreement in place and to rectify the BLM's decision.**  (Emphasis supplied.)

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

41.     In January 2011, at the request of the County, the County and BRC revised the 2005 Agreement and executed an Amended and Restated Agreement and Settlement (the "2011 Agreement") requiring BRC to make annual payments of $62,000 with the County and County non-profits, with $50,000 being paid to the County and $12,000 to nonprofit groups in the County that serve County residents.   *See* Exhibit I.

42.     The 2011 Agreement contains the following provisions, among others:

> E. *In 2005 <u>per the original Agreement and Settlement</u>, the County excepted BRC from amended Section 5.16 of its Festival Ordinance thereby exempting BRC from the fee schedule in the ordinance.*
>
> 1. <u>Modification of the Ordinance</u>. *As long as this Amended Agreement is in effect, the County agrees not to enact any future, or modify any existing, rule, ordinance, policy or regulation in a way that would result in the taxation, assessment or charge against BRC in connection with holding the Burning Man Event on Federal land within County boundaries.*
>
> *     *     *
>
> 3. <u>Term</u>. This Amended Agreement shall continue in effect as long as the Burning Man Event is held in the County.
>
> 4. <u>Clarification of Scope</u>. This Amended Agreement does not address payments made by BRC or BLM to cover costs incurred by the County Sheriff s Office in enforcing local laws at the Burning Man Event.  For reference purposes only, since 2005 the Parties have addressed these costs through the Burning Man Event Law Enforcement Agreement which has been amended from time to time.

(Emphasis supplied.)

43.     BRC has, to date, performed all actions and made all payments required under both the November 2005 and 2011 Agreements. Since 2005 BRC has paid a total of $395,600 under these agreements (comprising $287,000 to the County and $108,600 to non-profits in the County).

44.     Prior to the events giving rise to this lawsuit, the Festival Ordinance had never been applied to any outdoor assembly, nor has any application been made for a license under the Festival Ordinance.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**(e)** **The County Amends the Festival Ordinance to Impact the Burning Man Event, Increase the Fees Charged, and Attempts to Force BRC to Void the 2005 and 2011 Agreements**

45.     In November 2011, Defendant District Attorney Shirley advised a representative of BRC that he, Shirley, had been asked by Judge Richard Wagner, Sixth District Court of Nevada, to draft a proposed amendment to the Festival Ordinance, and on information and belief BRC so alleges.  The proposed amendment would have made the ordinance applicable to Burning Man and severely restrict the content of the Burning Man Event.  Specifically, the proposal would have imposed hundreds of thousands of dollars of new fees on BRC, subjected Burning Man to local law enforcement inconsistent with the terms of the BLM Permit, and otherwise make the conduct of the Burning Man Event contingent upon and subject to County and State laws and policies that could conflict, and in fact did conflict, with the terms of the 2012 BLM Permit.  Draft Bill of Pershing County Festival Code, § 5.16.060, Oct. 19, 2012.  *See* Exhibit J.  Notably, the proposed amendment would also have banned minors from the Burning Man Event.  *Id.*

46.     On information and belief, this was not Judge Wagner's first effort to drive the Burning Man Event out of Pershing County.  Two Defendant Commissioners separately told a representative of BRC that Judge Wagner opposed the expressive activities occurring at the Event, and was pressuring them to void the 2005 and 2011 Agreements and, through the imposition of huge fees and heavy regulation, affect the content of the Burning Man Event and cause BRC to seek to relocate the Burning Man Event out of Pershing County.

47.     The Commissioners held a public hearing on the proposed amendment on November 16, 2011 (Public Hearing No. 288).  BRC representatives attended the meeting and spoke in opposition to the amendment, among other things citing the contrary 2005 and 2011 Agreements and the conflict between what was being proposed and the BLM Permit.  *See* Transcript of November 16, 2011 Hearing (Exhibit K) at 10-18, 23-25.

