**Jim C. Shirley**
Pershing County District Attorney
Pershing County Courthouse
400 Main Street
P.O. Box 934
Lovelock, Nevada 89419
(775) 273 2613
Facsimile (775) 273 7058
Email JShirley@pershingcounty.net

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Black Rock City, LLC,                     )
                    Plaintiff,            )          Case No.  3:12-cv-00435
                                          )
v.                                        )
                                          )
Board of Pershing County Commissioners,   )
            and                           )
Pat Irwin, in his official capacity       )
as Chairman, Board of Pershing County     )     DEFENDANT JIM SHIRLEY'S MOTION
Commissioners,                            )        TO DISMISS THE PLAINTIFF'S
            and                           )     COMPLAINT FOR DECLARATORY AND
Carol Shank, in her official capacity as Vice- )   INJUNCTIVE RELIEF AND DAMAGES
Chairman, Board of Pershing County        )
Commissioners,                            )
            and                           )
Darin Bloyed, in his official capacity as )
Pershing County Commissioner,             )
            and                           )
Jim C. Shirley, in his official capacity  )
as District Attorney of Pershing County, State )
of Nevada                                 )
            and                           )
Richard Machado, in his official capacity )
as Sheriff of Pershing County, State of   )
Nevada,                                   )
                                          )
                    Defendants.           )

COMES NOW Defendant, Jim C. Shirley, Esq., In His Official Capacity as District

Attorney, and does hereby, pursuant Fed. R. Civ. P. 12(b)(6), move to dismiss with prejudice the

Plaintiff's Complaint For Declaratory And Injunctive Relief And Damages, filed on August 16,

1   2012 as Doc. No. 1 in the above-entitled action.  The grounds for this Motion are that the

2   Complaint fails to state a claim(s) upon which relief can be granted.  This Motion is based upon

3   the points and authorities contained herein, together with the Complaint and its attachments and

4   the Motion to Dismiss filed by the other defendants to the above-entitled action.

5             Dated this 9th day of October, 2012.

6

7

8   _____

9   Jim C. Shirley
    Pershing County District Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POINTS AND AUTHORITIES**

**I.      Introduction**

        The above-entitled matter came before the Court due to an alleged dispute between Plaintiff, Black Rock City, LLC ("Black Rock City"), and Pershing County Elected Officials in relation to the application of Nevada Revised Statutes (NRS) 244.354 *et. seq.* in relation to outdoor festivals of more than 1000 people.  Under NRS 244.354, Pershing County was required to enact an ordinance regulating outdoor festivals (defined essentially as an outdoor assembly of more than 1000 people).  Under NRS 244.3542 and 244.3543, a person or entity, such as Black Rock City, is required to submit a written application and obtain license before selling ticket to any concerning Pershing County's enactment and enforcement of a permitting process which affects an event known as Burning Man.  Under NRS 244.3544, Pershing County is required, as part of its ordinance, to hold a hearing and grant, deny, or grant with conditions an Outdoor Festival License.

        Plaintiff has filed the instant declaratory relief action against five of Pershing County's Elected Officials in their official capacities and against the Board of Pershing County Commissioners.  The central thrust of the action challenges the application of NRS 244.354 *et. seq.* and the Pershing County Festival Ordinance (enacted pursuant to said statute) to the Black Rock City in relation to the annual Burning Man Event. Plaintiff asserts six causes of action against the named Defendants: (1) First and Second Causes of Action allege that declaratory relief should be granted based upon allegations of federal preemption; (2) Third and Fourth Causes of Action allege that declaratory relief should be granted based upon allegations of the violation of the First Amendment; (3) Fifth Cause of Action alleges that the Court should find a due process violation based upon a property interest in a 2005 and/or 2011 contract; and (4) Sixth Causes of Action allege that the Court should find a breach of the 2005 and/or 2011 contract.

        As set forth below, each and every claim asserted in the Complaint lack merit as a matter of law and should be denied.  Even assuming that the allegations set forth in the

1   Complaint were to be true and the facts were to be construed in favor of the Plaintiff,

2   each and every Cause of Action, together with the Complaint should be dismissed with

3   prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to a state claim(s) upon which

4   relief may be granted.

5     **A.**  **Standard:** *Rule 12(b)(6) Motion to Dismiss*:  A dismissal for failure to

6   state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is limited to the

7   contents of the complaint and the documents attached to the complaint.[1]  A complaint

8   should be dismissed under Rule 12(b)(6) if "it appears beyond doubt that plaintiff can

9   prove no set of facts in support of his claim which would entitle him to relief."[2]  For

10   purposes of the Rule 12(b)(6) Motion to Dismiss, all allegations of material fact are taken

11   as true and construed in the light most favorable to the non-moving party.[3]  Dismissal

12   under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory; or (2)

13   insufficient facts under a cognizable legal theory.[4]

14     **B.**  **Plaintiff's Burden In Drafting Complaint:**  The Plaintiff has the burden

15   of production to come forward with facts in their Complaint establishing a *prima facie*

16   case.[5]  Plaintiff may not rely on "mulled allegations," "legal conclusions masquerading as

17   factual conclusions," or unwarranted deductions" to defeat a motion to dismiss.[6]  The

18   complaint must be sufficiently pled factually such that it "state[s] a claim to relief that is

19   plausible on its face."[7]  Facial plausibility occurs when the facts pled by the plaintiff

20

21

---

22   [1] *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003); *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir.1984).

23   [2] *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957).

24   [3] *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985), cert. denied, 474 U.S. 1056, (1986).

25   [4] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988) (citations omitted).

26   [5] *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

27   [6] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007); see also *Bright v. Westmoreland County*, 380 F.3d 729, 735 (3d Cir. 2004) (citations omitted).

28   [7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (Internal Quotations omitted).

1　"allow[] the court to draw the reasonable inference that the defendant is liable for the

2　misconduct alleged."**8**

3　**II.　STATEMENT OF THE FACTS**

4　　　These facts must be extracted from the Complaint in this matter.  Defendant

5　Shirley specifically reserves and would deny many of the allegations set forth by the

6　Plaintiff in the Complaint and reserves the right to file an answer to the Complaint if the

7　Court denies this Motion in part or whole.  HOWEVER, pursuant to a Rule 12(b)(6)

8　analysis, the Court assumes that the facts in the Complaint and the documents attached

9　thereto are true and accurate and granting the Motion rests on a finding that the

10　Complaint fails to state a claim upon which relief can be granted.   Defendant Shirley

11　would incorporate and adopt by reference the facts set forth in the Motion to Dismiss

12　filed by the Board of Pershing County Commissioners, Pat Irwin, Carol Shank, Darin

13　Bloyed, and Richard Machado.  Any additional facts pertaining to the Causes of Action

14　herein will be referenced specifically in the Argument Section.

