**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BLACK ROCK CITY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 3:12-cv-00435-RCJ-VPC |
| ) | |
| PERSHING COUNTY BOARD OF ) | **ORDER** |
| COMMISSIONERS et al., ) | |
| ) | |
| Defendants. ) | |

This action—brought by the organizer and promoter of the "Burning Man" event against the Board of Commissioners (the "Board") of Pershing County, Nevada (the "County") and five individual Defendants in their official capacities—seeks a declaration that a county ordinance applicable to the event is unconstitutional under the First Amendment and otherwise preempted by federal law. Pending before the Court are two Motions to Dismiss (ECF Nos. 15, 16) and a Motion to Stay Discovery (ECF No. 53). For the reasons given herein, the Court grants the motions to dismiss in part and denies them in part. The Court denies the motion to stay discovery as moot.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Black Rock City LLC is the organizer of the "Burning Man" event (the "Event"), which has been held in the Black Rock Desert of northern Nevada since 1991. (Compl. ¶ 2, Aug. 16, 2012, ECF No. 1). The Event is an annual gathering of over 50,000 people into an "experimental community." (*Id.* ¶¶ 3, 22). Plaintiff designs and maintains a temporary "city" for

each annual event with over 600 "theme camps" funded and created by Event participants, including large artistic displays, some with participatory elements. (*Id.* ¶ 23).

Every year since 1991, with the exception of 2007, the Event has taken place on federal land administered by the Bureau of Land Management ("BLM"). (*Id.* ¶ 4). Accordingly, since 1992 the organizers of the Event have conducted it pursuant to a BLM permit (the "Permit") that specifies Plaintiff's rights and responsibilities with respect to safety, security, fire protection, emergency services, liquor, and protection of minors. (*Id.* ¶¶ 4, 28). The Permit requires Plaintiff to pay BLM actual costs, including those incurred by state and local agencies, and directs Plaintiff to contact the Pershing County Sheriff's Office ("PCSO") for law enforcement services. (*Id.* ¶¶ 4, 28–29). From 1995 until 2005, Plaintiff's fee to the BLM was a flat fee based on attendance at the Event. (*Id.* ¶ 30). In 2006, the BLM imposed a different calculation, charging for actual costs, i.e., the reasonable, documented costs of services provided by other agencies according to BLM cost recovery guidelines. (*Id.* ¶ 31). Rather than contracting with local agencies itself and requiring Plaintiff to reimburse it, however, the BLM required Plaintiff to contract directly with local agencies. (*Id.* ¶ 31). Therefore, between 2006 and 2011, Plaintiff contracted with PCSO to pay PCSO's actual expenses for law enforcement and judicial services related to the Event. (*Id.* ¶ 32). From 2006 to 2011, the respective expenses were $66,000; $110,000; $148,500; $156,000; $166,000; and $175,000. (*Id.*). The agreement with PCSO required the County to provide documentation of actual expenses after each year's Event. (*Id.* ¶ 33). The documentation provided after the 2011 Event indicated only $120,000 in actual law enforcement expenses, despite a bill of $154,000 for law enforcement (plus $14,000 for prosecution costs and $7000 for vehicle usage). (*Id.* ¶¶ 32–33). The County has never provided any itemized bill for judicial expenses as required under the agreement. (*Id.* ¶ 33).

Nevada requires each of its counties to adopt an ordinance to regulate and license outdoor assemblies of over 1000 persons. (*See* Nev. Rev. Stat. § 244.354; Compl. ¶ 37). Counties may

regulate for law enforcement presence, drinking water, sewage, food, toilets, medical facilities, parking space, camping facilities, indemnity or performance bonds, fire protection, financial statements, and communication systems. *See* Nev. Rev. Stat. § 244.3545(1)–(12).  Counties may also regulate for "[o]ther conditions determined by the board to be necessary to protect the health, welfare and property of local residents and persons attending the assembly." *Id.* § 244.3545(13).  Pershing County's relevant ordinance (the "Festival Ordinance"), as amended in 2004, requires a fee to be paid to the County for any event attended by over 1000 people. (*See* Pershing Cnty. Code § 5.16.020; Compl. ¶ 38).  In order to avoid litigation over the Festival Ordinance, Plaintiff and the County entered into agreements in 2005 and 2011 providing that the County would not apply the Festival Ordinance to the Event in exchange for Plaintiff's donations to the County and local charities. (Compl. ¶¶ 5, 40–42).  The donations were to begin at $40,000 per year, increasing with attendance at the Event according to a specified formula, with 75% paid directly to the County and 25% paid to nonprofit groups within the County that serve the County's residents. (*Id.* ¶ 40).  The County's portion of the payment was for any unspecified additional expenses the County may incur due to the Event. (*Id.*).  The first agreement was signed on behalf of the County on November 14, 2005 (the "2005 Agreement"). (*Id.*).  The 2005 Agreement required the County:

> to amend the current Pershing County Festival Ordinance such that it implements this Agreement.  *The County also agrees not to enact any other similar legislation that would tax or require Black Rock City to pay any festival, assembly or use fees to the County unless a state or federal law/statute requires such enactment of an ordinance, at which time the County will give notice and have an open meeting discussion with Burning Man*.

(*Id.* (quoting 2005 Agreement ¶ 3, Nov. 14, 2005, ECF No. 1-8) (emphasis in Complaint)).  The 2005 Agreement was to remain in effect "as long as the Burning Man Event is held in Pershing County." (2005 Agreement ¶ 4).  At the request of the County, the parties revised the agreement effective January 27, 2011 (the "2011 Agreement"). (*See* 2011 Agreement, Jan. 27, 2011, ECF

No. 1-9). The 2011 Agreement required fixed payments of $50,000 to the County and $12,000 to local charities. (Compl. ¶ 41). Like the 2005 Agreement, the 2011 Agreement was also to continue "as long as the Burning Man Event is held in [Pershing] County." (2011 Agreement ¶ 3). Like the 2005 Agreement, the 2011 Agreement also contained a clause preventing its circumvention via legislation or regulation:

> *As long as this Amended Agreement is in effect, the County agrees not to enact any future, or modify any existing, rule, ordinance, policy or regulation in a way that would result in the taxation, assessment or charge against [Black Rock City] in connection with holding the Burning Man Event on Federal land within County boundaries.*

(Compl. ¶ 42 (quoting 2011 Agreement ¶ 1 (emphasis in Complaint))). Plaintiff has complied with the 2005 and 2011 Agreements. (Compl. ¶ 43). The 2011 Agreement has collapsed. (*See id.* ¶¶ 6–11).

In November 2011, Defendant Pershing County District Attorney James Shirley advised a representative of Plaintiff that Judge Richard Wagner of the Sixth Judicial District Court had asked Shirley to draft a proposed amendment to the Festival Ordinance to make it applicable to the Event, including hundreds of thousands of dollars of new fees, and subjecting the Event to local regulation in a way that would conflict with the Permit from the BLM, e.g., by banning minors from the Event. (*Id.* ¶ 45). Plaintiffs allege that Judge Wagner was motivated by content-based animus against the Event. (*See id.* ¶ 46). The Board held a public hearing on the proposed amendment on November 16, 2011, which hearing Plaintiff's representatives attended in order to voice their opposition. (*Id.* ¶ 47). Shirley and Defendant Commissioner Darin Bloyed spoke in favor of enforcing state laws prohibiting minors from attending the Event. (*Id.* ¶ 48). Judge Wagner spoke in support of the amendment and against the Event in general, based upon his viewpoint that some of the content at the Event was "lawless" and "lewd[]," and that minors should not be exposed to it. (*Id.* ¶ 49). At a special meeting of the Board on November 30, 2011, Defendant Chairman of the Board Pat Irwin and Defendant Vice-Chairman of the Board Carol

Shank stated that state laws should be enforced to prohibit minors from attending the Event. (*Id.* ¶ 51). On February 1, 2012, the Board adopted amendments to the Festival Ordinance, increasing permit fees for outdoor assemblies up to $1.50 per person per day, which for an eight-day Event of 50,000 comes to $600,000. (*See id.* ¶ 52). The effective date of the Festival Ordinance was October 1, 2012; the first Event to which it will apply is the 2013 Event. (*See id.* ¶ 53).