48.     At the November 16, 2011 public hearing, Defendant Commissioner Bloyed and Defendant Shirley made statements that state laws can, and should, be enforced to prohibit minors from attending the Burning Man Event.  *See* Transcript of November 16, 2011 Hearing, Exhibit K at 31, 36, 49–51.

49.     Judge Wagner also spoke at the November 16 hearing, in favor of the amendment and also more broadly in opposition to the Burning Man Event, based on what he perceived to be the values that the Burning Man Event espouses.  Commenting that Burning Man  "purveys titillation," he made the following additional statements:

a.      "I'm very concerned about what the community standards are becoming in this community.  When they first came, everyone was shocked.  Now, we've accepted them and now we're embracing them, because what?  They bring money to the community?  Something's wrong with that."

b.      "This isn't a place for young people under eighteen to be, under any circumstances.  That's my opinion."

c.      "You want to see what a lawless culture, built like 49ers and Deadheads and Cyber Punks leads to?  National Magazine, I would say it in two words, 'Penn State.'"

d.      The laws of the state and the laws of this county apply to Burning Man as much as they do to the city limits of Lovelock, and what's described in this article, if people were to do it here, they would be in jail, in prison."

e.      "[T]he idea that they can self-regulate and have their own policemen and carry out their own regulations is ludicrous. It is people here, county officials, who have absolute duty to enforce the laws. You took an oath, as did law enforcement, to uphold the laws and constitutions of this state. That includes lewdness around children and the other things that have occurred."

Exhibit K at 18-22.

50.     Judge Wagner also made a public comment at this Commission hearing in which he expressed his opinion that the 2005 Agreement was not valid under state law. Exhibit K at 40.

51.     Similar to statements made at the November 16, 2011 public hearing, Defendant Commissioners Irwin and Shank stated at a November 30, 2011 public special meeting of the Pershing County Board of Commissioners that state laws should be enforced to prohibit minors from attending the Burning Man Event.  *See* Transcript of November 30, 2011 Special Meeting, Exhibit L at 7–8, 21–23, 89.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

52.     On February 1, 2012, the Commission enacted the revised amendment to the Festival Ordinance ("the Revised Festival Ordinance").  *See* Exhibit M.  The amendment as enacted increased the permit fee for outdoor assemblies to $1.50 per person per day.  Because the Burning Man Event is expected to draw up to 60,000 attendees, with an average daily attendance of approximately 50,000 people, this fee would amount to approximately $75,000 per day for the eight-day duration of the Event.

53.     The Revised Festival Ordinance further stated that it would not go into effect until October 1, 2012, making it inapplicable to the 2012 Burning Man festival.

54.     On June 12, 2012, a BLM Permit was issued for the 2012 Burning Man Festival (the "2012 BLM Permit").  *See* Exhibit N.   The 2012 permit required BRC, as before, to enter into a law enforcement agreement with the County.

55.     Discussions between BRC and the County over a law enforcement agreement to cover the 2012 Burning Man Event commenced in January 2012.  Around March 15, 2012, a representative of the Sheriff's Office stated that six additional deputies would be required for the 2012 Burning Man Event, increasing the total Sheriff's Office budget to $180,000.

56.     Around March 20, 2012, BRC was informed by the County that the Sheriff's Office budget had been increased to $282,000, as several Commissioners had requested doubling of law enforcement from that at the 2011 Event in order to provide more protection to any children present.

57.     On April 20, 2012, Defendants Machado and Shirley handed a revised budget to BRC, by which time the Sheriff's Office budget had increased to $428,384, plus an additional $25,000 for judicial administration, $5,000 for County Recorder/Secretary services, and a $20,000 "contingency fee."

58.     On May 1, 2012, the County submitted to BRC a proposed law enforcement agreement, with a budget reduced to $346,700 plus the additional $50,000 in fees.  The revised budget included a provision stating that the proposed agreement "does hereby rescind, revoke, and supersede any and all prior agreements."   Representatives of the County stated to BRC

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

representatives that this provision was intended to revoke the 2005 Agreement and the 2011 Agreement.