15　**III.　ARGUMENT**

16　　　A.　***The Claims Contained In The Sixth Cause of Action Must Be***
17　　　　　***Dismissed Because The 2005 and 2011 Contracts Are Illegal***

18　　　Under a state law claim, Plaintiff alleges in its Sixth Cause of Action that

19　Defendant Board of Pershing County Commissioners (Board) is in breach of a 2005

20　contract and a 2011 contract with the Board because the Board has applied the festival

21　ordinance to Black Rock City.  (Complaint, ¶¶ 108-111).  In order to sustain its claim,

22　Black Rock City must establish: (1) the existence of a valid contract; (2) a breach by the

23　Board; and (3) damages resulting from the Board's breach.[9]  The three requirements are

24　read conjunctively and require proof of each.  This claim fails as a matter of law because

25　the "contracts" in question are illegal, *ultra vires* and are void *ab initio*.  As alleged by

26

27　——————————————
　　[8]　　　*Id*. at 678.
28　[9]　　　*Keife v. Metropolitan Life Ins. Co.*, 797 F.Supp.2d 1072, 1076 (D.Nev., 2011).
　　(citations *omitted*).

1   Black Rock City, the contracts attempt to exempt Black Rock City from state law

2   requirements and attempt to bind Pershing County in the future exercise of police powers.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                    *1.    Illegal Contracts*

3          Parties are free to contract, and the courts will enforce their contracts if they are

4   not unconscionable, illegal, or in violation of public policy.[10]   Contracts made in

5   contravention of the law do not create a right of action.[11]   It is widely recognize that

6   contracts entered into by municipalities, such as Pershing County, have certain

7   restrictions.  The United States Supreme Court stated that "the legislative power vested in

8   municipal bodies is something which cannot be bartered away in such manner as to

9   disable them from the performance of their public functions."[12]

10                   *2.    2005 and 2011 Contracts Are Ultra Vires, Illegal and Void*

11         It is well settled that a municipality cannot contractually deprive itself of its

12  police, legislative or governmental powers nor can it contractually restrict the future

13  exercise of such authority.[13]  If a public corporation enters into a contract that barters

14  away or otherwise restricts the exercise of its legislative or police powers, then the

15

16

---

17  [10]      *Rivero v. Rivero*, 125 Nev. 410, 216 P.3d 213 (2009) *citing to D.R. Horton, Inc. v.
     Green*, 120 Nev. 549, 558, 96 P.3d 1159, 1165 (2004) (citing unconscionability as a
18  limitation on enforceability of a contract); *NAD, Inc. v. Dist. Ct.*, 115 Nev. 71, 77, 976
     P.2d 994, 997 (1999) (stating "parties are free to contract in any lawful matter"); *Miller v.
19  A & R Joint Venture*, 97 Nev. 580, 582, 636 P.2d 277, 278 (1981) (discussing public
     policy as a limitation on enforceability of a contract).
20  [11]      *Vincent v. Santa Cruz*, 98 Nev. 338, 341, 647 P.2d 379, 381 (1982) *citing to
     Martinez v. Johnson*, 61 Nev. 125, 119 P.2d 880 (1941).
21  [12]      *Wabash Railroad v. City of Defiance*, 167 U.S. 88, 100 (1897).
22  [13]      10 E. McQuillin, The Law of Municipal Corporations § 29.07, at 277 (3d
     ed.1999); *Vermont Dept. of Public Service v. Massachusetts Mun. Wholesale Elec. Co.*,
23  558 A.2d 215, 222 (Vt.,1988). ("[A] public corporation may not enter into a contract that
     purports to restrict the future exercise of its legislative authority"); *Citing Byrd v. Martin,
24  Hopkins, Lemon & Carter, P.C.*, 564 F.Supp. 1425, 1428 (W.D.Va.1983), aff'd, 740 F.2d
     961 (4th Cir.1984); *Illinois Power & Light Corp. v. City of Centralia*, 11 F.Supp. 874,
25  885 (E.D.Ill.1935), *rev'd on other grounds*, 89 F.2d 985 (7th Cir.1937); *Barton v.
     Atkinson*, 187 S.E.2d 835, 843 (1972); and *City of Louisville v. Fiscal Court of Jefferson
26  County*, 623 S.W.2d 219, 224 (Ky.1981); *cf. Pierce Oil Corp. v. City of Hope*, 248 U.S.
27  498, 501, (1919) (where public welfare is involved, a contract not to legislate would have
     no effect)."

28

contract is ultra vires and void *ab initio*.[14]  These principles have been uniformly recognized and upheld.

A political subdivision of state government simply cannot contract away future use of its police powers.[15]  Such a contract is unenforceable because it is illegal and void *ab initio*.  Municipalities simply cannot barter away their police powers.[16]  A municipality, like Pershing County, does "not have the authority to enter into such a contract, which effectively contracts away the exercise of its police powers."[17]  As a political subdivision of state government, Pershing County lacked the authority to enter into the 2005 or 2011 Contracts.  On the face of the complaint, Black Rock City clearly alleges that the intent and effect of the contracts was to bind Pershing County's ability to exercise its police powers and legislative authority.  Black Rock City alleges that "the County agreed that the Festival Ordinance would not apply to the Burning Man Event and that the County would amend its Festival Ordinance to exempt Burning Man from its scope."  (Complaint, ¶ 40).

To further understand the problem created by the County and Black Rock City, it must be understood that the County is a political subdivision of the State of Nevada.  As

---

[14]    *Byrd*, 564 F.Supp. at 1428.

[15]    *Florida case of P.C.B. Partnership v. City of Largo*, 549 So.2d 738 (Fla.Dist.Ct.App.1989). (Contract suit, "[t]he City does not have the authority to enter such a contract, which effectively contracts away the exercise of its police powers."); *City of Belleview v. Belleview Fire Fighters, Inc.*, 367 So.2d 1086, 1088 (Fla.App., 1979); *Hartnett v. Austin*, 93 So.2d 86, 89 (Fla. 1956); *Snow v. Van Dam*, 197 N.E. 224 (Mass. 1935); *V. F. Zahodiakin Eng. Corp. v. Zoning Board of Adjust.*, 86 A.2d 127 (N.J., 1952); *Houston Petroleum Co. v. Automotive Prod. C. Ass'n*, 87 A.2d 319 (N.J. 1952); *Marco Development Corp. v. City of Cedar Falls*, 473 N.W.2d 41 43-44, (Iowa,1991); *Oakes Constr. Co. v. City of Iowa City*, 304 N.W.2d 797, 808 (Iowa 1981); 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 29A.03[1][b], [f], at 27, 33–34 (1990);

[16]    *Vermont Dep't of Pub. Serv. v. Massachusetts Mun. Wholesale Elec. Co.*, 558 A.2d 215, 222 (Ver. 1988) (municipality's statutory authority to exercise its police powers is in nature of public trust and thus cannot be bartered away).