On June 12, 2012, the BLM issued a permit for the 2012 Event, again requiring Plaintiff to enter into an agreement with the County for law enforcement services. (*Id.* ¶ 54). Plaintiff had already had trouble negotiating with PCSO by that time. (*See id.* ¶¶ 55–59). The County first informed Plaintiff on March 15, 2012 that six additional deputies would be needed, increasing the law enforcement costs to $180,000 for the 2012 Event. (*Id.* ¶ 55). On March 20, 2012, the County informed Plaintiff that the law enforcement budget had been increased again, to $282,000, because several commissioners had requested a doubled law enforcement presence to protect any children at the Event. (*Id.* ¶ 56). On April 20, 2012, Shirley and Defendant Pershing County Sheriff Richard Machado gave Plaintiff a revised budget of $428,384 for law enforcement, $25,000 for judicial services, $5000 for recording and secretarial services, and a $20,000 "contingency fee." (*Id.* ¶ 57). On May 1, 2012, the County submitted to Plaintiff a revised budget, indicating $346,700 in law enforcement fees, plus the additional $50,000 in fees included in the previous proposal. (*Id.* ¶ 58). Representatives of the County told representatives of Plaintiff that the County intended to repudiate the 2005 and 2011 Agreements. (*Id.*). At Board meetings held on May 2, 2012 and May 14, 2012, Plaintiff told the Board it would not sign any law enforcement agreement in which it agreed to repudiate the 2005 and 2011 Agreements. (*Id.* ¶ 59). The parties did not enter into any law enforcement agreement in 2012; rather, the law enforcement expenses were made a part of the license fee that the County charged to Plaintiff under the Festival Ordinance. (*See id.*).

Plaintiff cites to alleged public comments by Defendants indicating that they were concerned over the legality of their amendment of the Festival Ordinance, and that Defendants noted that one means by which they might avoid complying with the 2005 and 2011 Agreements was "collusive" (Plaintiff's words) litigation. (*See id.* ¶¶ 62–63). On May 15, 2012, Shirley filed a Petition for Writ of Certiorari, Mandamus, and/or Prohibition (the "Petition") with the Sixth Judicial District Court. (*See id.* ¶ 64). The "sham" Petition named the Board and the County as respondents and alleged that they had breached their duties in various ways; Plaintiff was not made a party. (*Id.* ¶ 65). The Petition asked the state court to order the commissioners to show cause why the court should not order them to: (1) notify Plaintiff that it was required to file an application to hold the Event in Pershing County; (2) notify Plaintiff that the Board could no longer perform under any contract (such as the 2005 and 2011 Agreements) exempting the Event from the Festival Ordinance; (3) notify Plaintiffs that the Board had exceeded its lawful authority in ever exempting the Event under the 2005 and 2011 Agreements; and (4) that the creation of those contracts were abuses of the commissioners' discretion. (*Id.* ¶ 66). Shirley's personal affidavit in support of the Petition was personally witnessed by Judge Wagner, to whom the Petition was assigned without recusal, despite Judge Wagner's public statements in support of the amendments to the Festival Ordinance at issue before him and his contemporaneous public statements indicating bias against Plaintiff in general. (*Id.* ¶¶ 67–69). Judge Wagner granted the show cause order without briefing. (*Id.* ¶ 70). In fact, Judge Wagner signed the order on May 15, 2012, the day before Shirley filed the Petition. (*Id.*). There is no clerical error as to these dates, because the clerk's date-time stamp indicates 10:01 a.m. on May 16, 2012 for both the Petition and the show cause order. (*Id.*). Plaintiff never had notice of the Petition. (*Id.* ¶ 72).

At a May 22, 2012 meeting set by the Board to discuss the Petition, the Board voted to implement the provisions in the Petition and signed a stipulation to do so without any discussion of whether they should challenge the Petition. (*Id.* ¶ 74). On May 24, 2012, Judge Wagner issued

the writ granting the Petition. (*Id.* ¶ 75). That same day, the County notified Plaintiff of its intent to repudiate the 2005 and 2011 Agreements and enforce the Festival Ordinance against Plaintiff. (*Id.* ¶ 76).

Plaintiff therefore filed for a permit from the County under duress. (*Id.* ¶ 77). As noted, *supra*, the parties did not enter into any law enforcement agreement in 2012; rather, the law enforcement expenses were made a part of the license fee that the County charged to Plaintiff. (*Id.* ¶¶ 78–79). Plaintiff believes that the County will impose obligations and requirements onto Plaintiff inconsistent with the BLM Permit for the 2013 Event. Specifically, Condition 7 of the County Festival License requires Plaintiff to comply with Nevada Revised Statutes section 244.3548(3)–(7), which prohibits assemblies from constituting a public or private nuisance; exhibiting obscene, indecent, vulgar, or lewd exhibitions; permitting disorderly conduct; allowing illegal possession of liquor; and permitting illegal possession of controlled substances. (*Id.* ¶ 81). The County Festival License also imposes a $448,000 fee and a requirement that Plaintiff provide a trailer park, fuel for PCSO, installation of telecommunications equipment for PCSO's use, and additional expenses. (*Id.* ¶ 82). The Festival Ordinance, as amended, would potentially impose even higher fees. (*Id.* ¶ 83).