59.    At a May 2, 2012 Commission meeting, and at a May 14, 2012 negotiating session for a law enforcement agreement between BRC and the County, BRC representatives stated that they would not sign a law enforcement agreement that had a provision that would revoke the 2005 and 2011 Agreements.  Ultimately, the parties did not enter into a separate law enforcement agreement, but, as described in Paragraphs 77-78, law enforcement expenses were made part of the license fee that the County required BRC to pay under the County's Festival Ordinance.

60.    The fees and other charges that the County has imposed on BRC as part of the license to hold the 2012 Event are arbitrary, excessive, and were motivated by content-driven opposition to the purported culture and content of the Event.  Application of the Revised Festival Ordinance to future Burning Man Events is expected to result in even greater charges, and a greater opportunity for arbitrary and content-driven governmental action to strain even further the Event's finances.

61.    The charges that BRC has been forced to pay in 2012, and that it expects to pay for Burning Man Events in the years that follow, will substantially limit and curtail BRC's ability to fund the creation of art and other expressive conduct in the future, resulting in Events that will have less expressive conduct and be less of a forum for protected speech and activities.

(f)    **The County Participates In Collusive Litigation In Order To Repudiate the 2005 and 2011 Agreements**

62.    By May 2012, Defendants were concerned that they lacked the legal authority to apply the Festival Ordinance to Burning Man.  On May 15, 2012, Defendant Bloyed stated to a reporter for the Lovelock, Nevada newspaper that, in the Event the Commissioners prevented the Burning Man Event from taking place due to the application of the County's

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

ordinance, the County may "have a huge liability – we just cost Burning Man $20 or $30 million or whatever it is they make out there." *See* Exhibit O.

63.    Indeed, by then Defendants had concocted a scheme to avoid the obligations of the 2005 and 2011 Agreements.  In his remarks to the newspaper, Defendant Bloyed candidly admitted that the Commission, with Defendant Shirley, the District Attorney, had determined that the alternative to compliance with the agreements was collusive litigation.    Thus Defendant Bloyed stated that Defendant Shirley "expla[ined] to us is there are two avenues – one is a new contract that would null and void past agreements…. The other is to bring litigation basically to protect us and basically tie our hands to sticking with the ordinance."

64.    On May 15, 2012, Defendant Shirley, as District Attorney, filed ostensibly on behalf of the State of Nevada a Petition for Writ of Certiorari, Mandamus and/or Prohibition (the "Petition") in Nevada State Court.  *See* Exhibit P.

65.    The Petition named the Board of Commissioners and the County Commissioners in their official capacities as nominal respondents.  The named defendants were alleged to have breached their duties in numerous ways.  On information and belief, BRC alleges that the supposed adversity identified in the petition was a sham.  BRC was not named as a party to the Petition.

66.    The Petition sought an order directing the Commissioners to show cause why the Court should not (1) order the Commissioners to notify BRC that it was required to file an application to hold the Burning Man Event in Pershing County, pursuant to the Nevada Revised Statute that requires each county to enact a Festival Ordinance, and to notify BRC that "the Pershing County Board of Commissioners can no longer perform under any contract that exempts the Burning Man Even from the [County's Festival] Ordinance;" (2) "determine that the [Commissioners] had exceeded their authority in … exempting BRC from the requirements" of the state statute requiring enactment of a festival ordinance; and (3) determine that the Commissioners "exercised a manifest abuse of discretion by contracting" with BRC to exempt the Burning Man Event from the Festival Ordinance.  Exhibit P at vi.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

67.     The Petition was supported by an attached affidavit from Defendant Shirley ("Affidavit") attesting to certain facts.  The Affidavit was personally witnessed on May 15, 2012 by Judge Wagner, who had instigated the proceedings to amend the Festival Ordinance and had testified in favor of the relief sought.  *See id.* at vi-vii.  The Petition was not filed until May 16, 2012.