[17]    *P.C.B. Partnership v. City of Largo*, 549 So.2d 738, 741 (Fla.App. 1989) *citing Hartnett v. Austin*, 93 So.2d 86 (Fla.1956); *City of Belleview v. Belleview Fire Fighters, Inc.*, 367 So.2d 1086 (Fla. 1st DCA 1979); *City of Safety Harbor v. City of Clearwater*, 330 So.2d 840 (Fla. 2d DCA 1976).

such, its powers are derivative from the powers given by the State of Nevada.  "All acts beyond the scope of the powers granted [by the legislature to the county] are void."[18] Essentially, the contract permitted Burning Man to be exempt from the County Festival Ordinance and to not comply with state law (something the county has no authority to do[19]), while simultaneously binding Pershing County to never-ending moratorium on its police powers and legislative discretion while it violated state law (*see supra*).

Use of word "***shall***" is "mandatory unless the statute demands a different construction to carry out the clear intent of the Nevada legislature."[20]  The following are mandatory provisions of NRS 244.354 *et seq.*:

> NRS 244.354 (indicating "the board of county commissioners of each county **shall** adopt an ordinance" regulating outdoor assemblies); NRS 244.3542 (indicating that a person who sells tickets or operates an outdoor assembly with more than 1000 individuals "**shall** obtain a license from the board of county commissioners of the county in which such assembly is proposed…"); NRS 244.3543 (providing that an application for a license "**shall**" be in writing); and NRS 244.3544 (providing that the Board of County commissioners "**shall**" hold a public hearing and determine whether it will grant, deny, or grant with conditions any outdoor festival license).

The Contract attempted to exempt Pershing County from its statutory duties.  It also attempted to bind Pershing County from exercising its police powers under Nevada Revised Statutes 244.354 *et. seq.*  Finally, it attempted to bind Pershing County to not use its discretion in accordance with NRS 244.354 *et. seq.*  While attempting to Bind Pershing County certainly made the contract "ultra vires and of no legal effect,"[21] it also

---

[18]     *Ronnow v. City of Las Vegas*, 57 Nev. 332, 65 P.2d 133, 136 (1937).

[19]     *Fine Airport Parking, Inc. v. City of Tulsa*, 71 P.3d 5, 13 (Ok. 2003) (municipality cannot exempt its conduct from mandatory provisions of a general statute); *City of Westminster v. District Court In and For Adams County*, 447 P.2d 537, 539 (Colo. 1968) (Even a court does not have the jurisdiction to order a municipality to disobey a valid and applicable mandatory statute).

[20]     *State of Nevada Employees Ass'n, Inc. v. Daines*, 108 Nev. 15, 19, 824 P.2d 276 (1992).

[21]     *Rockingham Square Shopping Center, Inc. v. Town of Madison*, 45 N.C.App. 249, 262 S.E.2d 705 (1980); *Vermont Dep't of Pub. Serv. v. Massachusetts Mun. Wholesale Elec. Co.*, 151 Vt. 73, 81–82, 558 A.2d 215, 222 (1988) (municipality's statutory

exempted Black Rock City from state law requirements.  Pershing County had no
authority to exempt Black Rock City from the mandatory provisions of state law.

It is goes without saying that no valid contract may be made which is contrary to
statute.[22]  Sanctioning the contracting-away of a statutorily imposed duty is contrary to
the public interest.[23]  An agreement providing for conduct which violates a statute "is
void based upon illegality of consideration."[24]   The general rule is that a contract which
violates a statute or public policy will not be enforced by the courts.[25]  One Court
succinctly indicated why the contract that Black Rock City seeks to enforce should be
unenforceable when it held:

> If we were to enforce this contract, we would be aiding and abetting the
> violation of the [the law]. It is a rule of general application that any
> bargain is illegal if its formation or performance is prohibited by statute,
> and it will not be enforced in the courts.....the principle applicable to this
> case was aptly stated:
>> If it clearly appears that a contract has as its direct object and
>> purpose a violation of the Federal or state constitution, Federal or
>> state statutes, some ordinance of a city or town, or some rule of the
>> common law, courts will not lend their aid to its enforcement. [26]

3.      *Dismissal Is Appropriate*

---

authority to exercise its police powers is in nature of public trust and thus cannot be
bartered away)
[22]      *Doe v. Ronan*, 937 N.E.2d 556, (Ohio 2010).
[23]      *Stelluti v. Casapenn Enterprises, LLC*, 1 A.3d 678 (N.J. 2010).
[24]      *Rice v. James*, 844 S.W.2d 64, 69 (Mo.App. 1992) *citation omitted.*
[25]      See, e.g., *Wechsler v. Novak*, 157 Fla. 703, 26 So.2d 884 (1946); *Department of
Motor Vehicles v. Mercedes–Benz of North America, Inc.*, 408 So.2d 627 (Fla. 2d DCA
1981) (on grounds of public policy, clauses in a contract which violate a statutory
provision are nugatory and will not be given effect); *Bond v. Koscot Interplanetary, Inc.*,
246 So.2d 631 (Fla. 4th DCA 1971) (generally, an agreement which violates a statute or
is contrary to public policy is illegal, void and unenforceable as between the parties).
[26]      *Naseef v. Cord, Inc.*, 216 A.2d 413, 417-18 (N.J., 1966) *citing to Samuel D.
Wasserman, Inc. v. Klahre*, 93 A.2d 628 (N.J.App., 1952); *Lehigh Valley R. Co., v.
United Lead Co.*, 133 A. 290 (N.J., 1926); Restatement, Contracts, § 580 (1932); *Zeitz v.
Foley*, 264 S.W.2d 267, 268 (Ky.Ct.App.1954) *citing to Vick v. Patterson*, 158
Cal.App.2d 414, 322 P.2d 548 (D.Ct.App.1958); *Wechsler v. Novak*, 157 Fla. 703, 26
So.2d 884, 887 (Sup.Ct.1946).

Based upon the foregoing, the contract is null and void and was so *ab initio.* Based upon Black Rock's own allegations (see ¶40), the contract was intended to restrict and obliterate Pershing County's ability to exercise legislative powers and police powers, was intended to:  (1) Require Pershing County to ignore its statutory duties under NRS 244.3544, 244.3545, 244.3546, 244.3547, and 244.3548; (2) Exempt Black Rock City from complying with NRS 244.3542, 244.3543; (3) Exempting Black Rock from complying with the other provisions relating to outdoor assemblies of Nevada Law as well as the County Ordinance that was mandated to be implemented pursuant to NRS 244.354.  Such a contract's intent and purpose is illegal because it would contravene state law and would be against public policy.  Such a contract is *ultra vires* because it requires the County to take action that outside their authority.  Dismissal is appropriate because there are no factual circumstances under which Black Rock City can claim that the contract was valid.  Therefore, it cannot prevail on its claim for breach of contract. Dismissal is appropriate under Rule 12(b)(6).