Plaintiff sued the Board, Irwin, Shank, Bloyed, Shirley, and Machado in this Court on six causes of action for declaratory judgment: (1)–(2) that the Festival Statute, Festival Ordinance, and County Festival License are preempted under the Supremacy Clause either on their face or insofar as they conflict with the BLM Permit; (3)–(4) that the challenged laws are invalid under the First and Fourteenth Amendments either on their face or as applied; (5) that the state court action determined by Judge Wagner and related collusion violated Plaintiff's due process rights under the Fourteenth Amendment; and (6) that the repudiation of the 2005 and 2011 Agreements constituted a violation of due process or the Contract Clause. Plaintiff has not specifically listed a breach of contract claim. Shirley and the other Defendants have separately moved to dismiss

1  for failure to state a claim.

2  **II.    LEGAL STANDARDS**

3  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
4  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of
5  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47
6  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action
7  that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule
8  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720
9  F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for
10 failure to state a claim, dismissal is appropriate only when the complaint does not give the
11 defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*
12 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is
13 sufficient to state a claim, the court will take all material allegations as true and construe them in
14 the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
15 Cir. 1986).  The court, however, is not required to accept as true allegations that are merely
16 conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*
17 *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action
18 with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation
19 is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,
20 550 U.S. at 555).

21 "Generally, a district court may not consider any material beyond the pleadings in ruling
22 on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the
23 complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*
24 *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents
25 whose contents are alleged in a complaint and whose authenticity no party questions, but which

are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III. ANALYSIS

#### A. Preemption

In the first and second causes of action, respectively, Plaintiff alleges that the Festival Ordinance violates the Supremacy Clause on its face and as applied.

> State law can be pre-empted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted. If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.

*California Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987) (citations and internal quotations omitted). "The same preemption analysis applies when a court is determining if federal law preempts a county ordinance." *S.D. Mining Ass'n v. Lawrence Cnty.*, 155 F.3d 1005, 1009 (8th Cir. 1998) (citing *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). "Although state law may apply where it presents no significant threat to any identifiable federal policy or interest, the states and their subdivisions have no right to apply local regulations impermissibly conflicting with achievement of a congressionally approved use of federal lands . . . ." *Ventura Cnty. v. Gulf Oil Corp.*, 601 F.2d 1080, 1086 (9th Cir. 1979) (internal quotation marks and citation omitted).

1    Congress has not occupied the field of outdoor assembly regulation. It has, however, via
2    the BLM, granted a specific permit for Plaintiff's use of federal land. To any extent the County's
3    laws actually conflict with the BLM Permit or impede Congress' purposes, they are preempted.
4    The laws at issue here do not actually conflict with the BLM Permit or impede Congress'
5    purposes. The BLM has specifically required Plaintiff to coordinate with local authorities for
6    law enforcement services under the BLM Permit. (*See* Permit Administration para. 16, May 12,
7    2011, ECF No. 1-1, at 8). The 2011 BLM Permit essentially made the cooperation of local
8    authorities a condition for use of the federal land. If the BLM were to have permitted Plaintiff to
9    conduct the Event on federal land within Pershing County with or without any law enforcement
10   services, either in explicit terms or by silence, and if the County were then to have required
11   Plaintiff to pay for law enforcement services on federal land, there might be an actual conflict
12   implicating the Supremacy Clause. But here, the requirement to obtain local law enforcement
13   services was an express condition of the BLM Permit.
14       Furthermore, the BLM specifically required Plaintiff to comply with state and local laws.
15   The 2011 BLM Permit applicable to the 2011 Event is attached to the Complaint as Exhibit A.
16   Condition 6 of the 2011 BLM Permit states, "Permittee must observe all Federal, State, and local
17   laws and regulations applicable to the premises . . . ." (2011 BLM Permit 2, Mar. 30, 2011, ECF
18   No. 1-1, at 3). Therefore, even without a separate requirement to coordinate with local law
19   enforcement, the 2011 BLM Permit makes the observance of the Festival Ordinance an explicit
20   condition of the use of the federal land. Clearly then, the Festival Ordinance is not in conflict
21   with the 2011 BLM Permit.
22       The 2012 BLM Permit, attached to the Complaint as Exhibit O, is also conditioned upon
23   compliance with federal, state, and local laws, regulations, and ordinances. (*See* 2012 BLM
24   Permit para. a., at 2, June 12, 2012, ECF No. 1-15). The Festival Ordinance therefore does not
25   conflict with the 2012 BLM Permit. The 2012 BLM Permit, like the 2011 BLM Permit, requires