68.     At this point an even more astonishing series of events ensued.  The Petition was assigned to Judge Wagner – the very individual who had spoken out at a public hearing against the Burning Man Event, had provided a public statement that the agreement between BRC and the County was not valid, had privately pressed Commissioners to implement the relief requested in the petition, and who had witnessed the Affidavit in support of the Petition.

69.     Apart from federal constitutional requirements, Nevada State law addresses circumstances in which a judge is required to recuse himself.  Rule 2.11 of the Nevada Code of Judicial Conduct provides in pertinent part:

> Rule 2.11.    A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.
>
> *   *   *
>
> (5) The judge, while a judge or a judicial candidate, has made a public statement, other than in a court proceeding, judicial decision, or opinion, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy.

70.     Without the benefit of any briefing, Judge Wagner granted the Petition.  *See* Exhibit Q.  Inexplicably, he signed the order on May 15, 2012 – the day before the Petition was even filed.  Compare Exhibit Q (the "May 15 Order") with Exhibit P at 2.  And indeed, the Clerk's Office's date stamp confirms that this notation was not an error, showing that the Petition and the order granting it were filed at the same time, 10:01 a.m. on May 16, 2012.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

71.     The May 15 Order required the Commission and the Commissioners to answer the Petition within 20 days or to alternatively agree in writing to implement the relief requested in the Petition.

72.     Although the Petition was directed solely to the Burning Man Event and sought to void the 2005 and 2011 Agreements between BRC and the County, BRC was not given notice that the Petition had been filed or that an Order had been issued.

73.     The day the Petition was filed and granted, the Commissioners set a special meeting for May 22, 2012 to address the issues raised in the Petition and the Order.

74.     At the May 22, 2012 meeting, the Commissioners voted to implement the provisions in the Petition and signed a stipulation to that effect.   No Commissioner made any statement that the Commission should consider whether to defend the lawsuit that had been filed against them, but simply agreed to the relief requested in the lawsuit without discussion.

75.     On May 24, 2012, Judge Wagner issued a Judgment Granting Petition for Writ of Certiorari, Mandamus and/or Prohibition (the "May 24 Judgment") directing that the Commissioners require BRC to apply for an outdoor assembly license for the Burning Man Festival, and to notify BRC that it would no longer comply with the agreements between the County and BRC.  *See* Exhibit R.

76.     Also on May 24, 2012, the County gave notice to BRC that it considered the November 2005 and January 2011 Agreements to be terminated and no longer applicable to the Burning Man Event. The Commissioners notified BRC that BRC was required to apply for an outdoor assembly license under the Festival Ordinance, that the County would no longer exempt the Burning Man Festival from the Festival Ordinance.

(g)      **The 2012 County License Process**

77.     On May 22, 2012, BRC informed the Commissioners that although it believed the Festival Ordinance could not lawfully be applied to the Burning Man Event, BRC had no choice but to file under duress for a permit under the Festival Ordinance in order to ensure that the Burning Man Event would take place and to avoid damages for which BRC might be liable

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

to participants who had bought tickets or contractors with whom BRC had contracted for services if the Event were canceled.

78.     Discussions concerning a law enforcement agreement, which had commenced prior to issuance of the May 15 Order and the May 24 Judgment, terminated.   Since the Festival Ordinance had provisions concerning the payment of law enforcement expenses, the County decided not to have a separate law enforcement agreement but to deal with law enforcement expenses through its licensing under the Festival Ordinance.

79.     The County then imposed conditions on BRC for the payment of law enforcement and other expenses as conditions under the license under the Festival Ordinance. On June 20, 2012, the County issued a license to BRC to hold the 2012 Burning Man Event (the "County Festival License").  *See* Exhibit S.

80.     On information and belief, BRC alleges that Defendants intend and expect that County law enforcement personnel, in the course of their purported duty to enforce state and local law, will impose obligations and requirements on BRC and Event participants greater than and different from those specifically addressed and set forth in the 2012 BLM Permit.