B. ***The Fifth Cause Of Action Must Be Dismissed Because There Is No Protected Property Right Involved That Would Give Rise To A Due Process Claim***

As it relates to the fifth cause of action, Plaintiff asserts that its procedural due process rights were violated when the Sixth Judicial District Court ordered, pursuant to a judgment on May 24, 2012, that the Board of Pershing County Commissioners comply with and honor their statutory duties.  Complaint, ¶¶ 103-107.  Boiled down to its essence, Black Rock City argues that it had a property right in the contractual provision which prohibited Pershing County in perpetuity from requiring Black Rock City to comply with NRS 244.354 *et. seq.*   While Black Rock City clothes its claim as one resting on the due process clause and the judgment of the district court, the true issue is whether Black Rock City had a protected property interest in the illegal and void 2005 and 2011 contracts.  Accordingly, lost in Black Rock City's conspiratorial allegations and meanderings is a complete failure to address this core issue of a protected right.  The fact that there is no claim as matter of law upon which relief can be granted because Black

1    Rock City never had a constitutionally protected property interest in the void and illegal

2    2005 and 2011 agreements.  *See Discussion supra.*  Accordingly, the fifth cause of action

3    fails as a matter of law.

4         The Fourteenth Amendment to the United States Constitution provides, "No State

5    shall ... deprive any person of life, liberty, or property, without due process of law...." "A

6    procedural due process claim has two distinct elements: (1) a deprivation of a

7    constitutionally protected liberty or property interest, and (2) a denial of adequate

8    procedural protection."[27]  Before examining whether Black Rock City was deprived of a

9    property interest in the 2005 and/or 2011 contract(s) without due process, it must be first

10   determined whether Black Rock City established in its complaint that it possessed a

11   "property interest" that is deserving of constitutional protection.[28]  As set forth in relation

12   to the Sixth Cause of Action, the contracts that Black Rock City seeks to enforce are void

13   and illegal and unenforceable.  Accordingly, the question becomes, does Black Rock City

14   have a protected interest in an illegal, void, and unenforceable contract.

15        It should be noted that "[p]roperty interests are not created by the Constitution."[29]

16   "Rather, [property interests] are created and their dimensions are defined by existing

17   rules or understandings that stem from an independent source such as state law-rules or

18   understandings that secure certain benefits and that support claims of entitlement to those

19   benefits."[30] "In order to possess a property interest in a benefit, an individual must have

20   more than 'an abstract need or desire for it' or 'a unilateral expectation of it.' "[31]  More

21   precisely, an individual must possess "a legitimate claim of entitlement to it."[32]

---

[27]      *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055 (9th Cir. 2006).

[28]      *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982
(9th Cir.1998) *Citing to Gilbert v. Homar*, 520 U.S. 924,  (1997).

[29]      *Id.* (*citing Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972))

[30]      *Id.* (*citing Roth*, 408 U.S. at 577).

[31]      *Id.*

[32]      *Id.*

Nevada law provides enforcement of an illegal contract will not occur in Nevada because such a contract is void.[33]  Most courts that have analyzed the issue have held that contracts that violate state or county law are void as a matter of law and do not create a valid property interest.  In *Shlay v. Montgomery*, 802 F.2d 918, 919 (7th Cir.1986), the plaintiff alleged that he had been wrongfully deprived of a property interest.  The Court held that "contracts which are null and void are incapable of creating property interests.[34] Other courts have similarly held that void contracts create no protected property interests.[35]  Accordingly, Plaintiff's right to procedural due process was not violated because it does not possess a protected property or liberty interest.  **Plaintiff will be unable to show any constitutionally protected property rights based on an illegal and void contract and therefore dismissal is appropriate because the complaint cannot and does not establish facts which could possibly prove the claim.**

C.    ***Plaintiff's Third and Fourth Causes of Action Fail To Identify Specific Issues Upon Which Their Infringement Claims Rest, Fail To Factually Allege A Plausible Cause Of Action And Fail To Allege As A Matter Of Law Facts Which Would Support Their Bald Assertions***

Plaintiff asserts that the Festival Laws unconstitutionally infringe on free speech which is guaranteed under the First Amendment of the United States.  Complaint, ¶¶ 92-102.  Defendant Shirley concurs with the other Defendant's Motion to Dismiss that Plaintiff cannot, as a matter of law, demonstrate that the Festival Laws violate the First Amendment and, as such, its third and fourth causes of action should be dismissed.

(1)    **Plaintiff's Third Cause of Action Should be Dismissed Because the Festival Laws are Facially Valid**

---

[33]    *Rivero*, 125 Nev. 410, 216 P.3d 213; *Vincent v. Santa Cruz*, 98 Nev. 338, 341, 647 P.2d 379, 381.

[34]    *Shlay*, 802 F.2d at 921-22.

[35]    *Walters v. Village of Colfax*, 466 F.Supp.2d 1046, 1056-57 (C.D.Ill.2006); <u>City of Beaumont v. Spivey</u>, 1 S.W.3d 385, 395-96 (Tex.Ct.App.1999); *Walsh v. Bollas*, 612 N.E.2d 1252, 1254-56 (Ohio App.1992); *Gwathmey v. Burgiss*, 88 S.E. 816, 818 (S.C. 1916); *Yasnoff v. Hallick*, 963 P.2d 747, 749-50 (Or.App.,1998)(property right cannot be drawn from a void contract).

In its third cause of action, Black Rock City alleges that the "Festival Laws are directed towards speech and expressive conduct" and that the festival laws "lack sufficient standards to guide the exercise of discretion by County licensing officials." Complaint, ¶ 94.  Black Rock City fails to cite to any specific problems with the Festival Ordinances that justify its legal conclusion that the laws are directed towards "speech and/or expressive conduct" or lack the necessary limitations or guidance on discretion. As such, Black Rock City relies on "mulled allegations" and "legal conclusions masquerading as factual conclusions," and fails to "state a claim to relief that is plausible on its face."  As such, the Third Cause of Action should be dismissed as failing to state claim upon which relief could be granted.

Without having specific factual allegations, an attempt will be made to address the claims set forth in the Complaint.  Essentially, Black Rock City raises a facial constitutional challenge and a challenge to the specificity given in the festival laws as to the discretion that county officials can exercise.  In their Motion to Dismiss, the other Defendant's address the arguments relating to Cause of Action Three.  Defendant Shirley would incorporate and adopt the arguments and conclusions of the other Defendant's Motion to Dismiss by reference.

In addition to those arguments, Defendant Shirley would assert additional facts that support the conclusion reached by the other Defendants.  As noted by the other Defendants, the Commissioners enacted provisions restricting the ability to consider the content of speech at an outdoor festival in the application process.  Additionally, it is clear that the County made efforts to make sure that the ordinance was neutral as to the "content of the message" neutral.  In the "WHEREAS" clauses (pages 1 and 2 of Exhibit

M attached to the Complaint), the County Commissioners noted that the ACLU and Black Rock City commented on the Supreme Court's decision <u>Forsyth County, Georgia v. Nationalist Movement</u>, 505 U.S. 123 (1992) (proving "[r]egulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated comply with the First Amendment. The Commissioners found that changes had to be made to the 2004-2011 Festival Ordinance to remove provisions that "presumptively violated the doctrine in <u>Forsyth County</u>."