the observance of local laws. To the extent those local laws are more restrictive, as Plaintiff alleges, the BLM Permits require their observance. The fact that the BLM Permits may be more permissive in some ways simply means that the BLM is satisfied so long as the less restrictive conditions it has imposed are complied with. But the BLM has specifically required the observance of local laws, as well. So long as it is possible to comply with the BLM Permit and the local laws at the same time, there is no actual conflict under the Supremacy Clause. Plaintiffs have not alleged any way in which it is impossible to comply with both the BLM's own particular conditions and the Festival Ordinance simultaneously. The Court therefore dismisses the first and second claims, as Plaintiffs have not made out a plausible case for federal preemption of the Festival Ordinance.

### B. The First and Fourteenth Amendments

In the third and fourth causes of action, respectively, Plaintiff alleges that the Festival Ordinance violates the First Amendment (as incorporated against Defendants via the Fourteenth Amendment) on its face and as applied. Plaintiff alleges that Defendants amended the Festival Ordinance with the improper purpose of abridging protected speech and expressive conduct at the Event. The Court dismisses the third cause of action in part but will not dismiss the fourth cause of action.

A law is facially invalid under the First Amendment if there are no set of circumstances under which it could be valid or if a substantial number of the law's applications would be invalid judged in relation to its plainly valid applications. *United States v. Stevens*, 559 U.S. 460, 130 S. Ct. 1577, 1587 (2010). For the most part, the Court cannot find the Festival Ordinance to be unconstitutional on its face. On its face, the ordinance is mostly content neutral, except for certain regulations related to speech that is not fully protected by the First Amendment, i.e., obscenity. *See* Pershing Cnty. Code § 5.15.140(E) (providing for the revocation of a license in the event any license applicant or his agent has been convicted for obscenity, lewd conduct,

violent crimes, crimes against children, or other felony offenses).  This particular section of the Festival Ordinance does not impose the content-based restrictions directly, but rather requires separate conviction for crimes in a court where constitutional protections will presumably apply.

The Festival Ordinance specifically prohibits the County from revoking a license based upon speech that is protected by the federal or state constitutions. *See id.* § 5.16.160(D).  First Amendment protections are therefore built into the Festival Ordinance in theory.  It is possible, however, that despite this language, some other section of the Festival Ordinance violates the First Amendment on its face, and some sections in fact appear to do so.  The Court will address each subsection of the most controversial section of the Festival Ordinance, section 5.16.180, which imposes several restrictions, which if violated can result in, *inter alia*, revocation of the license, and which section 5.16.180 specifically declares to be criminal acts.

First and second, the section prohibits applicants from conducting an event or selling tickets to an event without a license.  These provisions concern pure conduct and do not implicate the First Amendment.  Third, an applicant may not carry out an event "in a manner to create a public or private nuisance."  The definitions section of the Festival Ordinance does not separately define "nuisance," so the word presumably retains its common law meaning.  The prohibition of common law nuisances does not violate the First Amendment on its face. Although it is possible that a particular attempt to revoke a license based upon a "nuisance" that is a nuisance not because of any interference with the enjoyment of the use of another's land, but only because of the content of expressive speech or conduct, may result in an as-applied First Amendment violation, the prohibition of nuisances does not violate the First Amendment on its face.[1]  Fourth, applicants may not exhibit, show, or conduct any "obscene, indecent, vulgar or