81.     Among other provisions, Condition 7 of the County Festival License requires BRC to comply with Nev. Rev. Stat. §§ 244.3548 (3)-(7) (the Festival Statute), which provide in pertinent part:

> **Unlawful acts.**  It is unlawful for any licensee or any employee, agent or associate of a licensee to:
>
> *   *   *
>
> 3.  Hold such an assembly in such a manner as to create a public or private nuisance.
>
> 4.  Exhibit, show or conduct within the place of such an assembly any obscene, indecent, vulgar or lewd exhibition, show, play, entertainment or exhibit, no matter by what name designated.
>
> 5.  Allow any person on the premises of the licensed assembly to cause or create a disturbance in, around or near any place of the assembly, by offensive or disorderly conduct.
>
> 6.  Knowingly allow any person to consume, sell or be in possession of intoxicating liquor while in such assembly except

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

where the consumption or possession is expressly authorized by the board and under the laws of the State of Nevada.

7.   Knowingly allow any person at the licensed assembly to use, sell or be in possession of any controlled substance while in, around or near a place of the assembly.

82.     The County Festival License imposes a total fee of $448,000 in addition to a requirement that BRC provide certain services, including provision of a trailer and space to park trailers at a trailer park, provision of fuel to the Sheriff's Office, installation of telecommunications equipment and services for use by the Sheriff's Office, with a value of at least $36,605.   The license fee is comprised of $398,000 allocated for law enforcement expenses, $25,000 allocated for costs incurred in prosecuting any individuals cited or arrested in connection with the 2012 Burning Man Festival, $5,000 allocated for costs incurred by the County's Recorder/Secretary, and a $20,000 emergency contingency fee. The law enforcement costs imposed under the license fee are almost $280,000 more than the $120,000 in actual costs incurred by the County for the 2011 Burning Man Event.

83.     The Revised Festival Ordinance, which the May 24 Judgment requires be applied to the Burning Man Event, would require even higher fees, including the $1.50 per person per day minimum that would result in a daily fee of up to $90,000.

84.     As of the date of filing of this lawsuit, the Festival Ordinance has never been applied to any group other than to the 2012 Burning Man Event.

## FIRST CAUSE OF ACTION

**(Declaratory Judgment Regarding Preemption of the Festival Statute, the Festival Ordinance, the Revised Festival Ordinance, the County Festival License and the May 24 Judgment)**

85.     BRC adopts and incorporates by reference the allegations contained in paragraphs 1 through 84 above as if fully set out herein.

86.     The Festival Statute, the Festival Ordinance, the Revised Festival Ordinance, and the County Festival License purportedly issued thereunder, all made applicable to BRC as a consequence of the May 24 Judgment (collectively, the "Festival Laws"), specify criteria for approval and authority to impose obligations and conditions on the Burning Man Event which are different from and are inherently in conflict with those attendant to a BLM Permit.  The

Festival Laws conflict with federal law and are in derogation of the rights of BLM attendant to its executive authority over Event permitting on federal land.

87.    The Festival Laws violate the Supremacy Clause of the Constitution as applied to the Burning Man Event, are preempted, and may not be applied to the Burning Man Event.

88.    An actual, substantial controversy exists between BRC and the Defendants concerning application of the Revised Festival Ordinance to the Burning Man Event such that the issuance of a declaratory judgment decreeing that the Festival Laws are preempted by federal law as applied to the Burning Man Event is both necessary and appropriate.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment Regarding Preemption of the Festival Laws to the Extent In Conflict With The BLM Permit)

89.    BRC adopts and incorporates by reference the allegations contained in paragraphs 1 through 84 above as if fully set out herein.