Clearly, the Commissioners were concerned with ensuring that the final product did not regulate the content of speech. Just as the Commissioners attempted to ensure that there were no preemption issues (see pgs. 18-20, and 28, and 30 of Exhibit M), the Commissioners were trying to set forth nondiscretionary and non-discriminatory conditions for the issuance of the permit. The intent evidenced by both State Festival Law and Pershing County's Festival Ordinance clearly promote the idea that the County was not trying to impose restrictions based upon speech but on safety and health requirements. Furthermore, the County limited its discretion to ensure that sufficient guidelines were followed so that content specific regulation did not occur.

**(2)** **Plaintiff's Fourth Cause of Action Should be Dismissed Because it Cannot Demonstrate that the Festival Laws are Unconstitutional As Applied**

Defendant Shirley would incorporate by reference and adopt the arguments set forth in the other Defendants' Motion to Dismiss. Plaintiff's Fourth Cause of Action should be dismissed with prejudice for failure to state a claim upon which relief can or should be granted based upon those arguments and conclusions.

D. *Preemption Issues (Relating to Causes of Action 1 & 2)*

1. <u>*Preemption Generally – Supremacy Clause*</u>

The Supremacy Clause of Article VI of the United States Constitution provides that in cases of conflict, the state law must yield to federal law. In such cases, federal law is said to have "preempted" state law. The federal preemption of state law typically falls into two categories: express preemption and implied preemption (includes Field and Conflict Preemption). ***PRESUMPTION AGAINST PREEMPTION:*** "[A] cardinal rule of preemption analysis is the starting presumption that Congress d[id] not intend to supplant state law."[36] "This presumption against preemption takes on added significance where federal law is claimed to bar state action in fields of traditional state regulation."[37] Absent a "clear and manifest purpose of Congress," "the historic police powers of the States" are not "superseded by [a] Federal Act."[38]

> 2. *Federal Property and Preemption Analysis*

> Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause. And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause."[39]

While the federal government has certainly has the power to legislate, it has not asserted exclusive jurisdiction over the public lands within the states.[40] The federal government has left the states free to enforce their criminal and civil laws on federally managed lands.[41] The question in the present case is whether Congress has enacted legislation with respect to federal land that would preempt the County/State Festival Ordinance. The Supreme Court set forth the following preemption analysis:

---

[36] *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654 (1995).

[37] *Kuehne v. United Parcel Serv., Inc.,* 868 N.E.2d 870, 873 (Ind.Ct.App.2007).

[38] *Jones v. Rath Packing Co.,* 430 U.S. 519, 525-26 (1977).

[39] *California Coastal Comm'n v. Granite Rock,* 480 U.S. 572, 581 (1987).

[40] *Kleppe v. New Mexico,* 426 U.S. 529, 96 S.Ct. 2285, 2293–2294, 49 L.Ed.2d 34 (1976).

[41] *Id.*

[S]tate law can be pre-empted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.[42]

A special recreation permit is governed by the Code of Federal Regulations, which recognizes that two Congressional acts are controlling, to with the "Federal Land Policy and Management Act of 1976" ("FLPMA"--43 U.S.C. §1701 *et seq.*) and the "Federal Lands and Recreation Enhancement Act" ("FLREA"-- 16 U.S.C. §6801 *et seq.*)[43]. FLPMA sets forth the Congressional declaration of policy regarding the disposition and management of federal public lands.[44]  The FLPMA's intended purpose was *not* to preempt or conflict with state laws.[45]  The savings provision of the FLPMA reads as follows:

"(g) Nothing in this Act shall be construed as limiting or restraining the power and authority of the United States or--…
(6) or as a limitation upon any State criminal statute or upon the police power of the respective States, or as derogating the authority of a local police officer in the performance of his duties, or as depriving any State or political subdivision thereof of any right it may have ***to exercise civil and criminal jurisdiction on the national resource lands***; or as amending, limiting, or infringing the existing laws providing grants of lands to the States."[46]

Similarly, the provisions of the FLREA clearly reference Congressional intent with the following language: "This bill is not intended to preempt any State, local or

---

[42]     *Coastal Comm'n*, 480 U.S. at 581, (citations omitted).
[43]     43 CFR 2931.3 (March 23, 2007).
[44]     *Carden v. Kelly*, 175 F.Supp.2d 1318, 1324 (2001).
[45]     *Id.*
[46]     *Id.*; *citing to* 43 U.S.C. § 1701(g)(6) and Savings Provisions Section 701 of Pub.L. 94-579.

tribal law."[47]  "[W]e accordingly begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."[48]  Reading the plain language of the provisions from both the FLPMA and FLREA, it is abundantly clear that Congress, through plain and unambiguous language, did not intend to preempt any State or local laws.[49]  "Just as courts may not find measures pre-empted in the absence of clear evidence that Congress so intended, so must they give full effect to evidence that Congress considered, and sought to preserve, the States' coordinate regulatory role in our federal scheme."[50]

The Congressional intent is also mirrored in the Code of Federal Regulations (CFR).  Weight should be given to the interpretation given by the agency which bears the responsibility of enforcing federal statutes.[51]  43 CFR 2933.31(Feb. 21, 2007) provides that a Special Recreation Permit Holder must comply with all the "general rules of conduct contained in subpart 8365 relating to public safety, resource protection, and visitor comfort."  43 CFR 2933.32 (Feb. 21, 2007) provides that a Special Recreation Permit may be revoked if the permit holder "commit[s] any of the acts prohibited in subpart 8365."  43 CFR 8365.1-7 (May 17, 2010) (State and local laws) (i.e. "subpart 8365") provides in pertinent part that: "Except as otherwise provided by Federal law or regulation, State and local laws and ordinances shall apply and be enforced by the appropriate State and local authorities."  The plain language of the CFR regulations indicate that state police powers are not preempted by the regulations involving special recreation permits.

---

[47]    House Report 108-790. http://www.gpo.gov/fdsys/pkg/CRPT-108hrpt790/html/CRPT-108hrpt790-pt1.htm.
[48]    *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).
[49]    *Cannon v. University of Chicago*, 441 U.S. 677, (1979) (Congress is presumed to know the effect of its acts).
[50]    *California v. Federal Energy Regulatory Commission*, 495 U.S. 490, 497, (1990).
[51]    *Wyeth v. Levine*, 555 U.S. 555, 577 (2009) (agencies "have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress' ") (citations *omitted*).