---

[1] Defendants are warned, however, that it may be difficult for them to show any "nuisance" based upon the speech or expressive conduct of Event participants if no participants complain to the authorities and the "nuisance" occurs in the middle of the Black Rock Desert far from the perception of any adjacent private landowners or other public areas.  Where the

lewd exhibition, show, play, entertainment or exhibit . . . ." The Court will not dismiss the facial challenge to this subsection of the Festival Ordinance. Although "obscenity" is not constitutionally protected, *Roth v. United States*, 354 U.S. 476, 484–85 (1957), "indecent" speech is protected, *Sable Commc'ns of Cal. v. FCC*, 492 U.S. 115, 126 (1989), as is, presumably, speech that is "vulgar" or "lewd." Indecent sexual speech may be prohibited only in ways narrowly drawn to serve the purpose of preventing children from exposure to such material. *Id.* The subsection of the Festival Ordinance at issue here is not drawn to serve this purpose at all but applies broadly to any "indecent, vulgar or lewd exhibition, show, play, entertainment or exhibit." The Court will not dismiss the facial challenge to this law. Fifth, applicants may not "[a]llow any person on the premises of the licensed festival, assembly, or event to cause or create a disturbance by offensive or disorderly conduct." The Court will not dismiss the facial challenge to this provision. Lest they prohibit substantial protected speech, "disorderly conduct" laws must generally be insulated by an internal requirement that the conduct threatens an immediate breach of the peace, a requirement notably absent from the present provision. *See United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). "The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity . . . unless the speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *Id.* (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (internal quotation omitted)). Furthermore, the provision here also prohibits a disturbance by "offensive" conduct. The Court cannot say that a facial challenge to such a law is

---

"nuisance" does not consist of objectively illegal activity such as drug use or other criminal behavior, an application of the ordinance could fairly be perceived as an invalid attempt to regulate expressive conduct based upon moral disapproval alone, because the purposes behind nuisance laws are not served by enforcement where no non-participants in the "nuisance" perceive it.

not viable. A significant amount of protected speech may be prohibited by this provision in relation to unprotected speech. Sixth, alcohol consumption, possession, and sale must comply with state law. This provision concerns pure conduct and does not implicate the First Amendment. Seventh, the use, sale, and possession of narcotics and dangerous drugs is prohibited. This provision concerns pure conduct and does not implicate the First Amendment.

In summary, the Court dismisses the third cause of action as to subsections 1, 2, 3, 6, and 7 of section 5.16.180 of the Pershing County Code but will not dismiss as against subsections 4 and 5.

In the fourth cause of action, Plaintiff brings an as-applied First Amendment challenge, arguing that the fees to be charged and the Festival Ordinance were instituted for the purpose of suppressing protected speech. The Court will not dismiss this claim. As can be seen from the allegations recounted in Part I., *supra*, Plaintiffs have sufficiently alleged that Defendants repudiated valid contracts and instituted the Festival Ordinance in their place with the invalid purpose of suppressing speech that they found objectionable.

> "Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). We ordinarily review content-based restrictions on protected expression under strict scrutiny, and thus, to survive, the Act "must be narrowly tailored to promote a compelling Government interest." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000).

*Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 958 (9th Cir. 2009). "[A] law is content-based if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face." *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 787 (9th Cir. 2008). Plaintiff has sufficiently alleged a First Amendment violation under Rule 8(a). Plaintiff has alleged a content-based purpose behind the Festival ordinance and repudiation of the 2005 and 2011 Agreements. The strict scrutiny required will not permit the Court to dismiss the claim at this stage.

///

  **C.**   **Due Process and the Contract Clause**

  **1.**   **Due Process**

  In the fifth cause of action, Plaintiff alleges that its due process rights were violated when the Petition was collusively litigated by Defendant Shirley against the other Defendants, without Plaintiff as a party, and before a judge who should have recused himself under the Due Process Clause of the Fourteenth Amendment and Nevada law for bias.

  The Court dismisses this claim. Although Defendants make allegations that if true indicate serious judicial misconduct in several respects, those issues are not properly before this Court. As to recusal under state statute or rule (or relief from judgment), Plaintiff must petition the state court and/or the Nevada Supreme Court. Although Plaintiff was not a party to the proceedings, it could move to intervene and for relief from judgment and/or recusal in the state court, and then it could appeal any denial to the Nevada Supreme Court via appeal or extraordinary writ. The Court does not believe it has jurisdiction to adjudicate the recusal issue under the federal Due Process Clause. The U.S. Supreme Court has ruled that the Due Process Clause can require recusal where a state judge has received a campaign contribution from one of the parties appearing before him of such a magnitude that it would tempt the average judge to rule in a biased manner. *Caperton v. A.P. Massey Coal Co., Inc.*, 556 U.S. 868, 885 (2009). That is not alleged here, but even assuming the Due Process Clause similarly applies to require recusal in a case like the present one, i.e., ex parte collaboration with one party and actual personal bias, the U.S. District Court is simply not the route for Plaintiff—a "state-court loser[] complaining of injuries caused by [a] state-court judgment[] rendered before the district court proceedings commenced and inviting district court review and rejection of th[at] judgment"—to obtain federal review. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining the *Rooker-Feldman* doctrine). Plaintiff must challenge the state court ruling through the state courts and to the U.S. Supreme Court. Whether or not Plaintiff was a party in the state

court, this court has no jurisdiction to void the state court ruling. The Court therefore dismisses the fifth claim.