90.    Specific provisions of the Festival Laws, including without limitation the requirements of the County Festival License that BRC be bound by provisions of Nevada law prohibiting conduct that constitutes a "nuisance," an " obscene, indecent, vulgar or lewd" act, a "disturbance" created by "offensive or disorderly conduct," the use or consumption of alcohol except in conformance with Nevada law, and the possession of a "controlled substance," conflict specifically with the 2012 BLM Permit, which by its own terms addresses these and other issues relating to the maintenance of public health and safety, and with BLM's rights and obligations under federal law.   Law enforcement efforts undertaken pursuant to such provisions of the Festival Laws similarly conflict with federal law.  To the extent issues are specifically addressed in the 2012 BLM Permit or BLM Permits, including, but not limited to, sanitation, emergency medical facilities and services, fire protection, security, participant camping, traffic, access and parking control, illumination, water supply and food supply, communication services, consumption of liquor, possession of controlled substances, protection of minors, and safety for the Burning Man Events, since these Events take place on federal land under a federal permit, the Festival Laws, and the purported enforcement of the

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Festival Laws that impose different and/or more restrictive requirements on BRC violate the Supremacy Clause and are preempted.

91.     An actual, substantial controversy exists between BRC and the Defendants concerning application of the Festival Laws to BRC and the Burning Man Event and the issuance of a declaratory judgment decreeing that the Festival Laws are preempted by federal law is both necessary and appropriate.

## THIRD CAUSE OF ACTION

### (Declaratory Judgment Regarding Facial Invalidity of the Festival Laws Under the First Amendment)

92.     BRC adopts and incorporates by reference the allegations contained in paragraphs 1 through 84 above as if fully set out herein.

93.     The First Amendment to the United States Constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble . . . ."  The First Amendment is enforceable against state and local governments through the Fourteenth Amendment.

94.     The Festival Laws are directed towards speech and expressive conduct protected by the First Amendment.  They lack sufficient standards to guide the exercise of discretion by County licensing officials and therefore are facially void under the First Amendment.

95.     An actual, substantial controversy exists between BRC and the Defendants concerning application of the Festival Laws to BRC such that the issuance of a declaratory judgment decreeing that the Revised Festival Ordinance violates the First Amendment to the United States Constitution is both necessary and appropriate.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment Regarding As-Applied Invalidity of the Festival Laws)

96.     BRC adopts and incorporates by reference the allegations contained in paragraphs 1 through 84 above as if fully set out herein.

97.     The Festival Laws are directed towards speech and expressive conduct protected by the First Amendment.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

98.     The Festival Laws discriminate against BRC and the Burning Man Event based on content in violation of the First Amendment.

99.     The express and implied limitations on the conduct of participants in the festival, and BRC's responsibility therefore, are content-based and impermissibly restrict constitutionally protected speech and conduct.

100.    The fees imposed by the County on BRC for the Burning Man Event in the license are excessive, and bear no reasonable or proportional relation to reasonable and necessary services to be provided by the County and the Sheriff's Office.

101.    The imposition of arbitrary and excessive fees and charges on BRC in connection with the Burning Man Event is pretextual, content-based, and impermissibly restricts constitutionally protected speech and conduct.  If allowed to continue, these fees and charges would have the effect of substantially reducing the funds available to BRC for the direct funding of artistic and other expressive conduct at subsequent Events and the sponsorship of future events, resulting in the restriction of speech and other conduct protected by the First Amendment.

102.    An actual, substantial controversy exists between BRC and the Defendants concerning application of the Festival Laws such that the issuance of a declaratory judgment decreeing that the Revised Festival Ordinance violates the First Amendment to the United States Constitution is both necessary and appropriate.

## FIFTH CAUSE OF ACTION

### (Declaratory Judgment re Violation of BRC's Due Process Rights)

103.    BRC adopts and incorporates by reference the allegations contained in paragraphs 1 through 84 above as if fully set out herein.

104.    The Fourteenth Amendment to the U.S. Constitution provides, in relevant part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."

105.    BRC was not a party to the state court action resulting in the May 24, 2012 Judgment.  BRC was not properly noticed and did not participate in any manner.