3.      *Black Rock City Failed To Establish An Express Preemption Claim*

Express preemption occurs when a federal law specifically or "expressly" states that it preempts state or local law.  "In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.' "[52]  "Congress can define explicitly the extent to which its enactments preempt state law."[53]  However, even "if a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains."[54]  When Congress has expressed a determination to preempt, state law is only preempted "to the extent that it actually conflicts with federal law."[55]

The analysis of the claims in Causes of Action One and Two must begin with an analysis of congressional intent.  As noted above in relation to Federal Public Lands, there is no evidence to indicate that Congress intended to preempt state civil and criminal laws under the FLMPA or FLREA.  In fact, quiet to the contrary, Congress has indicated that it did **NOT** intend to preempt state civil and criminal law.  Furthermore, the Police Powers exercised under NRS 244.354 *et. seq.* and the Pershing County Code[56] existed prior to enactment of the FLMPA.  "Police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."[57]

The BLM Permit Conditions specifically provide that the "permittee shall comply with all federal; state; and local laws; ordinances; regulations;" and "shall ensure that all persons under the authorization have obtained all required Federal, State, and local

---

[52]      *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, (2005).
[53]      *English v. General Electric*, 496 U.S. 72, 78 (1990).
[54]      *Group v. Good*, 555 U.S. 70, 76 (2008).
[55]      *English*, 496 U.S. at 79; *Pacific Gas & Electric Co. v. State Energy Commission*, 461 U.S. 190 (1983) (Dealing with nuclear energy plants).
[56]      *See Exhibit #1 (Copy of the 1970 Festival Ordinance).*
[57]      *Wyeth*, 555 U.S. at 565, 1187.

1   licenses or registrations." *See* Exhibit O to the Complaint, page 2, ¶ a.  Black Rock

2   City's own complaint provides facts that defeat a claim of preemption.

3          Nothing in complaint alleges any express federal provision that would create a

4   preemption issue or that would overcome the presumption against preemption.

5   Furthermore, Congress expressly indicated that it was not preempting state laws in

6   passage of the enabling legislation.  The intent of Congress governs and there is no

7   express preemption.  To the extent that the claims under Cause of Action One and Cause

8   of Action Two rely on a theory of express preemption, such claims cannot not be proven

9   beyond a doubt.

10          4.     *Black Rock City Failed To Establish A Field Preemption Claim*

11          Express preemption cases are less common because Congress' intent to preempt

12   state and local laws must be expressed clearly in the legislation.  Most preemption cases

13   involved implied preemption – situations in which Congress has not explicitly indicated

14   that it intends to preempt state or local law, but in which the structure or the purpose of

15   the federal legislation suggests that Congress intended to displace state and local law.

16   The United States Supreme Court has identified two types of implied preemption: field

17   preemption and conflict preemption.[58]

18          "Field preemption" occurs where the scheme of federal regulation is so pervasive

19   as to make reasonable the inference that Congress left no room for the states to

20   supplement it.[59]  "[Field preemption] reflects the view that Congress's intent to occupy a

21   given field can be inferred from the pervasiveness of federal regulation and/or the

22   dominance of the federal interest in a particular area of legislative activity."[60]  In field

23   preemption, as with other preemption categories, the issue is always one of congressional

24   intent.  Congress will be deemed to have preempted an area only where either: (1) Its

25

26

27   [58]     *See Gade v. National Solid Wastes Management*, 505 U.S. 88 (1992).

28   [59]     *Id.*

     [60]     *Mass. Assoc. of HMOs v. Ruthardt*, 194 F.3d 176, 179 (1st Cir.,1999)

1   intent is unmistakable; or (2) Where "the nature of the regulated subject matter permits

2   no other conclusion."[61]

3         The analysis of a field preemption claim requires that, first, the Court identify the

4   legislative field that the state law implicates and, second, determine if Congress intended

5   to occupy the entire field.[62]  The Supreme Court has noted that "in assessing the

6   boundaries of the federal law— i.e., the scope of its pre-emptive effect—the Court should

7   look to the federal statute itself, rather than speculate about Congress' unstated

8   intentions."[63]

9         There is clear indication that Congress did not intend to preempt state law or to

10  occupy the entire field of regulation and that it specifically was not preempting state

11  police powers.  The State of Nevada has a historic need to exercise its police power to

12  ensure safety of its citizens and those individuals in its borders that conduct an assembly

13  of more than one thousand people that may cause sanitary, water, fire, police, safety, and

14  other welfare related issues.  As to the second prong, nothing in the Congressional act

15  indicate an inclination to occupy the entire field or to prevent local counties from

16  promoting safety and welfare, while simultaneously ensuring that the costs incurred by

17  local government due to an outdoor assembly like Burning Man are recouped.  Even the

18  BLM recognizes in CFR 43 CFR 8365 that the state law statutes are not preempted and

19  that permittees must comply with local and state laws.  The BLM Permit General

20  Conditions indicate that an Applicant must comply with State laws and that state laws are

21  not preempted by the federal action.  Accordingly, there is no basis for a determination of

22  field preemption.  Black Rock City has failed to set forth facts that would prove a field

23  preemption claim.  Accordingly, because there is no doubt that they cannot prove it, this

24  claim must be dismissed.

25         6.      *Black Rock City Failed To Prove A Conflict Preemption Claim*

26

27  [61]      *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132 (1963).
    [62]      *Martin ex rel. Heckman v. Midwest Express Holdings, Inc.,* 555 F.3d 806, 808-09
28  (9th Cir.2009).
    [63]      *Wyeth*, 555 U.S. at 596, (*citations omitted*).

The second type of implied preemption, "conflict preemption," occurs if there is an actual conflict between Federal and state law.  A "conflict" in terms of preemption requires that either an "impossibility" of compliance with the federal and state requirements or "an obstacle to the accomplishment of Congress' objectives."[64]  Under an impossibility analysis, the real issue is whether the federal and state regulations are drafted in such a way that it is impossible for a person to obey both the federal and state regulations simultaneously.[65]  To determine whether a state law stands as an obstacle to the accomplishment of Congressional objectives, a court must examine the federal statute and identifying its purpose and intended effects.[66]  Ultimately, the state law must be inconsistent with the Congressional intent.

While Black Rock City alleges that there is a conflict between the Potential BLM Permit and Pershing County License Conditions, it does not allege what the alleged conflict is in terms of preemption.  Black Rock City's claims fail legally and factually because Black Rock City has not specifically pled any facts which show that there is a preemption conflict.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."[67]

Plaintiff's First Cause of Action fails to allege specific facts which would demonstrate that a conflict exists between federal law and the Festival Laws.  Without identifying any specific conflict, the First Cause of Action alleges that the Pershing County Festival Ordinance "[s]pecifies criteria for approval and authority to impose obligations on the Burning Man Event which are different from and inherently conflict" the BLM Permit" and conflict with  federal law and BLM's rights.  (*See* Complaint, ¶86).  Based upon this alleged conflict, Black Rock City argues a violation of the Supremacy Clause.  (*Id.* ¶87).  An "inherent conflict" is not the same as a preemptive conflict.  When