### 2. Contract Clause and Breach of Contract

In the sixth cause of action, Plaintiff alleges that Defendants violated the Contract Clause by repudiating the 2005 and 2011 Agreements, and that Defendants have breached those contracts under state law.[2] The Court will not dismiss these claims.

"No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1. "It long has been established that the Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties. Yet the Contract Clause does not prohibit the States from repealing or amending statutes generally, or from enacting legislation with retroactive effects." *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 17 (1977). The Contract Clause is no barrier to otherwise legitimate legislation concerning the public welfare that incidentally abrogates private contracts, so long as the "[l]egislation adjusting the rights and responsibilities of contracting parties [is] upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption." *Id.* at 21–23. But when a state repudiates or impairs its own contractual obligations, the inquiry is different. *Id.* at 23. In the latter case, a court first asks whether the state's contract was valid in the first instance, i.e., whether the contract purported to bargain away the ability of future legislatures to exercise their police power. *Id.* ("In short, the Contract Clause does not require a State to adhere to a contract that surrenders an essential attribute of its sovereignty."). However, economic agreements do not generally fall within the reserved-powers doctrine. *See id.* at 24.

---

[2]Although entitled as another due process claim, the Court implies a claim under the Contract Clause and a state law claim for breach of contract, as that is the gravamen of the allegations under the sixth claim.

The Court finds that Plaintiff has made out a prima facie case of a Contract Clause violation as to the repudiation of the 2005 and 2011 Agreements insofar as that repudiation stripped Plaintiff of the economic benefit of its bargain. The enforcement of the economic aspects of the Agreements does not implicate the ability of the Board to exercise its police power for the purposes of protecting the public welfare. *See id.* However, the Contract Clause and breach of contract claims are not viable as against the Festival Ordinance as a general matter. The Festival Ordinance is based upon the legitimate police power of the County, and the 2005 and 2011 Agreements' forbearance clauses cannot strip the County of this power.

In summary, the repudiation of the forbearance clauses is not a Contract Clause violation, but Plaintiff has sufficiently alleged that repudiation of the Agreements violates the Contract Clause insofar as it affected Plaintiff's economic obligations, e.g., the cost of law enforcement services. For the same reasons, the Court will not dismiss the breach of contract claim.

### D. Arguments Common to All Claims

Defendants argue that the Board is not a proper party. *See Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996) (citing Nev. Rev. Stat. § 41.031) (noting that departments of municipalities may not be sued). Defendants appear to be correct that the proper party is Pershing County. The Court therefore dismisses all claims against the Board but grants Plaintiff leave to amend to add Pershing County as a Defendant.

Next, Defendants argue that Sheriff Machado has not been alleged to have had any personal involvement in any alleged violations. The Court agrees. The claims against Sheriff Machado are dismissed, with leave to amend.

Finally, Defendants have asked the Court to stay discovery while the motions to dismiss are pending. The Court denies that motion as moot.

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 15, 16) are GRANTED IN PART and DENIED IN PART.  The first, second, and fifth claims are dismissed.  The third claim is dismissed as to subsections 1, 2, 3, 6, and 7 of section 5.16.180 of the Pershing County Code, but not as to subsections 4 and 5.  The fourth claim is not dismissed.  The sixth claim is dismissed as to the Contract Clause challenge to the Festival Ordinance generally but not as to the Contract Clause challenge to the economic effect of the repudiation of the 2005 and 2011 Agreements or as to the breach of contract claim.

IT IS FURTHER ORDERED that the Motion to Stay Discovery (ECF No. 53) is DENIED as moot.

IT IS FURTHER ORDERED that the Board is DISMISSED as a Defendant, but Plaintiff may amend to join Pershing County.

IT IS FURTHER ORDERED that all claims against Sheriff Machado are DISMISSED, with leave to amend.

IT IS SO ORDERED.

Dated this 26th day of April, 2013.

_____
ROBERT C. JONES
United States District Judge