106.    Upon information and belief, the litigation giving rise to the May 24 Judgment was collusively initiated between the supposed parties, and with the improper involvement of a

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

trial judge who was required by Nevada law and the United States Constitution to recuse himself from participation. The May 24 Judgment violates BRC's constitutional rights and statutory rights flowing through the 2012 BLM Permit issued to BRC for the 2012 Burning Man Event by the Department of the Interior's Bureau of Land Management, and deprives BRC of contractual property rights established by the 2005 and 2011 Agreements with the County without due process of the law. Application of the Festival Statute, the Festival Ordinance, the Revised Festival Ordinance, and the County Festival License to BRC and the Burning Man Event was the direct and proximate result of, and mandated by, the unlawful May 24 Judgment.

107. An actual, substantial controversy exists between BRC and the Defendants concerning application of the May 24 Judgment and the consequent application to BRC of the Festival Statute, the Festival Ordinance, the Revised Festival Ordinance, and the County Festival License such that the issuance of a declaratory judgment decreeing that the judgment and the Revised Festival Ordinance were adopted in violation of BRC's due process rights is both necessary and appropriate.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment re Violation of BRC's Due Process Rights)

108. BRC adopts and incorporates by reference the allegations contained in paragraphs 1 through 84 above as if fully set out herein.

109. The 2005 and 2011 Agreements were and are valid and binding agreements between the County and BRC.

110. Contrary to the terms of these contracts, Defendant Pershing County Board of Commissioners has applied the Festival Ordinance to BRC and the Burning Man Event, and as a consequence has imposed unlawful restrictions, obligations, and expenses on BRC.

111. In so doing, Defendant Pershing County Board of Commissioners breached its valid contract with BRC under Nevada state law by enforcing the Revised Festival Ordinance resulting in damages to BRC in an amount to be proven at trial.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

## IV.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Black Rock City LLC prays for relief and judgment against Defendants as follows:

A.   Trial by jury of all claims so triable;

B.   A judgment declaring that the Festival Laws as applied to BRC for the 2012 Burning Man Event are preempted in their entirety by federal law, including 43 U.S.C. § 1201, 43 U.S.C. § 1701, 43 C.F.R. § 2931.3, and the BLM Permit issued thereunder to BRC for the 2012 Festival;

C.   A judgment declaring that the Festival Laws as applied to BRC for the 2012 Burning Man Event are preempted to the extent that they specifically conflict with provisions the BLM Permit by federal law, including 43 U.S.C. § 1201, 43 U.S.C. § 1701, 43 C.F.R. § 2931.3, and the BLM Permit issued thereunder to BRC for the 2012 Festival;

D.   A judgment declaring that the Festival Laws as applied to BRC for the 2012 Burning Man Event violate BRC's First Amendment rights;

E.   A judgment declaring that enforcement of the State Court Order violates BRC's rights under the Due Process Clause;

F.   An order enjoining the County Commission from requiring BRC to comply with the Festival Laws;

G.   An order enjoining enforcement of the May 24 Judgment by state and local officials;

H.   An order enjoining any State or County law enforcement officer from enforcing Nevada State laws, including County ordinances, to the extent they conflict with or impose obligations different from those specifically set forth in the BLM Permit;

I.   Damages for the County's contractual breaches and for the imposition of excessive and unconstitutional licensing fees;

J.   A judgment declaring the 2005 and 2011 Agreements valid and binding contracts and requiring the County to perform under them;

///

///

///

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

K.  An award of BRC's attorney fees, costs, and other expenses incurred in prosecuting this action; and

L.  Such other and further relief as the Court may find just and proper.

DATED this 16th day of August, 2012.

HOLLAND & HART LLP


By    /s/ Tamara Reid
     Tamara Reid
     Nevada Bar No. 9840
     5441 Kietzke Lane
     Second Floor
     Reno, NV 89511
     *Attorneys for Plaintiff*

5725067_1.DOCX