---

[64]     *Ruthardt*, 194 F.3d at 179.; *Whistler Invs., Inc. v. Depository Trust and Clearing Corp.*, 539 F.3d 1159, 1166 (9th Cir.2008).
[65]     *See McDermott v. State of Wis.*, 228 U.S. 115, (1913)
[66]     *Crosby v. National Foreign Trade Council*, 530 U.S. 363, (2000).
[67]     *Ashcroft*, 556 U.S. at 678**.**

1    analyzing a case under the theory of conflict preemption, the court must ask if the intent

2    of Congress is able to be carried out, or if the state law in question in inconsistent with

3    that intent, or if the enforcement of Congressional intent is rendered impossible by the

4    presence of the state law.[68]

5          "Inherent conflict" does not render compliance with both federal and state laws

6    impossible.  Congress intent with allowing special use permits on BLM managed

7    property was to: (1) Establish outdoor recreation as one of the principal uses of those

8    lands (*See* 43 U.S.C. §§ 1701(a)(8) and 1731); and (2) Allow BLM to establish, modify,

9    charge, and collect recreation fees for use of certain federal recreation lands and waters

10   (*See* 16 U.S.C. § 6802). Furthermore, Congress has indicated the it did not intend to

11   preempt state criminal and civil laws are not preempted. "Inherent conflict" does not set

12   forth facts showing or legal basis that the state law is inconsistent with Congress' express

13   intent.  "Inherent conflict" does not set forth a legal basis to conclude that the express

14   intent of Congress cannot be carried out.

15         Plaintiff's second cause of action is no better.  The Second Cause of Action

16   specifically limits itself to the 2012 Pershing County Festival License Conditions,

17   alleging preemption by the 2012 BLM Permit because conditions are allegedly "different

18   and/or more restrictive" than the 2012 BLM Permit.  (Id. ¶90).  "Different and/or more

19   restrictive" does not render compliance with both federal and state law impossible nor

20   does it interfere with Congressional intent.  Black Rock City provides a laundry list of

21   conditions without identifying how any conflict under a preemption analysis.  Rather,

22   Black Rock City relies on conclusory allegations without any specifics.

23         The failure becomes all the more apparent with an analysis of the Pershing

24   County Festival Ordinance (Exhibit #M & #N of the Complaint) (enacted under the

25   Pershing County Code (herein "PCC")).  While Black Rock City attached Exhibit #M,

26   Black Rock City has not informed the Court in its pleadings PCC 5.16.105 provides:

27

28

[68]    *Ruthardt*, 194 F.3d at 179.

*In the event that an Applicant has also submitted an application to the Bureau of Land Management for a Special Recreation or Use Permit on public lands managed by the Bureau of Land Management (BLM) and the BLM has required and approved a Plan of Operations*, to the extent that the plans duplicate requirements, the approval by the BLM of a Plan of Operation shall be accepted and shall not be grounds for denial of a License.

In addition to other conditions required by this chapter, *any conditions that are made part of the Plan of Operations by the BLM **shall** be adopted by the Pershing County Board of Commissioners as being sufficient for the Plan of Operations set forth in this Chapter, provided that all the issues that need to be addressed in a Plan of Operations under this chapter are addressed*.  In the event that the BLM Plan of Operations does not cover all the services required under this Chapter, the Applicant shall prepare and file a Supplemental Plan of Operations to cover those aspects not covered in the BLM Plan.  *An Applicant may submit the final BLM approved plan of operations as part of the application to satisfy the requirements for a Plan of Operations herein.* (Emphasis added)

Black Rock City's Omission is intentional because such a clause would defeat much of what Black Rock City identifies in its laundry list of nonspecific conflicting items.  The specific "Plan of Operations" conditions are found in PCC 5.16.100: (1) Water Facilities; (3) Food Concessions; (4) Sanitation Facilities; (5) Medical Facilities; (6) Parking Areas; (7) Access and Parking Control; (8) Hours of Operation; (9) Illumination; (10) Overnight Camping Facilities; (11) Fire Protection; and (12) Communication System.  These Plan of Operations conditions are part of the laundry list provided by Black Rock City.  As it relates to these Plan of Operations conditions, there is no basis to conclude that a conflict exists on these issues because the Festival Ordinance already cedes to the federal government's approach on these issues.  In fact, a review of the Exhibit S & T shoes that these conditions are not in conflict in an practice.  As to the Plan of Operations Conditions, there is no Supremacy Clause issue.

The Pershing County Festival Ordinance also requires that Police Protection be arranged.  The BLM specifically requires in its Special Recreation Permits, as alleged by Black Rock City in their complaint (*See* Complaint, ¶4), that Black Rock City is required to make provision for and pay for enforcement of state laws by the Pershing County

1    Sheriff's Office.  Accordingly the Police Protection provisions are not in conflict with

2    BLM regulations or federal law.  Furthermore, the licensing process actually protects

3    Black Rock City by providing a readily available remedy to seek judicial review (not

4    available in a contract negotiation contract provided for in the BLM Permit).

5         With respect to Fire Protection, PCC 5.16.120 (c) provides that the BLM

6    requirements will be accepted unless: "(1) There are problems which would inhibit,

7    prohibit, or restrict the Pershing County fire, rescue, police, and other emergency services

8    from providing services which the BLM/Federal Government does not provide; or (2)

9    There are unfunded mandates placed on Pershing County which are created by the BLM

10   Special Use/Recreation Permit."  The provision goes on to provide that "[i]f there is a

11   conflict, Pershing County will attempt to resolve the issue with the BLM and invite input

12   on how to resolve the issue from the BLM in accordance with standard Memoranda of

13   Understanding between Pershing County and the BLM."  Accordingly, there is no

14   preemption conflict with Federal Law.

15        *Unlawful Acts*:  Its complaint (Complaint, ¶81) indicates that Black Rock City

16   believes compliance with Pershing County Code 5.16.180 (D) (3)-(7) (local codification

17   of NRS 244.3548 (3)-(7) as required by NRS 244.3548) violates the preemption doctrines

18   because it requires something in outside of the BLM Permit.  These provisions are also

19   made part of the laundry list relating to the second cause of action.  The specific

20   provisions of PCC 5.16.180 (D) prohibit the Licensee from creating a "nuisance,"

21   allowing "obscene, indecent, vulgar, or lewd exhibitions," allowing "disorderly conduct"

22   at the festival, allowing possession or sale of intoxicating liquor without appropriate

23   permission, or allowing the use, possession, or sale of controlled substances.

24        In addressing this issue, there is no conflict because the BLM Permit and 43 CFR

25   8365 provide that Black Rock City is required to comply with local laws (and Nevada

26   State law).  This would necessarily include the provisions of PCC 5.16.180.  The

27   provisions of the BLM Permit require that Black Rock City comply with local and state

28   laws in order to obtain and keep the Special Recreation Permit.  *See* Exhibit O of the

Complaint.  A strong presumption exists that the historic police powers of the states were not to be preempted unless that was the clear and manifest purpose of Congress.[69]  The historic police powers of the state extends to almost everything within its borders from the suppression of nuisances to anything else that the legislature may deem opposed to the public welfare.[70]

The aforementioned provisions are all express state police powers that have been both historic and ongoing.  The regulation of alcohol use and sales is an express power given to the State of Nevada under the 21st Amendment.  The remaining powers are, at a minimum, guaranteed under the Tenth Amendment.  The only one of these areas that is addressed in the BLM Permit is possession of controlled substances.  In this instance, there is no difference between the BLM Permit and County License Condition.  Furthermore, it is recognized that there is concurrent jurisdiction by the State and Federal governments over controlled substances.  In order to prevail on its conflict argument, **Black Rock City must allege and prove that the federal government is authorizing it to violate state laws or that the BLM Permit requires action that makes it impossible to stay in compliance with state law police power enactments.**  There is no conflict preemption.

### 7.   *Dismissal of Counts I and II*

[69]   *California v. ARC America Corp.*, 490 U.S. 93, 101 (1989).
[70]   *See Bartemeyer v. Iowa*, 85 U.S. 129 (1873); *Boston Beer Co. v. Massachusetts*, 97 U.S. 25 (1877); *Northwestern Fertilizing Co. v. Village of Hyde Park*, 97 U.S. 659, (1878); *Stone v. Mississippi,* 101 U. S. 814 (1879); *Foster v. Kansas*, 112 U. S. 201 (1884); *Mugler v. Kansas*, 123 U. S. 623(1887); *Powell v. Pennsylvania*, 127 U. S. 678(1888); *Kidd v. Pearson*, 128 U. S. 1 (1888); *Kimmish v. Ball*, 129 U. S. 217 (1889); *Paul v. Jackson*, 910 S.W.2d 286 (Mo.App., 1995) (Nuisance); *U.S. v. Bird*, 401 F.3d 633 (5th Cir., 2005) (disorderly conduct); *Roberts v. Clement*, 252 F.Supp. 835, (E.D.Tenn., 1966) (lewd conduct or indecent exposure); *California v. LaRue*, 409 U.S. 109, 115, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (Twenty–First Amendment states have primary jurisdiction and great discretion to regulate the sale and use of alcohol); *Whipple v. Martinson*, 256 U.S. 41, 41 S.Ct. 425 (1921) ("no question of the authority of the state in the exercise of its police power to regulate …habit forming drugs...The right ..is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question").

Causes of Action One and Two of Black Rock City's Complaint fail to establish either express or implied preemption.  It would "appear[] beyond doubt" that the Complaint fails to set forth facts which would entitled Black Rock City to relief under either Cause of Action One or Two.  Furthermore, the claims are either moot or not ripe as set forth above.  Dismissal with prejudice is appropriate.

D.      ***The First, Second, Third, and Fourth Causes of Action Are Either Moot And/Or Not Ripe***

As Black Rock City's Preemption and First Amendment Causes of Action assert facts which apply to the 2012 Burning Man Event, those claims are moot without some showing of a preemption violation or First Amendment violation.  Nothing in the complaint shows that the 2012 Event would not occur because of the alleged preemption issue.  Nor has Black Rock City amended its complaint since completion of the 2012 Event (service was not effectuated until weeks after the 2012 Event).  Because the matter is moot, there is no case or controversy as that can be litigated.

As the First Amendment and Preemption Causes of Action relate to events in 2013 or subsequent events, the Court should determine "the ripeness of [the] claim[s] by asking whether the issues are fit for judicial decision and whether the parties will suffer hardship if [the Court] decline[s] to consider the issues."[71]  Application of the Pershing County Festival Ordinance to the 2013 Burning Man Event has not occurred.  Black Rock City has not applied for a license.  Without a license, there is no way to determine that an injury will occur.  The BLM Permit requires that Black Rock City comply with the provisions of Nevada Revised Statute.  Black Rock City cannot even begin selling their tickets to the event until they have obtained a license.  See Exhibit M and NRS 254.354 *et. seq.*

In the context of Black Rock City's pre-enforcement constitutional challenges, where Black Rock City has not been penalized for a violation of the ordinance, "neither the mere existence of a prescriptive statute nor a generalized threat of prosecution

---

[71]      *Canatella v. State of California*, 304 F.3d 843, 854 (9th Cir.2002).

satisfies 'the case or controversy' requirement."[72]  Black Rock City has not shown more than a generalized allegation that the Festival Ordinance will be preempted by federal law and that there may be some First Amendment curtailment.  Black Rock City fails to allege specific facts that show more.  They have not shown that any injury has occurred or that any injury is about to occur.  Rather, the conspicuous absence of any alleged injury in 2012 speaks loud and clear that there are no real injuries involved.  The bare boned and unsubstantiated allegations are insufficient as a matter of law to overcome the justiciability requirement of having a ripe case or controversy.  All four counts should be dismissed.

### G.    CONCLUSION

Based upon the points and authorities herein, Plaintiff fails to allege sufficient facts to support their claims or to overcome the inherent legal problems with the claims asserted.  The First, Second, Third, Fourth, Fifth, and Sixth Causes of Action should be dismissed because they fail to meet the facial threshold of plausibility because they are legally unrecognizable claims on the facts of this case.  The claims are not viable and do not give rise to liability against Defendant Shirley or, for that matter, the other Defendants.  Because Plaintiff fails to state a claim upon which relief may be granted, Plaintiff's Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 9th day of October, 2012.

JIM C. SHIRLEY
PERSHING COUNTY DISTRICT ATTORNEY
P.O. Box 299
Lovelock, Nevada  89419
(775) 273-2613
Facsimile (775) 273 7058
Email:  JShirley@pershingcounty.net

---

[72]    *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir., 2010) (quotations omitted).

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of The Pershing County District Attorney's Office, and that on this date,  I filed the foregoing **MOTION TO DISMIS** with the United States District Court's CM/ECF system, which will serve the following parties electronically:

| Attorney Name | Telephone/Fax/Email | Party Represented |
|---|---|---|
| Tamara Reid, Esq.<br>Nevada State Bar #9840<br>Holland & Hart LLP<br>5441 Kietzke Lane, Second Floor<br>Reno, NV 89511 | Tel:    (775) 327-3000<br>Fax:    (775) 786-6179<br>Email:<br>treid@hollandhart.com | Plaintiff |
| Terry Gross, Esq.<br>Adam Belsky, Esq.<br>Gross Belsky Alonso LLP<br>One Sansome Street, Suite 3670<br>San Francisco, CA 94104 | Tel:    (415) 544-0200<br>Fax:    (415) 544-0201<br>Email:<br>terry@gba-law.com | Plaintiff |
| Brent T. Kolvet, Esq.<br>6590 S. McCarran Blvd., Suite B<br>Reno, Nevada 89509 | Tel: (775) 786-2882<br>Email: BTK@thorndal.com | Defendants, Bloyed, Irwin, Shank, Machado and Pershing County Bd. of Comm. |

DATED this 9th day of October, 2012.

SIGNED: _____

Lisa Pruit