1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
2          BEFORE THE HONORABLE ROBERT C. JONES, CHIEF DISTRICT JUDGE
                              ---o0o---
3

4    Black Rock City LLC,              :
                                       :
5                   Plaintiff,         :  No. 3:12-CV-435-RCJ-VPC
                                       :
6          -vs-                        :  November 25, 2013
                                       :
7    PERSHING COUNTY BOARD OF          :  Reno, Nevada
     COMMISSIONERS, et al.,            :
8                                      :
                    Defendants.        :
9    _____ :

10

11      TRANSCRIPT OF STATUS CONFERENCE RE REVIEW OF SETTLEMENT

12

13   APPEARANCES:

14   FOR THE PLAINTIFF:        ANNETTE L. HURST and ADAM BELSKY
                               Attorneys at Law
15                             San Francisco, California

16                             RICHARD L. ELMORE and TAMARA REID
                               Attorneys at Law
17                             Reno, Nevada

18

19   FOR THE DEFENDANTS:       BRENT T. KOLVET
                               Attorney at Law
20                             Reno, Nevada

21

22   Reported by:             Margaret E. Griener, CCR #3, RDR
                              Official Reporter
23                            400 South Virginia Street
                              Reno, Nevada 89501
24                            (775)329-9980

25

1          RENO, NEVADA, MONDAY, NOVEMBER 25, 2013, 10:32 A.M.

2                            ---o0o--

3

4                 THE COURT:  This is in a court-ordered status

5     hearing on Black Rock City versus Pershing County Board of

6     Commissioners to review a proposed settlement and request for

7     approval.

8               Your appearances, please.

9                 MS. HURST:  Good morning, your Honor.

10              My name is Annette Hurst from Orrick, Herrington &

11    Sutcliffe on behalf of the plaintiff Black Rock City.

12                MR. BELSKY:  Good morning, your Honor.

13              Adam Belsky, Gross, Belsy, Alonso, on behalf of

14    Black Rock City.

15                MR. ELMORE:  Judge, Rick Elmore of Holland and

16    Hart, and Tamara Reid, on behalf of the plaintiff.

17                MR. KOLVET:  Good morning, your Honor.

18              Your Honor, Brent Kolvet, Thorndal Armstrong, on

19    behalf of the defendants, including Mr. Shirley who has

20    appeared as his own attorney up to now, but he's in Court in

21    Lovelock so I'm authorized to appear and present on his behalf

22    as well.

23                THE COURT:  Thank you.

24              Of course, I'm not going to approve this settlement.

25    It's absurd and it's illegal.  The contract that you've

1  negotiated is illegal, and I'm going to correct the prior

2  order that I issued and rule, proceed to rule on the dismissal

3  and on the summary judgment.

4         The first error in this case was mine.  What I was

5  attempting to do in the dismissal was educate the parties as

6  to how you could proceed to resolve the problem.

7         In great detail, I thought, and with full

8  explanation, I explained to you what you could do with the

9  ordinance in order to make it not invalid under constitutional

10  claims.  I thought I did that in great respect.

11         In most cases I dismiss the facial challenges to the

12  ordinance.  I think I preserved one.  But I also preserved the

13  as-applied challenges to the ordinance, and I gave cautions to

14  the county as to how -- even if the ordinance was not facially

15  challengeable, how the ordinance as applied in a particular

16  case could violate the First Amendment by regulating speech

17  based upon content.  In one particular footnote I warned the

18  county about how that could occur.

19         I also made a mistake -- and I intend to correct

20  that prior mistake.

21         I also made a mistake by placing confidence in the

22  good faith of counsel to follow the Court's instructions to

23  correctly interpret the order and reach resolution of the case

24  based upon the Court's instruction.

25         It's obvious to me now that county counsel has made

4

1    several miscalculations, even committing malpractice, in your

2    advice to the county, number one, in interpreting my order and

3    the effect of the order, that I was giving some kind of

4    imprimatur for an illegal contract between Black Rock and the

5    county, and an illegal settlement.

6         You also committed malpractice in misinterpreting

7    for your client, sir, the effect of the new state statute.

8    You've over-interpreted it broadly, more broadly than is

9    possibly reasonably interpreted or constitutionally that may

10   be interpreted.

11        So in addition to an order, a new decision which

12   I'll issue, I'm also going to commend and require you to

13   commend to your commissioners that they hire replacement

14   counsel because you're not representing their interests.

15        Now, I would expect that from plaintiff's counsel.

16   They're pushing the envelope as far as they can in seeking an

17   agreement which does what no one can do, constitutionally can

18   do.

19        You can't walk across the state line and enter into

20   an agreement with a county that they won't enforce state,

21   federal, or local law.  You can't do that.

22        You can do what the state legislature told you you

23   can do.  You can enter into an agreement that waives the

24   normal requirements for permits and binds the county to a

25   payment schedule for services, like police services, like

5

1    other services, but you can't include in that agreement any

2    kind of a prohibition on the county for enforcing what they're

3    obligated to enforce.

4           For example, this agreement that you've presented to

5    me implies that they cannot pass further ordinance, nor

6    further interfere, with the bringing of children to this

7    event.  That's one of the clauses in this agreement.

8           The record will reflect I'm laughing on the record.

9           Do you mean to purport by that agreement that you're

10   telling the county they can't enforce child abuse statutes,

11   delinquency statutes?

12          We all know that it's a violation of the First

13   Amendment for the county to regulate based upon content.  So,

14   for example, if the county is saying that you can't have a

15   public display of nudity, that's prohibited by the

16   constitution.  We know that.

17          But can the county -- in fact, can the county --

18   number two, is the county obligated to enforce limitations on

19   minors being present at such events?  Absolutely the county

20   can, and you can't abrogate their duty and obligation under

21   the law of Nevada or under the law of the Constitution of the

22   United States in prohibiting them from doing that.

23          Your contract here is illegal.  It insults the

24   intelligence of the court, and it insults my intelligence, and

25   insults the intelligence of the commissioners who obviously

1    have been prevailed upon by plaintiff's counsel and defense

2    counsel to abrogate their duties.

3            So because you made me sit and read through all

4    these pleadings and this ridiculous agreement -- and you can

5    tell that I'm upset, and, for the record, I am upset because

6    you've waltzed across the state line and asked -- you've

7    committed virtually a fraud on the federal court.  You've

8    certainly committed a fraud on the county commissioners in

9    combination with counsel for the commissioners, and you've

10   committed a fraud on the State of Nevada.  So that's the

11   reason I'm upset.

12           I'm going to make you -- just as you made me sit and

13   read, you're going to sit here for the next hour while I tell

14   you what's illegal about the settlement agreement, and I'm

15   going to give you the correct interpretation of the Court's

16   prior order which has obviously been misrepresented to the

17   county commissioners.

18           With that preface -- please be seated.  Just take

19   careful notes.

20           I'll turn first to the Court's order which partially

21   dismissed and partially denied dismissal of the complaint.

22   This order was filed of record on February 4th of -- I'm

23   sorry, April 26, 2013, is document number 60.  It's the order

24   in response to the motion of the county and various parties

25   for dismissal.

7

```
 1              You'll note that one thing the order did was it
 2    dismissed the county commission but gave you leave to amend to
 3    plead against the county instead.  Was that amendment filed?
 4              MS. HURST:  Yes, your Honor.
 5              Your Honor, may I be heard briefly?
 6              THE COURT:  No.
 7              MS. HURST:  Your Honor --
 8              THE COURT:  Was the amendment filed?
 9              MS. HURST:  It was, your Honor.
10              THE COURT:  Okay.  So you named correctly the
11    county.
12              As we all know, of course, even under sovereign
13    immunity, even as a subdivision of the State of Nevada
14    authorized by Nevada statute, I think probably sovereign
15    immunity applies.  I'm sure that may be an issue for dispute.
16              So I don't think you can make claim against the
17    county, or against the individual commissioners, for damages.
18    You may be able to if there's sufficient proof, but I think
19    you'll have a problem both under sovereign immunity and also
20    under damages proof.
21              But that's not the real relief that you were
22    requesting anyway.  The real relief you were requesting was
23    declaratory relief, and there, of course, you can name
24    individual county commissioners for violation of your First
25    Amendment rights, and, of course, if it's only declaratory
```

1  relief prospectively going forward, you can potentially get

2  that relief against the county as well.

3          So that's the real relief you were requesting, and

4  apparently you followed that admonition by amending your

5  complaint to name the county as opposed to the commissioners

6  for that declaratory relief.

7          Now, the order -- you've reviewed it and seen it,

8  I'm sure.  The first point that I wanted to point out to you

9  is on page 7 of 18.  That paragraph begins,

10              "Plaintiff therefore filed for a permit from

11         the county under duress.  As noted below, the parties

12         did not enter into" -- please be seated -- "into any

13         law enforcement agreement in 2012; rather, the law

14         enforcement expenses were made part of the license

15         fee that the county charged to plaintiff.

16              "Plaintiff believes that the county will

17         impose obligations and requirements onto plaintiff

18         inconsistent with the BLM permit for the 2013 event.

19         Specifically, Condition 7 of the County Festival

20         License requires plaintiff" to do two things, "to

21         comply with Nevada Revised Statutes section

22         244.3548(3)-(7), which prohibits assemblies from

23         constituting a public or private nuisance; exhibiting

24         obscene, indecent, vulgar, or lewd exhibitions;

25         permitting disorderly conduct; allowing illegal

1          possession of liquor; and permitting illegal

2          possession of controlled substances.

3                    "The County Festival License also imposes a

4          $448,000 fee and a requirement that plaintiff provide

5          a trailer park," et cetera.  "The Festival Ordinance,

6          as amended, would potentially impose even higher

7          fees."

8               So the two points I want to make here is there were

9     two requirements by this permit with BLM.

10               Now, BLM could and probably should, instead of

11     imposing on Pershing County, assume the obligation to enforce

12     and police the agreement themselves.  We have a record of an

13     out-of-control BLM in this state and district, so I

14     understand.

15               And probably consistent with practices throughout

16     the United States, this BLM permit required the permittee,

17     licensee, to get a contract with the local sheriff's

18     department to enforce local, state, federal law, to have the

19     authority to arrest, to pursue all police powers on behalf of

20     BLM, and it required direct payment.

21               The other thing the permit required was for the

22     permittee, the licensee, to comply and obey all federal,

23     state, and local laws.

24               There's no way -- and we'll talk about the

25     interpretation of the state statute which requires -- before

1    the county enters into an agreement that exempts a particular

2    licensee or event, requires the county to assure itself that

3    the concerns of the statute imposed upon all counties, without

4    selectivity, that the concerns of that statute are met, which

5    clearly the county did not do in this alleged settlement

6    agreement.  In fact, it abrogates those duties.

7           This permit mandated that they comply with all

8    federal, state, and local law.  So for you to attempt to

9    settle this, and seeking cover with your voters on the basis

10   that this is a federal court ordered settlement or approved

11   settlement is absurd.

12          You're not going to approve it over my signature,

13   that's for sure, nor did I motivate it.

14          The next problem with your interpretation of my

15   order will proceed.  On page 9, I discussed preemption, and I

16   determined that there was no preemption.

17          Congress, in providing -- and/or the regulatory

18   process, in providing for granting of permits for such events,

19   there's clearly no attempt to preempt the entire field, and,

20   accordingly, as I remind you, the Field Preemption Doctrine

21   did not apply.

22          On page 10, we start at the paragraph,

23              "Congress has not occupied the field of

24          outdoor assembly regulation.  It has, however, via

25          the BLM, granted a specific permit for plaintiff's

1        use of federal land.  To any extent the county's laws

2        actually conflict with the BLM permit, or impede

3        Congress's purposes, they are," of course,

4        "preempted.  The laws at issues here do not actually

5        conflict with the BLM permit or impede Congress's

6        purposes.  The BLM has specifically required

7        plaintiff to coordinate with local authorities for

8        law enforcement services under the BLM permit."

9            So I gave you a ruling.  You could have appealed it,

10   of course, or you could have asked for certification of the

11   question to the Ninth Circuit, but I gave you a clear ruling

12   that there was no field preemption, and there was no specific

13   preemption based upon conflict between the permit and the

14   local law.  That's the ruling that pertains and describes this

15   case.

16            "The 2011 BLM permit essentially made the

17       cooperation of local authorities a condition for use

18       of the federal land.  If the BLM were to have

19       permitted plaintiff to conduct the event on federal

20       land within Pershing County with or without any law

21       enforcement services, either in explicit terms or by

22       silence, and if the county were then to have required

23       plaintiff to pay for law enforcement services on

24       federal land, there might be an actual conflict

25       implicating the Supremacy Clause.  But here the

1          requirement to obtain local law enforcement services

2          was an express condition of the BLM permit."

3              So in case you have an inability to read the order,

4     I'm reading it to you again as any law student graduate would

5     be able to do.

6              "Furthermore, the BLM specifically required

7          plaintiff to comply with state and local laws.  The

8          2011 BLM permit applicable to the 2011 event is

9          attached to the complaint as Exhibit A.  Condition 6

10         of the permit states, 'Permittee must observe all

11         federal, state, and local laws and regulations

12         applicable to the premises....'  Therefore, even

13         without a separate requirement to coordinate with

14         local law enforcement, the 2011 BLM permit makes the

15         observance of the Festival Ordinance an explicit

16         condition of the use of the federal land."

17             And remember, the Festival Ordinance is mandated on

18    all counties by the state legislature.  They mandated that you

19    pass such an ordinance.

20             Next paragraph,

21             "The 2011 BLM permit attached to the

22         complaint as Exhibit O is also conditioned upon

23         compliance with federal, state, and local laws,

24         regulations, and ordinances."

25             Enough of that point.

1              Just reading to the conclusion there, because I

2    think it's interesting that somehow you skipped it in reading

3    the order in seeking advice from the Court on how you might

4    resolve or settle this dispute,

5              "To the extent those local laws are more

6         restrictive, as plaintiff alleges, the BLM permits

7         require their observance.  The fact that the BLM

8         permits may be more permissive in some ways simply

9         means that the BLM is satisfied so long as the less

10        restrictive conditions it has imposed are complied

11        with.  But the BLM has specifically required the

12        observance of local laws, as well.  So long as it is

13        possible to comply with the BLM permit and the local

14        laws at the same time, there is no actual conflict

15        under the Supremacy Clause."

16             Now, for you, in your settlement agreement, to

17    purport to prohibit the county from enforcing local

18    delinquency laws, or state laws, let alone federal, Mann Act

19    laws, or child protection laws, is an absurd conclusion.  The

20    permit itself required compliance with those laws.

21             For the state to abrogate that duty, oh, we won't

22    enforce it because we've agreed with them, for 50 years -- the

23    record will reflect again that I'm laughing -- it's an absurd

24    result, and it's really malpractice.

25             On the First and Fourteenth Amendment claims,

14

1           "In the third and fourth causes of action

2      respectively, plaintiff alleges that the Festival

3      Ordinance violates the First Amendment on its face

4      and as applied.  Plaintiff alleges that defendants

5      amended the Festival Ordinance with the improper

6      purpose of abridging protected speech and expressive

7      conduct at the event.  The Court dismisses the third

8      cause of action in part but will not dismiss the

9      fourth."

10      Now, in case you missed it, which I think you did,

11 the Court will detail the facial and as-applied challenges and

12 the rulings that I gave, again, subject to appeal.  Anybody

13 could have asked me to certify the question, and we could have

14 had an appeal to the Ninth Circuit.

15           "A law is facially invalid under the First

16      Amendment if there are no set of circumstances under

17      which it could be valid, or if a substantial number

18      of the law's applications would be invalid judged in

19      relation to its plainly valid applications.  For the

20      most part, the Court cannot find the Festival

21      Ordinance to be unconstitutional on its face.  On its

22      face, the ordinance is mostly content neutral except

23      for certain regulations related to speech that is not

24      fully protected by the First Amendment, for example,

25      obscenity."

15

1          The regulation, without being violative on its face,

2    can regulate obscenity.  It can regulate public display of

3    nudity.

4          Now, you can't regulate, based upon content, of

5    which nudity can be expressive, as we all know, and partially

6    protected by the First Amendment.  You can't regulate all

7    forms in all places public nudity.  You can't do that.  But

8    you sure as heck can regulate exposure of children.  In fact,

9    you're only obligated to regulate exposure of children to such

10   public nudity.

11         Why do you think the Supreme Court and the Ninth

12   Circuit have upheld restrictions and limitations on

13   prohibiting minors from visiting X sex shops?  It's because

14   they're valid.  They're not an invalid prohibition under the

15   First Amendment.

16         Why do you think the U.S. Supreme Court, as well as

17   the Ninth Circuit, have allowed prohibition of minors to be

18   involved with gambling machines or standing next to them?

19         Why do you think the Nevada legislature has been

20   allowed to prohibit the sale of alcohol or tobacco to minors?

21   Because, even if expressive, those types of regulations are

22   permissible under the First Amendment.  I hope you get that.

23   That's a clear message that the order was intending to convey

24   to you.

25              "On its face, the ordinance is mostly content

—16—

1          neutral except for certain regulations related to

2          speech that is not fully protected by the First

3          Amendment, that is, obscenity."

4               Citing the Pershing County Code 5.15.140(e),

5                    "Providing for the revocation of a license in

6          the event any license applicant, or his agent, has

7          been convicted for obscenity, lewd conduct, violent

8          crimes, crimes against children or other felony

9          offenses.

10                    "This particular section of the Festival

11         Ordinance does not impose the content-based

12         restrictions directly, but rather requires separate

13         conviction for crimes in a court where constitutional

14         protections will presumably apply."

15               Now, another misinterpretation of the state statute

16    that counsel is guilty of is that you figured gave you license

17    to agree that you could not constitutionally prohibit the

18    imposition of obscenity upon minors.  Not only was that

19    interpretation incorrect, it's just flat wrong.

20               Going on, on page 12,

21                    "The Festival Ordinance specifically

22         prohibits the county from revoking a license based

23         upon speech that is protected by the federal or state

24         constitutions."

25               Now, I've tried to make that clear to you.  I guess

1    I didn't make it clear enough in the order.  You can't

2    restrict expressive speech, including nudity.  You can

3    undoubtedly restrict expressive speech to the extent it

4    includes sexual acts.

5         You know, county ordinances -- for example, in

6    Washoe County we do permit an X-rated movie house.  That's

7    expressive speech.  You can't restrict that.  But you sure as

8    heck can restrict that store from presenting sexually-explicit

9    conduct.  You can prohibit a show of nude dancers performing

10   sex acts on patrons.  The county code does that, and I assume

11   counsel for the county is aware of that ability, and, in fact,

12   the agreement of the county not to enforce such ordinances

13   would be a mistake.

14        And the major mistake you made in interpreting the

15   state statute, where the state statute mandates that the

16   county satisfies itself before granting an exemption that the

17   federal permit covers all of the concerns raised by the

18   mandatory ordinance.  That's one area that you expressly did

19   not cover.  There's certainly no finding on this record.

20   There's no finding even suggested that you even considered

21   that concern.

22        The BLM was passing this burden and baton to you.

23   You accepted it.  So for you to say now we can abrogate that

24   duty, even though it's not in the permit, even though Congress

25   has not preempted the field, is an abrogation of your duty and

1    a misinterpretation of both the federal statute and of my

2    order.

3              So,

4              "The Festival Ordinance specifically

5         prohibits the county from revoking a license upon

6         speech that is protected by the federal or state

7         constitutions.  First Amendment protections are

8         therefore built into the ordinance in theory.  It is

9         possible, however...."

10             In other words, a person has to be convicted.

11   There's nothing in the BLM permit that requires any review of

12   the history or applicants or owners of Black Rock.  So what if

13   you have somebody in the application process, which is a

14   consideration written right into the state statute, that's

15   guilty of five times transporting drugs across the state line

16   relative to the Black Rock event, or a person in one of the

17   venues who wants to run a pedophile venue and has been

18   convicted under the Mann Act or convicted under the new State

19   of Nevada state statute.

20             You know, the same legislation that passed this

21   amendment to the statute giving the right to exempt also

22   passed, whether you're aware of it or not, a new statute that

23   ups the criminal penalties for trafficking in children.

24             Were you aware of that, sir?

25             You don't need to respond.

1            So for you to interpret the state statute as

2    allowing you to exempt out that concern is absurd.  You cannot

3    interpret the new Nevada statute inconsistent with the other

4    legislation that's directly on point.

5            So obviously you did not consider what the state --

6    new state statute mandates that you consider in granting any

7    exemption, and that's whether all of those concerns raised in

8    the mandatory state statute, county statute, are met in the

9    BLM permit on federal land or on land licensed by a federal

10   entity.

11           Most important and instructive is the last paragraph

12   on page 12.

13               "First and second, the section prohibits

14        applicants from conducting an event or selling

15        tickets to an event without a license.  These

16        provisions concern pure conduct and do not implicate

17        the First Amendment."

18           Somehow you skipped over that in your reading to the

19   county commission.

20               "Third, an applicant may not carry out an

21        event 'in a manner to create a public or private

22        nuisance.'"

23               Now, "The definition of the Festival

24        Ordinance does not separately define 'nuisance,' so

25        the word presumably retains its common law meaning.

1          The prohibition of common law nuisance does not

2          violate the First Amendment on its face."

3               I don't know how I could have been any clearer

4     unless I had put it in bold print.

5                    "The prohibition of common law nuisance does

6          not violate the First Amendment on its face.

7          Although it is possible that a particular attempt to

8          revoke a license based upon a 'nuisance,' that is, a

9          nuisance not because of any interference with the

10         enjoyment of the use of another's land, but only

11         because of the content of expressive speech or

12         conduct, may result in an as-applied First Amendment

13         violation.  The prohibition of nuisances," generally,

14         "does not violate the First Amendment on its face."

15              That's where I gave the footnote with the warning.

16    Obviously you misinterpreted the warning.  The warning was to

17    give you instruction on where you might violate the First

18    Amendment by as-applied application of a nuisance prohibition.

19              That footnote warned:

20                   "Defendants are warned, however, that it may

21         be difficult for them to show any 'nuisance' based

22         upon the speech or expressive conduct of event

23         participants if no participants complain to the

24         authorities and the nuisance occurs in the Black Rock

25         Desert far from the perception of any adjacent

1       private landowners or other public areas."

2               That was just simply a clear warning to you,

3  hopefully, on my confidence in the good faith of counsel that

4  you're aware of the rules, that you could not defeat an

5  as-applied challenge by simply declaring the public nudity to

6  be a nuisance.  You couldn't do that.  That would be an

7  as-applied challenge and a violation.  But if you enforced a

8  requirement that that public display be limited in scope to

9  adults, in other words consenting adults, then there's no

10  as-applied challenge.

11               I hope you get the distinction, and hopefully you

12  will order this transcript and review it one more time so you

13  get the distinction when you're advising the county.  There's

14  only an as-applied challenge when you are restricting or

15  limiting protected speech.  Okay?

16               Expressive speech in front of a minor, including

17  lewd conduct, is not protected speech, and I'm looking at

18  plaintiff's counsel now, and you know that, and you knew it

19  when you walked in the courthouse door, and your attempt to

20  invoke it over this Court's approval is offensive.

21               "Fourth, applicants may not exhibit, show, or

22          conduct any 'obscene, indecent, vulgar or lewd

23          exhibition, show, play, entertainment or exhibit...."

24          The Court will not dismiss the facial challenge to

25          this subsection of the Festival Ordinance."

—22

1          This is the one exception, and I intend to change

2    this in a revised order because I think I've got this wrong in

3    light of the way you've interpreted it.

4               "Although 'obscenity' is not constitutionally

5          protected, indecent speech is protected, *Sable*

6          *Communications of California versus FCC*," again, that

7          was given to you as hopefully instructive, "as is,

8          presumably, speech that is 'vulgar' or 'lewd.'

9          Indecent sexual speech may be prohibited only in ways

10         narrowly drawn to serve the purpose of preventing

11         children from exposure to such material.  The

12         subsection of the Festival Ordinance at issue here is

13         not drawn to this purpose at all, it's broader than

14         that, but applies broadly to any 'indecent, vulgar or

15         lewd exhibition, show, play, entertainment, or

16         exhibit.'  The Court will not dismiss the facial

17         challenge to this law."

18          Now, I wasn't saying there was a facial challenge,

19    it's valid.  What I was saying was I need evidence to tell me

20    whether it's being applied in a way that's more numerous, or

21    more likely numerous, that is more frequently -- if violative

22    more frequently than innocuous, perfectly innocent

23    applications of the ordinance.

24          You can restrict in a publicly permitted event

25    indecent, vulgar, or lewd exhibition, show, play,

1    entertainment or exhibit if you tie it to the ultimate purpose

2    for doing so, and so that it won't be displayed to children.

3    I thought the order was pretty clear on that, but somehow you

4    missed that.

5              Now, fifth cause of action.

6              "Applicants may not 'allow any person on the

7         premises'" -- or the fifth requirement under the

8         ordinance.  "Applicants may not 'allow any person on

9         the premises of the licensed festival, assembly, or

10        event to cause or create a disturbance by offensive

11        or disorderly conduct.'  The Court will not dismiss

12        the facial challenge to this provision.  Lest they

13        prohibit substantial protected speech" --

14   that, of course, we would know by further evidence, or further

15   evidence of those who testify as to how it was to be applied

16   and how it was intended to be applied --

17             "-- 'disorderly conduct' laws must generally

18        be insulated by an internal requirement that the

19        conduct threatens an immediate breach of the peace, a

20        requirement notably absent from the present

21        provision."

22             I was giving you a clue as to how to modify the

23   local ordinance to make it nonviolative.  That is what I was

24   calling for.  That's what I was suggesting to you, here's the

25   ways in which it can be violative on a facial challenge.  I

-24-

1    was trying to give you a clue as to how to modify the

2    ordinance which abrogates the lawsuit.

3         If you willingly comply and change the ordinance,

4    that's all you have to do.  You don't have to give up your

5    duty to enforce minor delinquency laws.  You don't have to

6    give up your duty to enforce basically the Mann Act, or the

7    equivalent state statutes on the Mann Act, importing persons

8    for purposes of prostitution, or minors for purposes of sexual

9    activity, both federally and state prohibitive.  You don't

10   have the right, let alone the obligation under my order, to

11   abrogate those duties.

12        The Court will not dismiss that facial challenge,

13   and I gave a clue as to how to correct the statute.

14             "'The Supreme Court has consistently held

15        that the First Amendment protects verbal criticism,

16        challenges, and profanity...unless the speech is

17        shown likely to produce a clear and present danger of

18        a serious substantive evil that arises far above

19        public inconvenience, annoyance, or unrest.'"

20        Citing the Supreme Court case, giving you the direct

21   authority and place to turn to to see what the ordinance

22   should contain in order to limit it.

23             "Furthermore, the provision here also

24        prohibits a disturbance by 'offensive' conduct.  The

25        Court cannot say that a facial challenge to such a

1          law is not viable.  A significant amount of protected

2          speech may be prohibited by this provision in

3          relation to unprotected speech.

4                    "Sixth, alcohol consumption, possession, and

5          sale must comply with state law.  This provision

6          concerns pure conduct and does not implicate the

7          First Amendment.

8               Seventh, the seventh requirement, that last one was

9     alcohol consumption.

10                    "Seventh, the use, sale, and possession of

11          narcotics and dangerous drugs is prohibited.  This

12          provision concerns pure conduct and does not

13          implicate the First Amendment."

14               So why in the settlement agreement do you give them

15     basically virtually a veto authority on what the sheriff is

16     doing?  You -- nothing wrong with requiring the two parties to

17     consult together so many weeks or months before the event and

18     come up with a common statement to the public, here's going to

19     be the priorities in enforcement so that the public is clearly

20     warned we are going to enforce federal, state, and local drug

21     and alcohol laws, we are going to enforce child abuse

22     statutes, pedophile statutes.

23                    MR. KOLVET:  Your Honor, may I inquire as to

24     where -- in what agreement you think we did that?

25                    THE COURT:  We're getting to that after I review

1   my order so that you can correctly interpret it --

2               MR. KOLVET:  Okay.  Because --

3               THE COURT:  We're going to turn to the agreement

4   line by line, and I'm going to show you where it's an illegal

5   agreement.

6               MR. KOLVET:  Because, as -- my reading of the

7   agreement is that we didn't give up any right to enforce any

8   law in the state or federal system.

9               THE COURT:  Yeah, well, we're going to see that

10  when we read it line by line.

11              MS. HURST:  Your Honor, we concur with

12  Mr. Kolvet's interpretation of the --

13              THE COURT:  I'm sure you do, ma'am --

14              MS. HURST:  Your Honor, the manner --

15              THE COURT:  -- but your interpretation is

16  incorrect.

17              MS. HURST:  Your Honor, the matter is before the

18  Court on a motion to dismiss, not a motion to approve the

19  settlement.  If the -- the question was to motion to dismiss

20  the claim with prejudice and retain jurisdiction.  If the

21  Court wishes not to retain jurisdiction, then the stipulation

22  for dismissal has been filed and is effective pursuant to Rule

23  41(a)(1)(A)(2).

24              THE COURT:  Thank you, ma'am, for your citation.

25  Address it to the appellate court, please.

1          I'm going to finish concluding with my citation

2    here, and just like you made me sit here and read the approval

3    and the proposed settlement, I'm going to tell you where it's

4    illegal and where you have misinterpreted the Court's prior

5    order and why I'm going to revise it.  So please be seated and

6    continue to listen.

7               "In the fourth cause of action, plaintiff

8          brings an as-applied First Amendment challenge

9          arguing" -- this is as applied, not facially, as

10         applied," -- arguing that the fees to be charged in

11         the Festival Ordinance were instituted for the

12         purpose of suppressing protected speech.  The Court

13         will not dismiss this claim.  As can be seen from the

14         allegations recounted in Part 1, plaintiffs have

15         sufficiently alleged that defendants repudiated valid

16         contracts and instituted the Festival Ordinance in

17         their place with the invalid purpose of suppressing

18         speech that they found objectionable."

19         Now, you apparently misread this order.  You took my

20    statement that I can't dismiss yet the as-applied challenge to

21    mean that I was approving the facial and as-applied challenge,

22    and that's just not correct because it's very likely the case

23    that their allegations in the complaint are incorrect.  I

24    simply was not addressing that.

25              They allege, and sufficiently alleged to defeat a

1    motion for dismissal, probably not summary judgment, that the

2    county's purpose, or primary purpose, was to outlaw protected

3    speech.  I hope you realize that they have a burden of proof

4    on that issue.

5                   MR. KOLVET:  I do, your Honor.

6                   THE COURT:  I hope so.

7                   "'Content-based regulations are presumptively

8          invalid.'"  Content-based.  "We ordinarily review

9          content-based restrictions on protected expression

10         under strict scrutiny, and thus, to survive, the act

11         'must be narrowly tailored to promote a compelling

12         government interest.'"

13              Again, and I think I already told you, went over at

14   length, as to how you could change the ordinance to tie it

15   directly to the protected interest, the critical interest of

16   the state.

17                   "'A law is content-based if either the main

18         purpose in enacting it was to suppress or exalt

19         speech of a certain content, or it differentiates

20         based on the content of speech on its face.'

21         Plaintiff has sufficiently alleged a First Amendment

22         violation under Rule 8(a).  Plaintiff has alleged a

23         content-based purpose."

24              But that's all they did.  They alleged it.  The

25   Court was not confirming that they had proven it.  In fact,

1   the Court looks always with scepticism at allegations, pure

2   allegations, in the complaint.

3        If the allegations are sufficient, I have to let the

4   complaint proceed, not past summary judgment because they

5   still have the burden.  And it's clear to me that based upon

6   your proposed settlement here that you misread what the Court

7   was instructing you to do.  The strict scrutiny required would

8   not permit the Court to dismiss the claim at this stage if I

9   were to agree with their allegations.

10        Now, the fifth cause of action addressed due process

11   rights which they claimed "were violated when the petition was

12   collusively litigated by Defendant Shirley against the other

13   defendants."

14        Basically I struck this cause of action because

15   without plaintiff as a party, and before a judge who should

16   have recused himself -- this isn't my statement, this is

17   simply repeating their allegation in the statement, somehow

18   you took that to read something else -- under the Due Process

19   Clause of the Fourteenth Amendment and Nevada law for bias.

20        Let me read the Court's instruction to you on this

21   one.

22            "The Court dismisses this claim.  Although

23        defendants make allegations that, if true, indicate

24        serious judicial misconduct" --

25   and, please, don't read it that I'm saying it was judicial

1    misconduct.  I further conclude down below that's not for me

2    to decide.  I cited for you, and somehow you missed it, the

3    Rooker-Feldman Doctrine citation.  That duality of U.S.

4    Supreme Court cases reflects the very well-established

5    doctrine that federal courts don't act as appellate courts for

6    state courts or state previously-determined issues.

7            Somehow -- I understand it's very brief, but it's

8    right there in bold print, it's cited, the Rooker-Feldman

9    Doctrine.  Somehow you missed the issue that I was not going

10   to take review of the state court proceeding.

11           "The Court dismisses this claim.  Although

12       defendants make allegations that, if true, would

13       indicate serious judicial misconduct in several

14       respects, those issues are not properly before this

15       Court.  As to recusal," number one, "under state

16       statute or rule (or relief from judgment), plaintiff

17       must petition the state court and/or the Nevada

18       Supreme Court."

19           You didn't read this when you agreed in the

20   agreement, the settlement agreement, that any review of the

21   permit or anything under the agreement could not be heard by

22   Judge Wagner?

23           I assume Judge Wagner was at the time, is now, I

24   don't know, was or is a properly-elected judge, and you wrote

25   it into your agreement that venue is proper in the State of

1    Nevada, and even in the state district court for certain

2    things, then you will continue in the federal district court

3    over the agreement itself.  But then you wrote into it in the

4    decree a properly-elected state judge will not hear the

5    proceeding.  That's nonsense.

6                    MR. KOLVET:  Your Honor, the way --

7                    THE COURT:  You can't do that under Nevada law

8    without a petition to the state court mandating that he give

9    up his duties upon an appropriate -- you're violating his due

10   process rights.

11                   MR. KOLVET:  May I explain?

12            What is intended by the agreement was that under

13   Nevada law each party in the lawsuit has one right, one

14   chance, to preempt a judge by paying $450 to the State Bar --

15   or to the court system.  That's what's meant by that.

16            If they chose not to have Mr. Wagner preside, they

17   could pay their $450.  We're not automatically precluding him

18   from doing anything.  So --

19                   THE COURT:  Tell me something, counsel.

20                   MR. KOLVET:  Sure.

21                   THE COURT:  Is it your understanding that in

22   trying to set aside a previously-issued writ or petition or

23   judgment that Judge Wagner is accused of doing, that in a

24   motion to set it aside because the judge should have recused,

25   that they could simply pay the fee and get that matter heard,

32

1   previously assigned to Judge Wagner, by another judge?  Are

2   you suggesting that to me?

3              MR. KOLVET:  No, your Honor.

4              THE COURT:  I hope not because you would be

5   insulting my intelligence, sir.

6              MR. KOLVET:  What I was referring to --

7              THE COURT:  You can't delete Judge Wagner, a

8   duly-elected judge, from hearing the matter by stipulation

9   agreement without, as required by Nevada law, a petition to a

10  Nevada Court -- doesn't have to be Judge Wagner, a petition to

11  a court to displace Judge Wagner out of his duties either

12  generally or at least as to a particular case --

13             MR. KOLVET:  Your Honor, that --

14             THE COURT:  -- which procedure gives Judge

15  Wagner due process rights.

16         Your agreement is invalid and illegal because it

17  violates Nevada law.

18             MR. KOLVET:  Your Honor, we had no intent,

19  there's nothing in the agreement that affects the previous

20  writ issued by Judge Wagner.  There's nothing that I am aware

21  of that challenges the previous writ.

22         Mr. Shirley, who is one of the defendants in this

23  case, actually presented that writ to Judge Wagner, sought it,

24  got an order related to that.

25         This proceeding in front of you has nothing to do

33

```
 1   with that, nor does the agreement attempt to affect in any

 2   way --

 3               THE COURT:  Then why does the agreement, based

 4   upon my order and allegedly with excuse to the county voters

 5   that a federal judge ordered it, why does the agreement

 6   provide, number one, that Judge Wagner won't hear any case

 7   that's brought there on the proceeding, and, number two and

 8   more important, why does it release all parties, both sides,

 9   but not Judge Wagner?

10               MR. KOLVET:  Your Honor, Judge Wagner, as you're

11   well aware, was not a party to these proceedings.

12               THE COURT:  He sure wasn't.  And do you know

13   why?

14               MR. KOLVET:  I didn't bring the lawsuit, your

15   Honor.

16               THE COURT:  You don't know why?

17               MR. KOLVET:  I have strong opinions as to why he

18   wasn't.

19               THE COURT:  I know why.

20               MR. KOLVET:  There's an absolute immunity

21   for judges acting in the --

22               THE COURT:  That's right.  You got it.  There's

23   an absolute immunity for anything he did on the bench.

24               MR. KOLVET:  That's correct.

25               THE COURT:  And there's a qualified privilege
```

1   for citizens who appear before the commission.

2                MR. KOLVET:  There are, your Honor.

3                THE COURT:  So he had immunity and privilege for

4   his statements to the community and for his actions on the

5   bench.

6                MR. KOLVET:  I don't --

7                THE COURT:  That's why they didn't bring it,

8   sir.

9                MR. KOLVET:  I don't disagree with you, your

10  Honor, in any sense.

11               THE COURT:  So why do you carve out and not

12  release Judge Wagner?  If they had a right to file a cause of

13  action, don't you think they would be barred at this juncture

14  for not joining Judge Wagner?

15           If they were to bring that lawsuit now anew in

16  federal court because you didn't release Judge Wagner, don't

17  you think the federal court or the state court would say,

18  sorry, you waived that claim, you should have joined it at the

19  same time you sued the county?  Don't you think that they

20  would have waived that claim?

21               MR. KOLVET:  I would.

22               THE COURT:  Why did you carve out Judge Wagner?

23               MR. KOLVET:  What the language of the agreement

24  talks about is it does not release him to the extent -- or to

25  Judge Wagner shall not be construed to bar any ethics or

35

1   disciplinary complaint or other proceedings that BRC may bring

2   against him.

3               THE COURT:  Or other proceedings.

4               MR. KOLVET:  Okay.  But the other proceedings --

5               THE COURT:  A lawsuit for a liability for

6   suppressing or conspiring to suppress their speech?

7               MR. KOLVET:  I don't believe they have a claim

8   for that.

9               THE COURT:  I don't either, but certainly the

10  language in this agreement as you crafted it and approved it,

11  or agreed to the crafting of it, it suggests that.  They

12  reserve the right, presumably with explanation to the voters a

13  federal judge ordered us.

14              MR. KOLVET:  I, again, am somewhat confused by

15  your interpretation of this agreement to this point.

16              THE COURT:  Why are you confused now?  We've

17  spent the last ten minutes on this provision.  Why did you

18  carve them out?

19              MR. KOLVET:  Why did I carve them out?

20              THE COURT:  I told you, and I agreed with you,

21  that there was no cause of action.  That's why they didn't

22  file it.

23              MR. KOLVET:  Right.  And so there's --

24              THE COURT:  And so why did you carve out further

25  proceedings, including state or federal lawsuits as well as

```
 1    ethics complaints, out of the release provisions?

 2                    MR. KOLVET:  I didn't carve it out.  That was a

 3    request of the plaintiffs to carve it out, and because --

 4                    THE COURT:  There you go.  And why did you

 5    recommend to your commission that they agree to it?

 6                    MR. KOLVET:  A, Judge Wagner was not a party.

 7               B, I don't think that I could preclude them from

 8    pursuing ethical complaints to anybody about any action they

 9    felt was inappropriate.

10                    THE COURT:  Of course not.  But don't you think

11    you could preclude them from filing a separate lawsuit or

12    amending at this late date to add Judge Wagner?

13                    MR. KOLVET:  Well, the dismissal would get rid

14    of it out of this case.

15                    THE COURT:  And wouldn't you have the obligation

16    to defend him?

17                    MR. KOLVET:  No.

18                    THE COURT:  You wouldn't.

19                    MR. KOLVET:  No.

20                    THE COURT:  You're outside counsel.

21                    MR. KOLVET:  No.

22                    THE COURT:  You're just retained for this event.

23                    MR. KOLVET:  No.  The Attorney General's Office

24    represents district court judges.  They're state officers,

25    they are not part of the county.
```

⌐37⌐

```
 1                  THE COURT:  Oh, okay.  So the state Attorney
 2   General has that obligation.  You'll leave that up to them.
 3                  MR. KOLVET:  Which generally works it out,
 4   Judge.
 5                  THE COURT:  And therefore no release for Judge
 6   Wagner on further lawsuits.
 7                  MR. KOLVET:  Your Honor, as you've already
 8   pointed out, the limitations of other things restrict the
 9   ability of the plaintiffs to bring any lawsuits against the --
10                  THE COURT:  Now, you're private counsel, right?
11                  MR. KOLVET:  I am, your Honor.
12                  THE COURT:  You're retained for this lawsuit?
13                  MR. KOLVET:  Yes, your Honor.
14                  THE COURT:  What's the basis of your retention,
15   sir?
16                  MR. KOLVET:  I'm sorry?
17                  THE COURT:  What's the basis of your retention,
18   hourly?
19                  MR. KOLVET:  Yes, your Honor.
20                  THE COURT:  And, of course, it's on
21   representation that you're licensed and you won't commit
22   malpractice, right?
23                  MR. KOLVET:  No.  It's on the representation I'm
24   licensed.  Malpractice is in the eye of the beholder I would
25   suspect.
```

1              THE COURT:  That's right, a jury and a judge,

2    and you're getting it from a judge right now.

3              MR. KOLVET:  I am representing them to the best

4    of my ability, and so far what I've heard you say I've done in

5    this case has never been done by me.

6         What you said is I didn't interpret your rules

7    right, or your ruling right.

8              THE COURT:  Correct.

9              MR. KOLVET:  That's incorrect.  We were

10   intending to file motions for summary judgment on all those

11   points that you've raised.

12             THE COURT:  Yeah.

13             MR. KOLVET:  What then occurred is that the

14   legislature got in the middle of this thing.  They were, at

15   the start of the process, going to take away any power that

16   the county had to enforce anything against Burning Man or any

17   other similar thing --

18             THE COURT:  The record will reflect the judge is

19   laughing.

20        You've misinterpreted that statute.  We're going to

21   get into that in detail in a moment.  The language of the

22   statute is "may."

23             MR. KOLVET:  The current statute is.

24             THE COURT:  And we both know that the

25   legislature, if they had such an intent, could not have

1    carried through with an intent to order Pershing County to

2    exempt this one event.  They don't have the authority to do

3    that.

4              MR. KOLVET:  I don't disagree with that.

5              THE COURT:  The legislature, by constitution and

6    state statute, can only legislate as to counties on an equal

7    basis effective as to all counties.

8              MR. KOLVET:  I am well aware of the

9    constitution.

10              THE COURT:  There's no way in the world that the

11    state legislature, assuming that they expressed such a hidden

12    intent to you, I doubt your statement --

13              MR. KOLVET:  I've got to tell you, your Honor, I

14    wasn't involved in that.

15              THE COURT:  -- to that effect that they could

16    enforce or could implement a statute that imposes upon one

17    county the obligation to exempt one event.

18              MR. KOLVET:  It wasn't -- as I understand it, I

19    wasn't involved in the process because that was handled by

20    Mr. Shirley --

21              THE COURT:  Then why did you just stand here a

22    moment ago and represent to me that the state legislature

23    intended to force Pershing County to allow this event?

24              MR. KOLVET:  It was, as I understood it, to be a

25    statute which prohibited any county, not just Pershing County,

```
 1    from invoking the Festival Ordinance against any event that

 2    had been licensed by, like, the federal government through the

 3    BLM and that type of thing that.  That was changed --

 4                    THE COURT:  Why does the statute use the word

 5    "may" then?

 6                    MR. KOLVET:  That was changed, your Honor, to

 7    subsequently allow for the counties to use their discretion to

 8    exempt it under certain circumstances --

 9                    THE COURT:  Even if you read it as a "shall," or

10    threat of a "shall," which it doesn't read that way --

11                    MR. KOLVET:  I don't disagree with you.

12                    THE COURT:  -- it was adopted as a "may," even

13    if you read it as a "shall," the other provisions of the new

14    statute are not met in this case because the county did not

15    make the findings required by the new statute.  But we'll get

16    to that in just a moment.

17                    MR. KOLVET:  Again, the basic understanding I

18    have of your objection is that the county somehow gave away

19    its right to enforce its laws prohibiting offenses against

20    children and all of those things.  As I understand the

21    exemption, it doesn't do that.

22            And, secondly, this agreement does not contemplate

23    that a sheriff's deputy going out on the playa as part of a

24    routine patrol that sees any violation of state law cannot act

25    upon that violation, cannot arrest the perpetrator, or cannot
```

1    do any other thing to enforce the laws of the State of Nevada.

2              THE COURT:  We'll get to that point in a few

3    minutes, sir.

4              MR. KOLVET:  All right.  But I just want you to

5    know my interpretation.

6              THE COURT:  But it's clear to me that you don't

7    understand it, so I am going to ask that you get a copy of the

8    transcript, sir, and you read it over several times, because

9    it's obvious to me this is going right over your head.

10             MR. KOLVET:  I disagree with that, your Honor.

11   I disagree with the fact --

12             THE COURT:  Yes, you do.

13             MR. KOLVET:  -- the fact that you said that I

14   didn't understand the first order.

15        What I'm saying to you is that we've reached an

16   agreement here that says we're going to -- they're going to

17   dismiss the lawsuit against us.  We have other agreements in

18   place.  But nothing says we give up our right to enforce state

19   law, and that's just my point.

20             MS. HURST:  Your Honor, I'm concerned --

21             THE COURT:  Well, you're wrong, and it's going

22   over your head, sir, and I'm going to ask you to read the

23   transcript to get a little better education.

24             MS. HURST:  Your Honor, I'm concerned the Court

25   may be proceeding under a misapprehension because of a

1    clerical error in the initial filing related to the

2    stipulation.

3              In the initial filing related to the stipulation we

4    accidentally omitted the second exemption agreement --

5              THE COURT:  I've got the second exemption

6    agreement.

7              MS. HURST:  -- which wasn't -- which was entered

8    into by the county at an earlier time separate from the

9    settlement and for which the county held public hearings,

10   received evidence and entered a variety of findings --

11             THE COURT:  The settlement specifically

12   incorporates that prior exemption.

13             MS. HURST:  Yes.

14             THE COURT:  And it asks me to approve it.

15             MS. HURST:  Your Honor, we are not requesting

16   court approval for this settlement agreement.  We are simply

17   making a motion to dismiss.

18             The motion to dismiss -- the only reason we made a

19   motion at all, instead of just filing a stipulation, is

20   because we wanted the Court to retain jurisdiction to enforce

21   the agreement.

22             THE COURT:  As you're going to see at the end of

23   this monologue, that's the attempt, is that you're not going

24   to be able to dismiss except with prejudice, ma'am.

25             MS. HURST:  We did dismiss with prejudice, your

1   Honor.

2          THE COURT:  Yeah, and the Court will

3   specifically disapprove in that order, and will invalidate the

4   exemption, because it was given by way of fraud on the

5   commission and fraud on this Court.

6         So the order of dismissal will specifically, or

7   simply denial of dismissal will also declare invalid the

8   exemption proceedings and the signatures of the county

9   commissioners.

10         MS. HURST:  Your Honor, I don't believe there's

11   anyone before this Court asking for that relief.

12         THE COURT:  Right.

13         MS. HURST:  I don't believe there's any evidence

14   in the record that would support that form of relief, and I

15   don't believe the Court has jurisdiction to enter that relief.

16         THE COURT:  Good, ma'am.  Have you entered your

17   objection, ma'am?

18         MS. HURST:  I have, your Honor.

19         THE COURT:  Good.

20         MS. HURST:  I may make further objections as

21   well.

22         THE COURT:  I'm sure you will.  Now, please be

23   seated, and I'll continue.

24        The Court dismisses the fifth cause of action.

25   That's in my order.

1           "Although defendants make allegations that,

2      if true, could be serious judicial misconduct, those

3      issues are not properly before this Court."  Number

4      one, "As to recusal under state statute, that belongs

5      in the state court.  Plaintiff must petition the

6      state court and/or the Nevada Supreme Court."

7           As we also know, they have to move to intervene in

8  that proceeding to set it aside.

9           "Although plaintiff was not a party to the

10      proceedings, it could move to intervene and for

11      relief from judgment and/or recusal in the state

12      court, and then it could appeal any denial to the

13      Nevada Supreme Court via appeal or extraordinary

14      writ.  The Court does not believe it has jurisdiction

15      to adjudicate the recusal issue under the federal Due

16      Process Clause.  The U.S. Supreme Court has ruled

17      that the Due Process Clause can require recusal where

18      a state judge has received a campaign contribution

19      from one of the parties appearing before him of such

20      a magnitude that it could tempt the average judge to

21      rule in a biased manner."

22           And I cited for you for your instruction

23  *Caperton v. A.P. Massey Coal*.  "That is not" -- that's a

24  U.S. Supreme Court case.

25           "That is not alleged here.  But even assuming

1          the Due Process Clause similarly applies to require

2          recusal in a case like the present one, that is, *ex*

3          *parte* collaboration with one party and actual

4          personal bias, the U.S. District Court is simply not

5          the route for plaintiff - 'a state-court loser

6          complaining of injuries caused by a state-court

7          judgment rendered before the state court proceedings

8          commenced and inviting district court review and

9          rejection of that judgment' - to obtain federal

10         review."

11              There's just no jurisdiction to do that, citing

12    *Exxon Mobile*, a U.S. Supreme Court case.

13              "Plaintiff must challenge the state court

14         ruling through the state courts and to the

15         U.S. Supreme Court."

16              Through the Nevada Supreme Court, not through the

17    federal court, or the Ninth Circuit, but you have the right of

18    review even up to the U.S. Supreme Court.

19              "Whether or not the plaintiff was a party in

20         the state court, this Court has no jurisdiction to

21         void the state court ruling.  The Court therefore

22         dismisses the fifth claim."

23              So in violation of Rooker, in violation of

24    jurisdiction, you asserted this claim, and I dismissed it, and

25    it's there in plain language.

1            Now, the contract clause and breach of contract,

2   because this is one area where I think I'm going to change the

3   prior order.

4                "In the sixth cause of action, plaintiff

5        alleges that defendants violated the contract clause

6        by repudiating the 2005 and 2011 agreements, and that

7        defendants have breached those contracts under state

8        law.  The Court will not dismiss these claims."

9            I think I'm going to change my mind.

10               "'No state...shall pass...any law impairing

11       the Obligation of Contracts."

12           But if you have a contract that's illegal, invalid,

13  because it imposes -- it impairs or abrogates the duty of a

14  county to fulfill -- or county sheriff to fulfill state law,

15  or to enforce state, federal, and local law, that agreement is

16  invalid.

17           And there's nothing wrong with the county commission

18  saying we think that prior agreement is invalid on a number of

19  grounds, that being one, and another being that we aren't

20  being permitted to charge for the full, fair, reasonable value

21  of services that the BLM requires us to provide.

22           That, plus any number of other reasons, could be a

23  valid basis for saying that agreement is invalid.  That

24  doesn't violate the Contracts Clause.  They just can't pass an

25  ordinance that invalidates an existing contract that is valid.

1              "'It long has been established that the

2         Contract Clause limits the power of the states to

3         modify their own contracts, as well as to regulate

4         those between private parties.  Yet the Contract

5         Clause does not prohibit the states from repealing or

6         amending statutes generally, or from enacting

7         legislation with retroactive effects.'  The Contract

8         Clause is no barrier to otherwise legitimate

9         legislation concerning the public welfare."

10         Let me read that to you again.

11              "The Contract Clause is no barrier to

12         otherwise legitimate legislation concerning the

13         public welfare that incidentally abrogates private

14         contracts."

15         So if the county has a private contract with mob

16    boss Joe So-and-So that we won't enforce state law or our

17    county law against your conduct, and thereafter a new

18    commission says, you know what, that contract was invalid, we

19    were abrogating our duty, it's no violation for them to pass

20    an ordinance to that effect.  It doesn't violate the Contracts

21    Clause.  That's as simple as I could put it.

22              "So long as the 'legislation adjusting the

23         rights and responsibilities of contracting parties is

24         upon reasonable conditions and of a character

25         appropriate to the public purpose justifying its

1       adoption.'"

2               For example, I gave you one example, child abuse

3   laws, a pre-existing contract that abrogated the duty to

4   enforce child abuse, child trafficking laws.  Another example

5   is the state statutes that mandate that you charge reasonable

6   fees for various types of services.

7               The state statutes governing police departments

8   require that if you contract, or are required to contract, for

9   the provision of special services, as this BLM permit required

10  you to do, you must charge reasonably for the services.  On

11  the basis of a bribe, on the basis of threats, on the basis of

12  a lawsuit, you can't give away those services, and if you did

13  in a prior contract, that contract is illegal.

14              And if you have a new ordinance that says, sorry, we

15  are now going to charge reasonable costs to cover our costs,

16  both fixed costs or special particular costs that are

17  allocated specifically and directly to an event, then the

18  county has the right to pass an ordinance that changes the

19  agreement.  It's not a violation of the Contracts Clause of

20  the U.S. Constitution.

21                  "But when a state repudiates or impairs its

22          own contractual obligations, the inquiry is a little

23          different.  In the latter case, a court first asks

24          whether the state's contract was valid in the first

25          instance."

1          Let me read that to you again.  This is the analysis

2     that you go through.

3               "But when a state repudiates or impairs its

4          own contractual obligations, the inquiry is a little

5          different.  In the latter case, a court first asks

6          whether the state's contract was valid in the first

7          instance, that is, whether the contract purported to

8          bargain away the ability of future legislatures to

9          exercise their police power.  ('In short, the

10         Contract Clause does not require a state to adhere to

11         a contract that surrenders an essential attribute of

12         its sovereignty.')"  Citing a Supreme Court case.

13              Got that?

14              I added, of course, that economic agreements do not

15    generally fall within the Reserved Powers Doctrine, but

16    agreements that dictate welfare, public welfare, do fall

17    within that latter analysis.

18              "The Court finds that plaintiff has made out

19         a *prima facie* case of a Contract Clause violation" --

20              Again, I'm not saying that they have a cause of

21    action, I'm just saying they've alleged it.

22              "-- as to repudiation of the 2005 and 2011

23         agreements insofar as that repudiation stripped

24         plaintiff of the economic benefit of its bargain" --

25              And remember, that's their burden of proof.  To

1    simply say that under the new agreement you're going to charge

2    more does not meet their burden.  They may have additional

3    costs in spite of old agreements because the economy is more

4    expensive now, and costs for police enforcement goes up.

5    Unfortunately, and I'm sad to say, it goes up extremely as a

6    result of federal court decisions that impose all the time on

7    police more stringent obligations in effecting arrests, in

8    charging crimes, in reasonable use of force.  Those costs go

9    up all the time.

10           So there is no violation of the Contract Clause, nor

11   violation of -- nor stripping of the plaintiff of the economic

12   benefit of its bargain under the old contract by saying, hey,

13   the state statute requires us to charge reasonably for the

14   costs that we're required to provide.  That's not a violation

15   of the Contracts Clause.

16           "However, the Contract Clause and breach of

17       contract claims are not viable as against the

18       Festival Ordinance as a general matter.  The Festival

19       Ordinance is based upon the legitimate police power

20       of the county, and the 2005 and 2011 agreements

21       Forbearance Clauses cannot strip the county of that

22       power.

23           "In summary, the repudiation of the

24       Forbearance Clauses is not a Contract Clause

25       violation, but plaintiff has sufficiently alleged

1          that repudiation violates the Contract Clause insofar

2          as it affected plaintiff's economic obligations."

3               The cost of law enforcement services.  That's why I

4     had to remind you that's not in violation of state statutes or

5     the obligation to charge reasonably which we'll address in a

6     moment when we turn to the settlement agreement.  There were

7     some others, but I think that's the main thing.

8               Let's address both the exemption agreement that

9     plaintiff says was passed independently, free of their fraud,

10    by the county commission, and then -- and without the

11    influence of the federal court's prior order, and let's turn

12    instead to the settlement agreement and the exemption

13    agreement so that you can see what my objection is.

14               Amended stipulation for dismissal with prejudice,

15    asking the Court --

16               "Whereas the parties to the instant

17          litigation have entered into a comprehensive Festival

18          Ordinance waiver, law enforcement and settlement

19          agreement, and an agreement to exempt, copies of

20          which are attached, whereas the settlement agreement

21          also provides a comprehensive long-term framework for

22          Pershing County to supply law enforcement services at

23          the annual Burning Man event in Black Rock

24          Conservation Area, and whereas the settlement

25          agreement further provides as a material term that

1       the Court shall retain jurisdiction to enforce the

2       settlement agreement, it is hereby stipulated and

3       agreed and requested jointly that the Court shall

4       enter the proposed order of dismissal with prejudice

5       retaining jurisdiction over the settlement agreement

6       filed contemporaneously herewith."

7            Now, quite honestly, ma'am, and I'm sorry to have to

8   say it, but in a mealy-mouthed fashion you told me that you

9   weren't asking for the Court to approve the settlement

10  agreement.

11           MS. HURST:  We're not asking for the Court to --

12           THE COURT:  Thank you.

13           MS. HURST:  -- approve the settlement agreement.

14           THE COURT:  You seconded and you repeated again

15  your mealy-mouthed comment, and this is why it is that.

16           You're asking me to retain jurisdiction over

17  enforcement of it.  Implicitly I'm approving it.  Do you

18  understand that?

19           MS. HURST:  Your Honor, this is not a class

20  action settlement or any other type of suit requiring --

21           THE COURT:  What does that have to do with my

22  comment?

23           MS. HURST:  I believe I was being responsive.

24  If the Court thinks otherwise, I apologize.

25           THE COURT:  Were you are under the misimpression

1    that I thought this was a class action case?

2                    MS. HURST:  No, your Honor.  This is not the

3    kind of case that requires court approval over the settlement.

4    If the Court wishes not to retain jurisdiction, then it may

5    deny that aspect of the motion, obviously.

6                    THE COURT:  You don't think that any subsequent

7    court challenging my retained jurisdiction and ruling that

8    they must comply would rule anything but that I had implicitly

9    approved it?

10                   MS. HURST:  No, I do not, your Honor, because --

11                   THE COURT:  You don't think they would.

12                   MS. HURST:  No.  Whatever arguments the parties

13   may have --

14                   THE COURT:  I'm going to suggest, ma'am, that

15   you go back to law school.

16                   MS. HURST:  Whatever argument the parties --

17                   THE COURT:  Thank you.  You've made your

18   objection, sit down.

19                   MS. HURST:  Whatever argument --

20                   THE COURT:  Sit down.

21                   MS. HURST:  -- the parties may have --

22                   THE COURT:  Call the court security officer,

23   please.

24                   MS. HURST:  Your Honor, may I preserve Black

25   Rock City's position for purposes of the record?

1                    THE COURT:  You already did, ma'am.  Sit down.

2                    MS. HURST:  Your Honor, I was in the middle of a

3    sentence.

4                    THE COURT:  Last time.  Sit down.

5            All right.  Let's review that agreement.

6            The comprehensive Festival Ordinance waiver, law

7    enforcement and settlement agreement between Black Rock.  It

8    has various recitations, A, B, C, D.

9                    "Beginning in late 2011, the Pershing County

10            Commissioners, District Attorney, and other public

11            officials within Pershing County, including District

12            Judge Richard Wagner, made a variety of public

13            statements indicating that they believed minors

14            should not be present at the Burning Man event.

15            Judge Wagner also made statements that the 2005 and

16            2011 settlement agreements were invalid."

17            In the next page of recitals, in number I,

18            "On May 15th, 2012, the District Attorney

19            filed a petition for writ of *certiorari*, mandamus

20            and/or prohibition in state court seeking to

21            invalidate the 2005 and 2011 settlement agreements

22            based on a claim that the settlement agreements

23            violated state law.  The petition named the county

24            commissioners as defendants.  BRC was not named as a

25            party, and BRC was not served with the state

—55—

1          petition.  The county commissioners, after consulting

2          with independent counsel, declined to contest the

3          requested writ, and a judgment was entered by Judge

4          Richard Wagner who, during county commission

5          meetings, had previously made public statements about

6          the presence of minors at the event and the

7          invalidity of the settlement agreements purporting to

8          invalidate the 2005 and 2011 agreements."

9                    And you already know what I think about that

10   paragraph in the order that dismissed your cause of action

11   based upon that.

12                    "On May 27, 2013, the Nevada legislature

13          passed, and on June 1st, 2013, the governor signed,

14          Nevada bill 374.  AB374 provides that notwithstanding

15          the provisions of 244.354 to 3548 inclusive, which,

16          of course, mandates every county in the state to pass

17          such an ordinance, a board of county commissioners

18          may in its discretion agree to exempt any assembly

19          from regulation under the provisions of NRS where

20          such assembly occurs on public lands and the assembly

21          organizer obtains a permit from a federal agency to

22          hold the assembly.  And AB3" -- which this permit, of

23          course, did not.

24                    "AB374 also provides for the validity and

25          enforcement of such an exemption of a law enforcement

1          agreement beyond the terms of any board of county

2          commissioners enacting such exemption and/or entering

3          into such an agreement."

4              We'll get to that in just a moment, and this is one

5     of the major areas where you misinterpreted the legislation,

6     sir.  You entered into an agreement here that bound the county

7     to a 50-year exemption, 50 years, the county did.

8                    MR. KOLVET:  The county did.

9                    THE COURT:  And I assume upon your advice.

10                   MR. KOLVET:  No, sir.

11                   THE COURT:  No, sir.  Okay.  Well, that's good.

12    That speaks to your credit.

13              Fifty years.  Somebody provided an interpretation to

14    the county of the new state legislation that the county could

15    exempt an event or group beyond a reasonable period.  The

16    words "reasonable period" are not used in the statute, but I

17    have no doubt that any state court, certainly this Court,

18    would impose such a limitation.

19                   MR. KOLVET:  Your Honor, just --

20                   THE COURT:  For anybody to have interpreted this

21    state statute to mean that a county could, by agreement,

22    exempt into the future, indefinite future, we know that would

23    of course be invalid probably under the rule against

24    perpetuities, but certainly for a 50-year term to provide a

25    specific amount for law enforcement services, and to exempt

57

1    the permittee from complying with the county ordinance

2    expressing concerns for sewage, child welfare, legal -- or

3    criminal violations, was clearly a misinterpretation, and I

4    don't think any court, any judge in their right mind would

5    confirm such an interpretation, and I cited to you those two.

6         Now, let me tell you the ones that are simply

7    objectionable, make the agreement invalid, and will be grounds

8    for my striking the agreement and the signatures of the county

9    commissioners.

10        "1.1.   AAR, After Action Report shall mean

11        and refer to a report made in writing by the sheriff

12        to BRC providing all information in county possession

13        relating to warnings and citations issued to, and

14        arrests or detention of, attendants at Burning Man

15        event, and actual expenses in connection with the

16        event, except to the extent" -- I'm delighted that

17        you include this clause -- "the release of such

18        information is prohibited by federal or state law."

19        Now, there's nothing wrong with the requirement that

20   we'll read in a few minutes that there be an After Action

21   Report that justifies the costs being charged by the county

22   for providing law enforcement services or for coroner services

23   or anything else.

24        But what you cannot do in a legal, valid agreement

25   is bind the county to release information which the District

1   Attorney determines I can't release, you know, I'm not going

2   to release to Black Rock.  Obviously Black Rock is in a

3   position not only to protect themselves, but to protect the

4   participants in the event, the people that they permit to come

5   in.

6           If someone came across the state line carrying five

7   tons of marijuana, and they're arrested and they're

8   prosecuted, don't you think that somewhere down the road Black

9   Rock will be complaining, and/or that defendant will be

10  complaining, if the District Attorney refused to disclose all

11  the witnesses, all the writing on the tickets, all of the

12  arrest reports prior to the time that they have to do so in

13  the prosecution, all of the -- what does it say?  All

14  information in county possession, everything, minutes,

15  everything.  That's an illegal provision.

16          It defines the BLM permit, of course.

17          "BLM means the Bureau of Land Management, and

18      BLM permit means any special recreation permit to BRC

19      for the purpose of holding a Burning Man event in the

20      Black Rock National Conservation Area."

21          You know, the real problem for this agreement, and

22  I'll just pause for a moment to tell you, is BLM should have

23  been doing this.  You know, if Black Rock was so excited about

24  the county suppressing their free speech of running around

25  nude out on the desert which nobody really should care about

 1   other than in the presence of children, they should have filed

 2   a complaint with the federal court against the BLM, delete

 3   that provision mandating that we contract for services, and

 4   now, as we've seen as a result of this case, at ridiculously

 5   low prices.

 6            They should have asked for a mandate from this Court

 7   ordering the BLM to perform that service, then let us all sit

 8   back and watch the BLM exempt this applicant from federal,

 9   state, and local ordinances.  That would be a real joke, and

10   we know that they wouldn't do that, of course.

11            Next provision that's objectionable, 1.9, integrated

12   command.  How can you -- when the BLM permit requires law

13   enforcement by the sheriff's office and contracted-for

14   services and direct payment, how can you impose in this

15   agreement an integrated command system?  You can't do it.

16   Integrated -- the BLM permit doesn't contemplate it.

17            "Integrated Command means a system of law

18       enforcement at the event which provides for the

19       command, control, and coordination of emergency

20       responses to incidents that occur at the event.

21       Under the Integrated Command structure," capital I,

22       capital C, "the BLM and sheriff's office provide a

23       coordinated response to situations at the event" --

24            So are you implying that BLM, or Black Rock through

25   BLM, has the right to negate the sheriff's actions?  We're

1    sorry, you won't be able to arrest anybody for either juvenile

2    delinquency or delinquency motivation of a minor because they

3    brought in a minor and allowed them to walk in the areas where

4    there was public nudity display.

5            You're calling for an integrated command.  The BLM

6    doesn't call for it, doesn't allow it.  Each agency is

7    responsible.

8            "Under the integrated command structure, BLM

9        and sheriff's office provide a coordinated

10       response" --

11           What does coordinated mean?  It means they both have

12   to agree, right?

13           "-- to situations at the event.  Each agency

14       is responsible for the enforcement of specific laws

15       pertaining to their specific jurisdictional

16       oversight."  BLM, federal and Pershing County.

17           "The integrated command occurs during the

18       set period of time coinciding with the event in the

19       geographical area of the event.  The number of

20       officers needed for policing the event and therefore

21       the limitation on what you can charge for such

22       services, and the limitation on how many events --

23       significant criminal events you can cover," quote,

24       "is determined through a cooperative effort between

25       the BLM and the sheriff's office with," beautiful

1          words, "input from BRC."

2               That's illegal; invalid.

3               Now, we're at noon.  I'm going to keep going.  I'm

4     going to hold you here for -- we've got about 15 more minutes

5     to go, and I can tell that you're all disgusted with the

6     Court, but I'm going to remind you, you're looking at a

7     federal United States District Court judge, and the bottom

8     line of this whole event is going to be a referral of all of

9     the counsel to your respective state bars.

10               You've not only misrepresented to your clients,

11    misinterpreted the Court's orders, you've committed

12    malpractice in this case, and you -- in the pretext of a

13    federal court proceeding, you've come up with a pretextural

14    settlement agreement.

15               You're doing the very same thing that you accused

16    the county of doing in a pretextural lawsuit in which BRC was

17    not involved.  You've done and attempted to do the same thing

18    on this Court.  It was a fraud on me.  The Court resents it,

19    and one conclusion here will be a referral to your respective

20    state bars.

21               Another invalid provision.  Exemption from Pershing

22    County Code, Chapter 5.16, 2.1.

23               "That certain agreement to exempt Black Rock

24         City from other provisions of Pershing County, a copy

25         of which is attached hereto as Exhibit A, is hereby

1          incorporated by reference as more fully restated

2          herein."

3               In other words, that exemption action is fully

4     stated in the settlement agreement for which the Court retains

5     continuing jurisdiction to enforce it.

6               Number three, law enforcement services.

7               "The county will provide for the enforcement

8          of state and local laws at the event pursuant to the

9          BLM permit as part of an integrated command with BLM

10         law enforcement personnel, or, if both BRC and the

11         county agree, as a separate command."

12              So BRC has to approve this arrangement, integrated

13    command versus separate command.

14              "If BLM refuses expressly and in writing to

15         conduct an integrated command with the county" --

16              In other words, the BLM got out of it, right?  By

17    the permit, they said go to the county for this service, but

18    if BLM should nevertheless refuse, expressly and in writing,

19    to conduct an integrated command, then BRC will not withhold

20    its consent to a separate command.

21              So, in other words, unless they get it in writing

22    from BLM, there's going to be an integrated command on which

23    coordinated effort requires, of course, joint consent of both

24    the BLM and the sheriff's office with, I remind you, quote,

25    unquote, "with input from BRC," whatever that means.

1          And if they should ask a Court to say, listen, we

2     gave our input and they didn't consider it, they went against

3     us, that they wanted a separate command, and they wanted to

4     enforce the laws on child endangerment, arguably they've got

5     an argument that you're violating the agreement.

6          The next provision that's invalid, 3.2.  "At least

7     30 days prior to the event" -- this general provision actually

8     is valid.

9               "At least 30 days prior to the event, the

10          sheriff will meet with BRC to disclose and discuss

11          law enforcement priorities for that event for that

12          year."  Good resolution.

13               "The purpose of the meeting will be to

14          enhance event coordination between law enforcement

15          and BRC to enable BRC to provide targeted information

16          to participants to enhance compliance in cooperation

17          with patrolling officers."

18     Very good provision.  I compliment whoever drafted

19     this one.

20               "If law enforcement priorities for the event

21          change following the meeting, the sheriff will

22          immediately notify BRC of the nature of the change in

23          priorities and will arrange for a follow-up meeting

24          with BRC as soon as reasonably possible to discuss

25          the details."

1          The next provision, 3.3, is both valid and invalid

2     in parts.

3               "Within three days of the event, the sheriff

4          and BRC will meet to prepare a joint press release

5          about the law enforcement activities at that year's

6          event.  The press release" -- this is three days

7          before the event.  "The press release will reflect a

8          consensus view of the parties."

9          So, in other words, both sides, BRC and the

10    sheriff's office, will be required to consent to this

11    publication of the priorities to be exercised by the sheriff's

12    office in enforcement of its duties.

13         So presumably, under this provision, if BRC says

14    we're not going to include in this warning, in this category,

15    that you are barred from permitting children to view lewd,

16    lascivious conduct, you'll be in violation of it.

17         Nothing wrong with the clause generally, three days

18    before, good, but you give basically a veto power, at least on

19    the press release for the priorities, about what duties the

20    sheriff will carry out and what priorities.

21         The next objectionable one is in 3.5.

22               "The sheriff shall, within 14 days after the

23          event, provide an After Action Report.  If the

24          information for the After Action Report is not yet

25          available at that time, then the sheriff shall

1          provide the information as soon as it becomes

2          possible."

3              Actually, that provision is probably good and very

4     good, at least to the extent that it is getting into the costs

5     that the sheriff's office has had to expend which BRC has

6     every right in the world to review.

7              My main objection to the prior ones -- I'm going to

8     cite later ones in just a moment.  The main objection to the

9     prior ones is you misinterpreted the new state statute that

10    allows you to exempt.  It uses the word may, of course, and it

11    uses the word may only if it's on federal lands which

12    otherwise have jurisdiction to regulate them, and only if the

13    federal agency satisfies the concerns for regulation expressed

14    in the state-mandated local ordinance which we'll address in

15    just a moment.

16             Somebody told this county commission that they could

17    adopt an agreement that exempted -- that provided for a change

18    not required in the BLM's certificate or permit for a

19    coordinated -- what's the language -- integrated command, not

20    under the sole jurisdiction of the sheriff's office, but under

21    BLM and sheriff's office with input from BRC.  Whoever

22    interpreted the new state statute to say this was permitted to

23    a county obviously didn't know how to read statutes.

24             Now, the big problem with this agreement is the

25    agreement as to reimbursement for costs and the term.  I can't

 1    find much wrong with the initial block of agreed payments.

 2    That's the whole idea of an exemption and an agreement.  You,

 3    county, agree to render special services and you agree that

 4    you will charge this amount.  Nothing wrong with that.  That's

 5    what the new statute contemplates.

 6            Of course, to the extent that we have the block for

 7    base payment, separate command, one to 60,000, 375,000; 60,000

 8    to 70,000, 400,000 fee; 70,000 to 80,000, four twenty-five

 9    fee; 80 to 90,000, $500,000 fee; 90,000 to a hundred thousand,

10    $600,000 fee.  Nothing wrong with that.

11            I assume you negotiated between yourselves, and you

12    had some revelation about basically the type of liquidation

13    clause analysis that goes on, here will be our probable costs

14    depending on the peak population.

15            It is objectionable that you included a similar

16    block in the case of an integrated command, which is an

17    illegal requirement in this agreement, with lower

18    compensation.  That's objectionable.

19                "4.3.  The base payment shall be determined

20         by taking the base payment associated with the

21         applicable range of peak population and command

22         status, integrated or separate."

23            And then adjusting for inflation using the Consumer

24    Price Index, assuming that 2014 is the base year, and that's

25    the inflation adjusted payment.  Nothing wrong with that if

1   the agreement is for a term of five years, maybe even ten

2   years.   This agreement is binding for 50 years.

3           Who advised the county that the state statute

4   authorized them, in violation of state law prohibiting them

5   from giving away county services, in violation of this statute

6   itself, in violation of all other kinds of statutes that

7   impose duties upon the office and chair, which attorney

8   advised the county that it was appropriate under their

9   interpretation of this new statute that the county bind

10  themselves for 50 years to a cost of living index?

11          MR. KOLVET:  Your Honor, this agreement is for

12  ten years.   The exemption agreement is for 50.

13          THE COURT:  Fifty years.

14          MR. KOLVET:  And I did not advise them on the

15  50.  I did advise them on this agreement, which is the 10 --

16          THE COURT:  And where is the ten years, by the

17  way?

18          MR. KOLVET:  I'm looking, your Honor.

19          THE COURT:  That's the same thing I did last

20  night for about 45 minutes.  Of course, I'm capable of missing

21  stuff, too.

22          And remember, please, that the exemption agreement

23  which has, in effect, a term of 50 years, until 2063, is

24  incorporated by reference into this agreement.

25          MR. KOLVET:  Yes, your Honor.  There are terms

1    of that exemption agreement apparently that are -- and they

2    are different than what's in the settlement agreement.

3                    THE COURT:  They are in conflict.

4                    MR. KOLVET:  I'm not exactly sure what reference

5    that is --

6                    THE COURT:  So what do you think, sir, as a law

7    school graduate, the effect of incorporating one agreement

8    into another is?

9                    MR. KOLVET:  There are terms of that agreement

10   that affect other than law enforcement.  This is basically the

11   law enforcement portion of that agreement.  There is coroner's

12   fees agreement, and there is other things in that agreement

13   which were not part of this agreement.

14                   THE COURT:  But that agreement was specifically

15   that agreement, unlike -- this agreement did allow other

16   separate agreements.  For example, if you're going to provide

17   sewer service or whatever else, this agreement says you can

18   enter into separate agreements, but unlike those such future

19   separate agreements, this settlement agreement incorporated

20   the exemption with respect to the provision of police

21   services.

22                   So do you want to keep looking or --

23                   MR. KOLVET:  No, your Honor.  I haven't found

24   the term, but it was intended for this one to be only ten

25   years.

69

1                    MS. HURST:  There's a reference to the ten-year

2     term in paragraph 6.1, your Honor, all parties agree that it

3     is a ten-year term.

4                    THE COURT:  6.1.  Good.

5                    MS. HURST:  All parties agree that it is a

6     ten-year for law enforcement services.

7                    THE COURT:  Well, with all due respect, ma'am,

8     I'm going to read it, please.

9                    "Agreement shall be governed and interpreted

10         under the laws of the United States, State of Nevada,

11         without recourse to conflicts of laws and principles.

12         The exclusive venue for any disputes between the

13         parties arising under or connected to this agreement,

14         except for the matters specified in Exhibit A, shall

15         be the United States District Court for the District

16         of Nevada.  The parties further agree that the United

17         States District Court has continuing and exclusive

18         jurisdiction over all terms of this agreement for the

19         ten-year term of the law enforcement services agreed

20         to be supplied herein."

21              So the continuing jurisdiction is limited to ten

22     years.  Where is the provision referenced here?

23                    "Over all the terms of this agreement for

24         the," the, not a, "for the ten-year term of law

25         enforcement services agreed to be supplied herein."

1              MS. HURST:  That's one of the objects of the

2    agreement.  It's the entire section entitled Law Enforcement

3    Services, your Honor.

4              THE COURT:  Where's that?  That's the one that's

5    incorporated by reference?

6              MS. HURST:  No, your Honor.  It's -- the law

7    enforcement services are not part of the exemption agreement,

8    the originally-granted exemption agreement.  They're only part

9    of the settlement agreement, and they last for ten years under

10   the settlement agreement, and then at that time the parties --

11             THE COURT:  Where does it say ten years?

12             MS. HURST:  In the sentence that the Court just

13   read, your Honor.

14             THE COURT:  Ma'am, with all due respect, it

15   doesn't say that.  It says the continuing jurisdiction of the

16   Court over the agreement is limited to a ten-year period, but

17   it makes reference to "the ten-year term of the law

18   enforcement services agreed to be supplied herein."

19         Is there anywhere in this agreement that says the

20   law enforcement services is limited to a ten-year term,

21   anything other than the 2063 termination date in the other

22   agreement incorporated by reference?

23         Let's turn to that for just a minute.  We need to

24   get back to this one.

25             Here's the agreement to exempt Black Rock from other

1  provisions of Pershing County Code 5.16.

2           "Whereas the Nevada legislature has

3      recognized that notwithstanding these provisions a

4      Board of County Commissioners may, at its discretion,

5      agree to exempt any assembly from the regulation

6      under the provisions" --

7           We'll need to read the statute which we're going to

8  in just a moment to see how you misinterpreted it.

9             "-- if the assembly occurs on public lands,

10     and the assembly organizer obtains an annual permit

11     from a federal agency to hold the assembly."

12          Funny how the whereas didn't contain the rest of the

13 clause, including the mandatory that if we were talking about

14 a federal agency, this is talking about a federal agency that

15 regulates, governs, has jurisdiction for, and enforces the

16 laws on public land.

17          You're not authorized to regulate special events on

18 tribal lands.  You're not authorized to regulate special

19 events on federal lands.  You don't have jurisdiction unless

20 the BLM, by agreement, agrees with you, in which case they

21 have in every county.  In this state highway patrolmen are

22 authorized to come onto federal lands, general BLM lands, not

23 Forest Service lands or Park Service lands or an air base, to

24 enforce state laws.

25             "Whereas the Board of Pershing County

1          Commissioners held a public hearing, whereas the

2          agreement shall cover the assembly known as the

3          Burning Man event which is hosted by Black Rock each

4          year in the Black Rock Conservation Area in Pershing

5          County which is public land managed by the Bureau of

6          Land Management, therefore the parties agree the

7          Burning Man event, which is organized, promoted and

8          managed by Black Rock, is an assembly which is held

9          on public lands, specifically the Black Rock

10         Conservation Area, which is managed by the Bureau of

11         Land Management."

12              It's too bad that's a very incomplete sentence.

13   It's not fully managed by the Bureau of Land Management with

14   regard to law enforcement or other services during this event.

15              "This agreement is subject to the Burning Man

16         event being held in the Black Rock Conservation Area

17         during an 8- to 14-day period,"

18   that's specified, excluding periods when the Burning Man event

19   is not held, and for four years without fault, and here's the

20   interesting provision,

21              "Unless extended in writing by the parties,

22         this agreement shall terminate on the first day of

23         October, 2063," 50 years hence.

24              "The Burning Man event, while this agreement

25         remains in effect, shall not be subject to the

73

1          requirements of Pershing County Code 516.010."

2              Who in the world, what attorney stood before the

3     county commission and said this new statute gives you the

4     right to exempt an event and provide for services, lock

5     yourself into services, for 50 years, and, by the way, to bind

6     subsequent county commissions for 50 years?  Clearly the

7     intent of the legislature was to bind subsequent county

8     commissions even if there's an intervening election so that

9     the economics can be realized of the transaction.

10             I don't think anybody could prove that the state

11    legislature, nor will you find me any report that says the

12    state legislature, intended to let you bind the county for

13    50 years into the future.

14             Question mark, number seven.  Insurance.

15             "If the Bureau of Land Management does not

16         require insurance as part of its permitting process,

17         the following conditions apply."

18             That would be fine if it didn't have that

19    perforatory clause, "if the Bureau of Land Management does not

20    require insurance."  It would be good except for the amounts.

21             "The following conditions apply.  Black Rock

22         shall obtain and maintain assembly sufficient

23         commercial general liability insurance to cover

24         damages resulting from bodily injury, wrongful death,

25         property damage, constitutional, or other claims,

1        based upon, or relating to, the exemption granted by

2        Pershing County,"

3    which discharges the assembly from the obligations imposed

4    under various sections, the sections of the new statute.

5            So, of course, one of the constitutional claims we

6    are bound to expect is unreasonable use of force, or an

7    unlawful, illegal arrest.  That's what I do with 80 percent of

8    my day is work on such cases, 1983 cases.  So I would think

9    that we would expect that there will be 1983 claims against

10   the police department.

11           "Black Rock shall obtain and maintain

12        sufficient commercial general liability.  The

13        organizer shall name Pershing County, its officers

14        and employees, as an additional insured."  Very

15        appropriate.

16           "The amount of the insurance shall be

17        sufficient to cover the size and scope of the

18        assembly, but shall not be less than one million

19        dollars for each occurrence and one million dollars

20        for each personal injury."

21           Now, I must admit I've had a few 1983 actions as the

22   result of jury trial that resulted in less than a million

23   dollars during the course of the last couple of years, but

24   I've had a number of them exceeded it.  Who in the world came

25   up with this one million dollar limitation?  That seems to me

1    to be totally inadequate.

2            And also inadequate and illegal is, "If the Bureau

3    of Land Management does not require insurance as part of its

4    permitting process."  So if it does, of course, if Bureau of

5    Land Management -- you can bet they are going to require an

6    insured provision naming the BLM.  Do you think for a moment

7    the BLM will require an additional insured provision insuring

8    Pershing County?  Who advised the commission to adopt that

9    one?

10            "In the event that the BLM permit requires

11        Black Rock City to obtain and maintain insurance that

12        the Pershing County shall be named as an additional

13        insured on the insurance policy required by BLM and

14        BRC shall comply with Section 7(E) above."

15            And so if the BLM says, yeah, a million bucks is

16    okay, or 500,000 is okay, and now you have 1983 actions that

17    resulted -- what was the judgment to the gentleman that we

18    heard last year, unreasonable use of force, ended up with

19    permanent back injury?  Three million?  By the time we added

20    interest, it was five million, and we still had attorneys

21    fees, another million, six million bucks.

22            Who advised the county to allow this provision to

23    exist?

24            "If Black Rock is aggrieved by the decision of the

25    Board of Pershing County" -- let's see.  This has to do with

76

1    disputes under the payment of the bill.

2              "If Black Rock disputes the bill," which suggests

3    very strongly, as evidenced elsewhere, that there are grounds

4    for disputing the bill, namely, for example, that your payment

5    to the sheriff for his time out here cannot include an

6    appropriate hourly allocation for his payment.  That's just an

7    example.  Then, of course, it provides that they'll dispute

8    the bill in front of the county commission, there's time

9    periods.

10              "If Black Rock is aggrieved by the decision

11         of the Board of County Commissioners, Black Rock City

12         shall file a petition for judicial review in the

13         district court."

14         What district court is that, the federal district

15    court or the state district court which normally would have

16    the ability to review?  Can anybody tell me the interpretation

17    of that?

18              MR. KOLVET:  I wasn't involved in the

19    negotiations, so I would assume that it would be the state

20    district court in that case.

21              THE COURT:  I would hope so, but it's not very

22    clear.

23              "Paragraph 12.  The parties may enter into

24         separate contracts that will provide for payment of

25         anticipated impacts that the county will experience

77

1          as a result of the Burning Man event."

2               I should hope so.

3                    "The parties may enter into separate

4          contracts that will provide for payment for

5          anticipated impacts."

6               And so what if they say your potential charge for a

7     hundred grand to run a sewer line out there isn't reasonable,

8     so you can't, nor are we obligated to, enter into a contract

9     with you for that service.

10                   "Paragraph 16.  Unless otherwise provided

11         herein, this agreement may be rescinded or amended

12         only by mutual written agreement of the parties to

13         this agreement.  For the duration of this agreement,"

14         aside, 50 years, "no future Pershing County Board of

15         Commissioners may adopt an ordinance requiring, or in

16         any other way require, A, the application of the

17         provisions of that special permit ordinance to the

18         Burning Man event, Black Rock City, or any other

19         person or organization who permits, maintains,

20         promotes, conducts, advertises, operates, undertakes,

21         organizes, manages, or sells or gives away tickets to

22         the Burning Man event, or, B, any changes to the

23         terms of this agreement."

24              Fifty years.  I wonder what attorney advised the

25     county commission that the new state statute authorized them

1  to bind future county commissions, bind future sheriff's

2  offices, for 50 years.

3          Let's finish up now by concluding the objectionable

4  clauses in the settlement agreement.

5          Paragraph 5.3,

6          "In consideration of the payment and other

7      promises contained herein, BRC fully releases and

8      discharges the county, its present and former

9      officers, employees and agents, from any and all

10     claims, demands and causes of action against any of

11     them arising out of, or related to, the federal case.

12     This release does not extend to Judge Richard Wagner,

13     and shall not be construed to bar any ethics or

14     disciplinary complaints," that's appropriate, "or

15     other proceedings," including lawsuits, of course,

16     "that BRC may choose to pursue against Wagner."

17          If I were a lawyer on their side, I'd be asking my

18  law clerk to prepare a memo.  Isn't that a waiver of the

19  statute of limitations by the county?  That's absurd.

20          Governing law and venue, 6.1,

21          "This agreement shall be governed and

22     interpreted under the law as the exclusive venue

23     for" -- well, I already covered this one.

24          "The jurisdiction over all terms of this

25     agreement for the ten-year term of the law

1      enforcement services agreed to be supplied here" --

2  and, of course, there's nowhere in here where we saw a

3  ten-year term.  The only thing we saw is a block based upon

4  cost of living and presumably with the incorporation of the

5  other exemption agreement for a 50-year term.

6           "In the event that any action concerning this

7      agreement lacks subject matter jurisdiction in such

8      court, it must proceed in the Nevada state courts.

9      The parties agree that Judge Richard Wagner" --

10          And I add parenthetically, a validly -- is

11      he still a judge?

12          MR. KOLVET:  Yes, your Honor.

13          THE COURT:  Okay.  And he hasn't had a petition

14  filed against him to remove him, or to remove him from this

15  case.

16          MR. KOLVET:  There has never been any of that,

17  your Honor.

18          THE COURT:  Not that you're aware of, okay.  So

19  a validly-elected judge.

20      In the event that any action concerning this

21  agreement lacks such jurisdiction in my court and must proceed

22  in Nevada state courts, the parties agree that Judge Richard

23  Wagner shall be preempted therefrom.

24          Does the county commission have any, any -- under

25  state law any right to agree that a particular judge elected

1    under state law will be preempted from one of its actions,

2    especially an action he already sat on?

3                MR. KOLVET:  Not on that action, your Honor.

4                THE COURT:  Yeah.

5                MR. KOLVET:  But on future ones, they can agree

6    not to use him.

7                THE COURT:  No, they can't.  They have the right

8    under state statute, whatever right they have, to file a

9    preemption certificate, that's true.

10               MR. KOLVET:  That is correct.

11               THE COURT:  I grant you that.

12          You don't have the right to preempt him generally.

13          So let's say, for example, that they had exercised

14   preemption on another judge that was selected already.  Now

15   the wheel rolls and it's Judge Wagner.  This agreement doesn't

16   say anything about exercising the preemption right under state

17   law or county rule.  It says the parties agree that Judge

18   Wagner will be preempted therefrom.

19               MR. KOLVET:  I agree that's what the language

20   said.  The intent behind the language was to invoke state law

21   and preemption issues.

22               THE COURT:  I fully accept that you had a

23   wonderful intent, a fuzzy, wonderful, feel-good intent.

24               "In addition, the undersigned persons agree

25        in their official and individual capacities that they

81

1          shall not file or prosecute any lawsuit, petition or

2          other proceeding, arising under or connected to this

3          agreement, including Exhibit A, before Judge Wagner."

4               It's not going to be in any settlement agreement, I

5     can tell you that.

6               "Enforcement.  The parties agree that any

7          action to enforce this agreement is properly the

8          subject of a claim for specific performance and/or

9          injunctive relief."  That's what this original action

10         is all about.  "In any action to enforce this

11         agreement, including without limitation an action

12         regarding any termination of this agreement, the

13         prevailing party shall recover its reasonable

14         attorneys fees and costs including any fees of expert

15         witnesses."

16              So if the prevailing party -- and we know how the

17    Ninth Circuit interprets prevailing party now-days.  In 1983,

18    1988 authorized attorney fee transfer provisions, if you get

19    one little thing, you get prevailing party fees, don't you?

20              In a 1988 action, or a further 1983 action based

21    upon violation of the First Amendment or enforcement of this

22    one, the Ninth Circuit says if you get one little thing like

23    an injunction, hey, county, you've violated that one

24    provision, you get prevailing attorneys fees.

25              That's fine.  That's a subject matter of appropriate

1    agreement.  But also fees of expert witnesses.  So now, if

2    they want to put on a witness who they insist should get on

3    the stand and tell me what's a violation of the First

4    Amendment or not, is the county committing to pay for that

5    witness even though it's not permissible or allowable under

6    the costs that I would normally give?  Nor would they even be

7    allowed to testify.

8            Okay.  Those are the problems with what I found in

9    the agreement.  Now, obviously you don't like what I've been

10   saying, and, of course, I will file a complaint against all of

11   you.  You certainly are entitled to file a complaint against

12   me, not based on the merits, of course, or the decisions that

13   I'm rendering, that's a matter for appeal.

14           But the bottom line is I'm going to change my order

15   of dismissal getting rid of practically all, if not all, of

16   the face challenges on First Amendment grounds.

17           I will also review and rule on the one motion for

18   summary judgment that I do have in the record to see if these

19   claims survive that motion, and I will -- if I have to

20   preserve for trial an as-applied challenge because there are

21   material questions of fact.  You already have a scheduled

22   trial date.

23           Madam Clerk, when is that trial date?

24               THE CLERK:  Just a moment, Judge.

25               THE COURT:  While she's getting that, it's

1    already set, I think in February.

2                    THE CLERK:  The calendar --

3                    THE COURT:  Unless you tell me otherwise, I

4    don't know that we're going to be having a --

5                    THE CLERK:  February 3rd, 2014, is the calendar

6    call, and jury is February 11th, 2014.

7                    THE COURT:  Very good.  I'm planning on that.

8    I'm not planning on a jury trial.  I think the primary relief

9    requested here, or the only relief that will be allowed will

10    be injunctive relief which is a trial to the Court, so I'm

11    going to be the fact finder.

12            The only one that would be -- if there was a claim

13    for violation or breach of contract, that would be a jury

14    question, of course, but I don't think that cause of action is

15    going to survive here, nor can you seek a damage amount

16    against the county or against the individual commissioners in

17    their official capacity, nor do I think that there will be an

18    ability to survive summary judgment on proof of any causal

19    nexus to any claimed damage because of the county's alleged

20    attempts to inhibit protected speech.  Number one, I don't

21    think the county has been successful in doing that.

22            And I will make sure that the dismissal order

23    strikes the exemption agreement as based upon a

24    misinterpretation of the state statute and a fraud upon the

25    Court.  That's what I'll do.

1          Now, I'll let you briefly, please, enter your

2     objections to preserve your appeal.

3               MS. HURST:  Your Honor, the summary judgment

4     motion that was filed was withdrawn upon reaching the

5     settlement agreement which called for a stipulation of

6     dismissal.  It was never formally withdrawn because we filed

7     the settlement agreement.

8               Black Rock City would like to stand on the

9     settlement agreement, and since the Court has denied --

10    obviously denied the motion to retain jurisdiction under

11    41(a)(2) --

12              THE COURT:  That's not what I did, but that's

13    okay.

14              MS. HURST:  -- the stipulation for dismissal

15    becomes -- under 41(a)(1)(A)(2) becomes effective, and the

16    Court is without jurisdiction to act any further in this

17    matter.

18              THE COURT:  Further objections?

19              MS. HURST:  Your Honor, I request that the Court

20    stay the remaining proceedings that it has indicated it will

21    enter into --

22              THE COURT:  File a written motion, please.

23              MS. HURST:  -- in order that we address this to

24    the Ninth Circuit.  I also request that --

25              THE COURT:  File a written motion, please.

1          MS. HURST:  Thank you, your Honor.

2          I also request that if the Court is going to *sua*

3  *sponte* reconsider its orders and set down for hearing the

4  various other matters that it's described, that appropriate

5  briefing schedules be provided that will allow Black Rock City

6  to respond to them.

7          THE COURT:  If you believe that any appropriate

8  briefing is required, or that a schedule would be appropriate,

9  I'll ask you please to suggest it after consultation with

10 counsel.

11         MS. HURST:  Your Honor, may I have the Court's

12 oral ruling on the motion for stay pending taking this matter

13 to the Ninth Circuit?

14         THE COURT:  No.  I requested that you file a

15 motion, nor have I made an oral ruling here.  I will make a

16 ruling in writing.

17         MS. HURST:  Your Honor, I don't believe there is

18 time for us, given the holidays, to present that motion on the

19 normal schedule under the district before the Court would be

20 required to act on the pending summary judgment motion and the

21 trial date coming in early February.

22         THE COURT:  You don't believe what?

23         MS. HURST:  I don't believe, given the normal

24 notice motion schedule under the district's rule and the

25 upcoming holidays --

1               THE COURT:  I'll shorten time.

2               MS. HURST:  -- there would be time to do that.

3               THE COURT:  You're wrong.  I'll shorten time.

4     You can certainly file a motion for an emergency stay.

5               MS. HURST:  Is the Court ruling on the motion to

6     dismiss?

7               THE COURT:  Am I ruling right now?

8               MS. HURST:  On the motion to dismiss that was

9     presented.

10              THE COURT:  No.  Whatever rulings you get will

11    be in a written order.  I'm not going to play that game with

12    you.

13              MS. HURST:  So the Court has made no rulings

14    today; is that correct?

15              THE COURT:  That's correct.  I've given my

16    reasons, you'll see them in the written order, and so that you

17    could hear my criticisms directly.

18             The bottom line is you folks ignored my prior order,

19    and you committed malpractice in misinterpreting the state

20    statute, and the primary complaint that I have is you

21    attempted to do it over my signature, which, of course, we

22    would hear in the next election campaign literature of the

23    county commissioner who signed it, I signed it because the

24    federal judge said I had to.

25              MS. HURST:  Your Honor, the parties to this

1  matter have had disputes for a very long time.

2              THE COURT:  Apparently.

3              MS. HURST:  And it was quite difficult to

4  negotiate a final settlement which we were finally able to

5  reach, not because anybody was brandishing a federal court

6  order, but because the Nevada legislature acted, and because

7  all parties could see that it was in their mutual --

8              THE COURT:  I appreciate your excuse, ma'am --

9              MS. HURST:  -- best interest.

10             THE COURT:  -- and I appreciate the sincerity of

11 your statement.  But what makes you think you can waltz across

12 the state line and approach a federal court and ask it to bar

13 the county from enforcing normal laws and rights?

14             You read the agreements, the settlement agreements

15 that you reached.  You read your own complaint.  What makes

16 you think that on the basis of a First Amendment violation

17 complaint you can enter into an agreement with this county

18 that they will not enforce child abuse laws?

19             MS. HURST:  There is no such provision in these

20 agreements, no such provision in any of these agreements, and,

21 to the contrary --

22             THE COURT:  Yeah, explain that to the Ninth

23 Circuit, ma'am.

24             MS. HURST:  To the contrary, your Honor, section

25 1.9 makes clear that the sheriff's office remains responsible

1  for the enforcement of state law.  There is nothing in this

2  agreement that causes the sheriff or the county to abdicate

3  their law enforcement responsibility.

4         THE COURT:  I hope you're not the attorney who

5  stands in front of me in the future asking me to enforce the

6  settlement agreement who will of necessity, of course,

7  complain that the county ignored their obligation to act under

8  an integrated command and with BRC's input.

9         Any other objections?

10         Court will be in recess.

11              (A recess was taken.)

12         THE COURT:  We'll go back on the record in just

13  a moment.

14         I was looking for the provision that prohibited the

15  county, I think during the term of the agreement, I'm trying

16  to find it, from prohibiting the attendance of minors at the

17  event.  It's a little unfair to ask you folks to help me find

18  it.

19         There we go, 5.1 of the settlement of litigation.  I

20  just want the record to include that citation.

21              "County agrees that for the duration of this

22         agreement," which potentially is 50 years, if not

23         shorter, ten years, "it shall not attempt to

24         separately regulate any matters addressed by the BLM

25         permit, including without limitation the use of

89

1          alcohol and presence of children at the event."

2               That will complete the record.  Thank you.  Court

3     will be in recess.

4                              -o0o-

5

6               I certify that the foregoing is a correct
                transcript from the record of proceedings
7               in the above-entitled matter.

8               /s/Margaret E. Griener          12/26/2013
                Margaret E. Griener, CCR #3, RDR
9               Official Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## $

**$448,000** [1] - 9:4
**$450** [2] - 31:14, 31:17
**$500,000** - 66:9
**$600,000** [1] - 66:10

## '

**'allow** [2] - 23:6, 23:8
**'content** [1] - 28:7
**'content-based** [1] - 28:7
**'disorderly** [1] - 23:17
**'in** [2] - 19:21, 49:9
**'indecent** [1] - 22:14
**'it** [1] - 47:1
**'legislation** [1] - 47:22
**'lewd** [1] - 22:8
**'must** [1] - 28:11
**'no** [1] - 46:10
**'nuisance** [2] - 19:24, 20:8
**'nuisance'** [1] - 20:21
**'obscene** [1] - 21:22
**'obscenity'** [1] - 22:4
**'offensive'** [1] - 24:24
**'Permittee** [1] - 12:10
**'the** [1] - 24:14
**'vulgar'** [1] - 22:8

## /

**/s/Margaret** [1] - 89:8

## 1

**1** [1] - 27:14
**1.1** [1] - 57:10
**1.9** [2] - 59:11, 87:25
**10** [2] - 10:22, 67:15
**10:32** [1] - 2:1
**11th** [1] - 83:6
**12** [3] - 16:20, 19:12, 76:23
**12/26/2013** [1] - 89:8
**14** [1] - 64:22
**14-day** [1] - 72:17
**15** [1] - 61:4
**15th** [1] - 54:18
**16** [1] - 77:10
**18** [1] - 8:9
**1983** [6] - 74:8, 74:9, 74:21, 75:16, 81:17, 81:20
**1988** [2] - 81:18, 81:20
**1st** [1] - 55:13

## 2

**2.1** [1] - 61:22
**2005** [6] - 46:6, 49:22, 50:20, 54:15, 54:21, 55:8
**2011** [12] - 11:16, 12:8, 12:14, 12:21, 46:6, 49:22, 50:20, 54:9, 54:16, 54:21, 55:8
**2012** [2] - 8:13, 54:18
**2013** [6] - 1:6, 2:1, 6:23, 8:18, 55:12, 55:13
**2014** [3] - 66:24, 83:5, 83:6
**2063** [3] - 67:23, 70:21, 72:23
**244.354** [1] - 55:15
**244.3548(3)-(7** [1] - 8:22
**25** [2] - 1:6, 2:1
**26** [1] - 6:23
**27** [1] - 55:12

## 3

**3** [2] - 1:22, 89:8
**3.2** [1] - 63:6
**3.3** [1] - 64:1
**3.5** [1] - 64:21
**30** [2] - 63:7, 63:9
**3548** [1] - 55:15
**374** [1] - 55:14
**375,000** [1] - 66:7
**3:12-CV-435-RCJ-VPC** [1] - 1:5
**3rd** [1] - 83:5

## 4

**4.3** [1] - 66:19
**400** [1] - 1:23
**400,000** [1] - 66:8
**41(a)(1)(A)(2** [1] - 84:15
**41(a)(1)(A)(2)** [1] - 26:23
**41(a)(2** [1] - 84:11
**45** [1] - 67:20
**4th** [1] - 6:22

## 5

**5.1** [1] - 88:19
**5.15.140(e** [1] - 16:4
**5.16** [2] - 61:22, 71:1
**5.3** [1] - 78:5
**50** [14] - 13:22, 56:7, 67:2, 67:10, 67:12,

67:15, 67:23, 72:23, 73:5, 73:6, 73:13, 77:14, 78:2, 88:22
**50-year** [3] - 56:7, 56:24, 79:5
**500,000** [1] - 75:16
**516.010** [1] - 73:1

## 6

**6** [1] - 12:9
**6.1** [3] - 69:2, 69:4, 78:20
**60** [1] - 6:23
**60,000** [2] - 66:7

## 7

**7** [2] - 8:9, 8:19
**7(E** [1] - 75:14
**70,000** [2] - 66:8
**775)329-9980** [1] - 1:24

## 8

**8** [1] - 72:17
**8(a)** [1] - 28:22
**80** [2] - 66:9, 74:7
**80,000** [1] - 66:8
**89501** [1] - 1:23

## 9

**9** [1] - 10:15
**90,000** [2] - 66:9

## A

**A.M** [1] - 2:1
**A.P** [1] - 44:23
**AAR** [1] - 57:10
**AB3** [1] - 55:22
**AB374** [2] - 55:14, 55:24
**abdicate** [1] - 88:2
**ability** [6] - 17:11, 37:9, 38:4, 49:8, 76:16, 83:18
**able** [5] - 7:18, 12:5, 42:24, 60:1, 87:4
**above-entitled** [1] - 89:7
**abridging** [1] - 14:6
**abrogate** [5] - 5:20, 6:2, 13:21, 17:23, 24:11
**abrogated** [1] - 48:3
**abrogates** [4] - 10:6, 24:2, 46:13, 47:13

**abrogating** [1] - 47:19
**abrogation** [1] - 17:25
**absent** [1] - 23:20
**absolute** [2] - 33:20, 33:23
**absolutely** [1] - 5:19
**absurd** [6] - 2:25, 10:11, 13:19, 13:23, 19:2, 78:19
**abuse** [5] - 5:10, 25:21, 48:2, 48:4, 87:18
**accept** [1] - 80:22
**accepted** [1] - 17:23
**accidently** [1] - 42:4
**accordingly** [1] - 10:20
**accused** [2] - 31:23, 61:15
**Act** [4] - 13:18, 18:18, 24:6, 24:7
**act** [6] - 28:10, 30:5, 40:24, 84:16, 85:20, 88:7
**acted** [1] - 87:6
**acting** [1] - 33:21
**Action** [4] - 57:10, 57:20, 64:23, 64:24
**action** [28] - 14:1, 14:8, 23:5, 27:7, 29:10, 29:14, 34:13, 35:21, 36:8, 43:24, 46:4, 49:21, 52:20, 53:1, 55:10, 62:3, 78:10, 79:6, 79:20, 80:2, 80:3, 81:7, 81:9, 81:10, 81:11, 81:20, 83:14
**actions** [5] - 34:4, 59:25, 74:21, 75:16, 80:1
**activities** [1] - 64:5
**activity** [1] - 24:9
**acts** [2] - 17:4, 17:10
**actual** [4] - 11:24, 13:14, 45:3, 57:15
**Adam** [1] - 2:13
**ADAM** [1] - 1:14
**add** [2] - 36:12, 79:10
**added** [2] - 49:14, 75:19
**addition** [2] - 4:11, 80:24
**additional** [4] - 50:2, 74:14, 75:7, 75:12
**address** [2] - 26:25, 51:5, 51:8, 65:14, 84:23
**addressed** [2] - 29:10, 88:24

**addressing** [1] - 27:24
**adhere** [1] - 49:10
**adjacent** [1] - 20:25
**adjudicate** [1] - 44:15
**adjusted** [1] - 66:25
**adjusting** [2] - 47:22, 66:23
**admit** [1] - 74:21
**admonition** [1] - 8:4
**adopt** [3] - 65:17, 75:8, 77:15
**adopted** [1] - 40:12
**adoption** [1] - 48:1
**adults** [2] - 21:9
**advertises** [1] - 77:20
**advice** [3] - 4:2, 13:3, 56:9
**advise** [2] - 67:14, 67:15
**advised** [6] - 67:3, 67:8, 75:8, 75:22, 77:24
**advising** [1] - 21:13
**affect** [2] - 33:1, 68:10
**affected** [1] - 51:2
**affects** [1] - 32:19
**agency** [7] - 55:21, 60:6, 60:13, 65:13, 71:11, 71:14
**agent** [1] - 16:6
**agents** [1] - 78:9
**aggrieved** [2] - 75:24, 76:10
**ago** [1] - 39:22
**agree** [21] - 16:17, 29:9, 36:5, 55:18, 60:12, 62:11, 66:3, 69:2, 69:5, 69:16, 71:5, 72:6, 79:9, 79:22, 79:25, 80:5, 80:17, 80:19, 80:24, 81:6
**agreed** [10] - 13:22, 30:19, 35:11, 35:20, 52:3, 66:1, 69:19, 69:25, 70:18, 79:1
**agreement** [144] - 4:17, 4:20, 4:23, 5:1, 5:4, 5:7, 5:9, 6:4, 6:14, 8:13, 9:12, 10:1, 10:6, 13:16, 17:12, 25:14, 25:24, 26:3, 26:5, 26:7, 30:20, 30:21, 30:25, 31:3, 31:12, 32:9, 32:16, 32:19, 33:1, 33:3, 33:5, 34:23, 35:10, 35:15, 40:22, 41:16, 42:4, 42:6, 42:16, 42:21, 46:15,

2

46:18, 46:23, 48:19, 50:1, 51:6, 51:8, 51:12, 51:13, 51:19, 51:20, 51:25, 52:2, 52:5, 52:10, 52:13, 54:5, 54:7, 56:1, 56:3, 56:6, 56:21, 57:7, 57:8, 57:24, 58:21, 59:15, 61:14, 61:23, 62:4, 63:5, 65:17, 65:24, 65:25, 66:2, 66:17, 67:1, 67:2, 67:11, 67:12, 67:15, 67:22, 67:24, 68:1, 68:2, 68:7, 68:9, 68:11, 68:12, 68:13, 68:14, 68:15, 68:17, 68:19, 69:9, 69:13, 69:18, 69:23, 70:2, 70:7, 70:8, 70:9, 70:10, 70:16, 70:19, 70:22, 70:25, 71:20, 72:2, 72:15, 72:22, 72:24, 77:11, 77:12, 77:13, 77:23, 78:4, 78:21, 78:25, 79:5, 79:7, 79:21, 80:15, 81:3, 81:4, 81:7, 81:11, 81:12, 82:1, 82:9, 83:23, 84:5, 84:7, 84:9, 87:17, 88:2, 88:6, 88:15, 88:22

**agreements** [19] - 41:17, 46:6, 49:14, 49:16, 49:23, 50:3, 50:20, 54:16, 54:21, 54:22, 55:7, 55:8, 68:16, 68:18, 68:19, 87:14, 87:20

**agrees** [2] - 71:20, 88:21

**air** [1] - 71:23

**al** [1] - 1:7

**alcohol** [5] - 15:20, 25:4, 25:9, 25:21, 89:1

**allegation** [1] - 29:17

**allegations** [9] - 27:14, 27:23, 29:1, 29:2, 29:3, 29:9, 29:23, 30:12, 44:1

**allege** [1] - 27:25

**alleged** [10] - 10:5, 27:15, 27:25, 28:21, 28:22, 28:24, 44:25, 49:21, 50:25, 83:19

**allegedly** [1] - 33:4

**alleges** [4] - 13:6, 14:2, 14:4, 46:5

**allocated** [1] - 48:17

**allocation** [1] - 76:6

**allow** [6] - 39:23, 40:7, 60:6, 68:15, 75:22, 85:5

**allowable** [1] - 82:5

**allowed** [5] - 15:17, 15:20, 60:3, 82:7, 83:9

**allowing** [2] - 8:25, 19:2

**allows** [1] - 65:10

**alone** [2] - 13:18, 24:10

**Alonso** [1] - 2:13

**amend** [1] - 7:2

**amended** [4] - 9:6, 14:5, 51:14, 77:11

**amending** [3] - 8:4, 36:12, 47:6

**Amendment** [28] - 3:16, 5:13, 7:25, 13:25, 14:3, 14:16, 14:24, 15:6, 15:15, 15:22, 16:3, 18:7, 19:17, 20:2, 20:6, 20:12, 20:14, 20:18, 24:15, 25:7, 25:13, 27:8, 28:21, 29:19, 81:21, 82:4, 82:16, 87:16

**amendment** [3] - 7:3, 7:8, 18:21

**amount** [2] - 25:1, 56:25, 66:4, 74:16, 83:15

**amounts** [1] - 73:20

**analysis** [3] - 49:1, 49:17, 66:13

**anew** [1] - 34:15

**ANNETTE** [1] - 1:14

**Annette** [1] - 2:10

**annoyance** [1] - 24:19

**annual** [2] - 51:23, 71:10

**another's** [1] - 20:10

**anticipated** [2] - 76:25, 77:5

**anyway** [1] - 7:22

**apologize** [1] - 52:24

**appeal** [6] - 14:12, 14:14, 44:12, 44:13, 82:13, 84:2

**appealed** [1] - 11:9

**appear** [2] - 2:21, 34:1

**APPEARANCES** [1] - 1:13

**appearances** [1] - 2:8

**appeared** [1] - 2:20

**appearing** [1] - 44:19

**appellate** [2] - 26:25, 30:5

**applicable** [3] - 12:8, 12:12, 66:21

**applicant** [3] - 16:6, 19:20, 59:8

**applicants** [5] - 18:12, 19:14, 21:21, 23:6, 23:8

**application** [3] - 18:13, 20:18, 77:16

**applications** [3] - 14:18, 14:19, 22:23

**applied** [19] - 3:13, 3:15, 14:4, 14:11, 20:12, 20:18, 21:5, 21:7, 21:10, 21:14, 22:20, 23:15, 23:16, 27:8, 27:9, 27:10, 27:20, 27:21, 82:20

**applies** [2] - 7:15, 22:14, 45:1

**apply** [4] - 10:21, 16:14, 73:17, 73:21

**appreciate** [2] - 87:8, 87:10

**approach** [1] - 87:12

**appropriate** [10] - 31:9, 47:25, 67:8, 74:15, 76:6, 78:14, 81:25, 85:4, 85:7, 85:8

**approval** [2] - 2:7, 21:20, 27:2, 42:16, 53:3

**approve** [7] - 2:24, 10:12, 26:18, 42:14, 52:9, 52:13, 62:12

**approved** [2] - 10:10, 35:10, 53:9

**approving** [2] - 27:21, 52:17

**April** [1] - 6:23

**area** [3] - 17:18, 46:2, 60:19

**Area** [5] - 51:24, 58:20, 72:4, 72:10, 72:16

**areas** [3] - 21:1, 56:5, 60:3

**arguably** [1] - 63:4

**arguing** [2] - 27:9, 27:10

**argument** [3] - 53:16, 53:19, 63:5

**arguments** [1] - 53:12

**arises** [1] - 24:18

**arising** [3] - 69:13, 78:11, 81:2

**Armstrong** [2] - 2:18

**arrange** [1] - 63:23

**arrangement** [1] - 62:12

**arrest** [5] - 9:19, 40:25, 58:12, 60:1, 74:7

**arrested** [1] - 58:7

**arrests** [2] - 50:7, 57:14

**as-applied** [12] - 3:13, 14:11, 20:12, 20:18, 21:5, 21:7, 21:10, 21:14, 27:8, 27:20, 27:21, 82:20

**aside** [4] - 31:22, 31:24, 44:8, 77:14

**aspect** [1] - 53:5

**assemblies** [1] - 8:22

**assembly** [15] - 10:24, 23:9, 55:18, 55:20, 55:22, 71:5, 71:9, 71:10, 71:11, 72:2, 72:8, 73:22, 74:3, 74:18

**asserted** [1] - 45:24

**assigned** [1] - 32:1

**associated** [1] - 66:20

**assume** [6] - 9:11, 17:10, 30:23, 56:9, 66:11, 76:19

**assuming** [3] - 39:11, 44:25, 66:24

**assure** [1] - 10:2

**attached** [4] - 12:9, 12:21, 51:20, 61:25

**attempt** [7] - 10:8, 10:19, 20:7, 21:19, 33:1, 42:23, 88:23

**attempted** [2] - 61:17, 86:21

**attempting** [1] - 3:5

**attempts** [1] - 83:20

**attendance** [1] - 88:16

**attendants** [1] - 57:14

**Attorney** [7] - 1:19, 36:23, 37:1, 54:10, 54:18, 58:1, 58:10

**attorney** [6] - 2:20, 67:7, 73:2, 77:24, 81:18, 88:4

**attorneys** [3] - 75:20, 81:14, 81:24

**Attorneys** [2] - 1:14, 1:16

**attribute** [1] - 49:11

**authorities** [4] - 11:7, 11:17, 20:24

**authority** [4] - 9:19, 24:21, 25:15, 39:2

**authorized** [8] - 2:21,

7:14, 67:4, 71:17, 71:18, 71:22, 77:25, 81:18

**automatically** [1] - 31:17

**available** [1] - 64:25

**average** [1] - 44:20

**aware** [8] - 17:11, 18:22, 18:24, 21:4, 32:20, 33:11, 39:8, 79:18

## B

**bad** [1] - 72:12

**bar** [3] - 34:25, 78:13, 87:12

**Bar** [1] - 31:14

**bargain** [3] - 49:8, 49:24, 50:12

**barred** [2] - 34:13, 64:15

**barrier** [2] - 47:8, 47:11

**bars** [2] - 61:9, 61:20

**base** [5] - 66:7, 66:19, 66:20, 66:24, 71:23

**based** [25] - 3:17, 3:24, 5:13, 11:13, 15:4, 16:11, 16:22, 20:8, 20:21, 28:7, 28:8, 28:9, 28:17, 28:20, 28:23, 29:5, 33:3, 50:19, 54:22, 55:11, 74:1, 79:3, 81:20, 82:12, 83:23

**basic** [1] - 40:17

**basis** [9] - 10:9, 37:14, 37:17, 39:7, 46:23, 48:11, 87:16

**baton** [1] - 17:22

**beautiful** [1] - 60:25

**becomes** [3] - 65:1, 84:15

**BEFORE** [1] - 1:2

**beginning** [1] - 54:9

**begins** [1] - 8:9

**behalf** [6] - 2:11, 2:13, 2:16, 2:19, 2:21, 9:19

**behind** [1] - 80:20

**beholder** [1] - 37:24

**believes** [1] - 8:16

**belongs** [1] - 44:4

**below** [2] - 8:11, 30:1

**BELSKY** [1] - 1:14, 2:12

**Belsky** [1] - 2:13

**Belsy** [1] - 2:13

**bench** [2] - 33:23,

3

34:5
**benefit** [2] - 49:24, 50:12
**best** [2] - 38:3, 87:9
**bet** [1] - 75:5
**better** [1] - 41:23
**between** [8] - 4:4, 11:13, 47:4, 54:7, 60:24, 63:14, 66:11, 69:12
**beyond** [2] - 56:1, 56:15
**bias** [2] - 29:19, 45:4
**biased** [1] - 44:21
**big** [1] - 65:24
**bill** [5] - 55:14, 76:1, 76:2, 76:4, 76:8
**bind** [7] - 57:25, 67:9, 73:5, 73:7, 73:12, 78:1
**binding** [1] - 67:2
**binds** [1] - 4:24
**Black** [34] - 1:4, 2:5, 2:11, 2:14, 4:4, 18:12, 18:16, 20:24, 51:23, 53:24, 54:7, 58:2, 58:8, 58:20, 58:23, 59:24, 61:23, 70:25, 72:3, 72:4, 72:8, 72:9, 72:16, 73:21, 74:11, 75:11, 75:24, 76:2, 76:10, 76:11, 77:18, 84:8, 85:5
**BLM** [61] - 8:18, 9:9, 9:10, 9:13, 9:16, 9:20, 10:25, 11:2, 11:5, 11:6, 11:8, 11:16, 11:18, 12:2, 12:6, 12:8, 12:14, 12:21, 13:6, 13:7, 13:9, 13:11, 13:13, 17:22, 18:11, 19:9, 40:3, 46:21, 48:9, 58:16, 58:17, 58:18, 58:22, 59:2, 59:7, 59:8, 59:12, 59:16, 59:22, 59:24, 59:25, 60:5, 60:8, 60:16, 60:25, 62:9, 62:14, 62:16, 62:18, 62:22, 62:24, 65:21, 71:20, 71:22, 75:6, 75:7, 75:10, 75:13, 75:15, 88:24
**BLM's** [1] - 65:18
**block** [4] - 66:1, 66:6, 66:16, 79:3
**BOARD** [1] - 1:7
**board** [2] - 55:17, 56:1

**Board** [6] - 2:5, 71:4, 71:25, 75:25, 76:11, 77:14
**bodily** [1] - 73:24
**bold** [2] - 20:4, 30:8
**boss** [1] - 47:16
**bottom** [3] - 61:7, 82:14, 86:18
**bound** [2] - 56:6, 74:6
**brandishing** [1] - 87:5
**BRC** [24] - 35:1, 54:24, 54:25, 57:12, 58:18, 61:1, 61:16, 62:10, 62:12, 62:19, 62:25, 63:10, 63:15, 63:22, 63:24, 64:4, 64:9, 64:13, 65:5, 65:21, 75:14, 78:7, 78:16
**BRC's** [1] - 88:8
**breach** [4] - 23:19, 46:1, 50:16, 83:13
**breached** [1] - 46:7
**BRENT** [1] - 1:19
**Brent** [1] - 2:18
**bribe** [1] - 48:11
**brief** [1] - 30:7
**briefing** [2] - 85:5, 85:8
**briefly** [2] - 7:5, 84:1
**bring** [5] - 33:14, 34:7, 34:15, 35:1, 37:9
**bringing** [1] - 5:6
**brings** [1] - 27:8
**broader** [1] - 22:13
**broadly** [3] - 4:8, 22:14
**brought** [2] - 33:7, 60:3
**bucks** [2] - 75:15, 75:21
**built** [1] - 18:8
**burden** [5] - 17:22, 28:3, 29:5, 49:25, 50:2
**Bureau** [8] - 58:17, 72:5, 72:10, 72:13, 73:15, 73:19, 75:2, 75:4
**Burning** [13] - 38:16, 51:23, 54:14, 57:14, 58:19, 72:3, 72:7, 72:15, 72:18, 72:24, 77:1, 77:18, 77:22

## C

**calendar** [2] - 83:2, 83:5
**California** [2] - 1:15, 22:6

**campaign** [2] - 44:18, 86:22
**cannot** [10] - 5:5, 14:20, 19:2, 24:25, 40:24, 40:25, 50:21, 57:24, 76:5
**capable** [1] - 67:20
**capacities** [1] - 80:25
**capacity** [1] - 83:17
**Caperton** [1] - 44:23
**capital** [2] - 59:21, 59:22
**care** [1] - 58:25
**careful** [1] - 6:19
**carried** [1] - 39:1
**carry** [2] - 19:20, 64:20
**carrying** [1] - 58:6
**carve** [7] - 34:11, 34:22, 35:18, 35:19, 35:24, 36:2, 36:3
**case** [30] - 3:4, 3:16, 3:23, 11:15, 12:3, 14:10, 24:20, 27:22, 32:12, 32:23, 33:6, 36:14, 38:5, 40:14, 44:24, 45:2, 45:12, 48:23, 49:5, 49:12, 49:19, 53:1, 53:3, 59:4, 61:12, 66:16, 71:20, 76:20, 78:11, 79:15
**cases** [4] - 3:11, 30:4, 74:8
**category** [1] - 64:14
**causal** [1] - 83:18
**caused** [1] - 45:6
**causes** [3] - 14:1, 78:10, 88:2
**cautions** [1] - 3:13
**CCR** [2] - 1:22, 89:8
**certain** [6] - 14:23, 16:1, 28:19, 31:1, 40:8, 61:23
**certainly** [7] - 6:8, 17:19, 35:9, 56:17, 56:24, 82:11, 86:4
**certificate** [2] - 65:18, 80:9
**certification** [1] - 11:10
**certify** [2] - 14:13, 89:6
**certiorari** [1] - 54:19
**cetera** [1] - 9:5
**chair** [1] - 67:7
**challenge** [16] - 21:5, 21:7, 21:10, 21:14, 21:24, 22:17, 22:18, 23:12, 23:25, 24:12,

24:25, 27:8, 27:20, 27:21, 45:13, 82:20
**challengeable** [1] - 3:15
**challenges** [6] - 3:11, 3:13, 14:11, 24:16, 32:21, 82:16
**challenging** [1] - 53:7
**chance** [1] - 31:14
**change** [9] - 22:1, 24:3, 28:14, 46:2, 46:9, 63:21, 63:22, 65:17, 82:14
**changed** [2] - 40:3, 40:6
**changes** [2] - 48:18, 77:22
**Chapter** [1] - 61:22
**character** [1] - 47:24
**charge** [10] - 46:20, 48:5, 48:10, 48:15, 50:1, 50:13, 51:5, 60:21, 66:4, 77:6
**charged** [3] - 8:15, 27:10, 57:21
**charging** [1] - 50:8
**CHIEF** [1] - 1:2
**child** [9] - 5:10, 13:19, 25:21, 48:2, 48:4, 57:2, 63:4, 87:18
**children** [11] - 5:6, 15:8, 15:9, 16:8, 18:23, 22:11, 23:2, 40:20, 59:1, 64:15, 89:1
**choose** [1] - 78:16
**chose** [1] - 31:16
**Circuit** [10] - 11:11, 14:14, 15:12, 15:17, 45:17, 81:17, 81:22, 84:24, 85:13, 87:23
**circumstances** [2] - 14:16, 40:8
**citation** [4] - 26:24, 27:1, 30:3, 88:20
**citations** [1] - 57:13
**cite** [1] - 65:8
**cited** [4] - 30:2, 30:8, 44:22, 57:5
**citing** [4] - 16:4, 24:20, 45:11, 49:12
**citizens** [1] - 34:1
**City** [10] - 1:4, 2:5, 2:11, 2:14, 61:24, 75:11, 76:11, 77:18, 84:8, 85:5
**City's** [1] - 53:25
**claim** [14] - 7:16, 26:20, 27:13, 29:8, 29:22, 30:11, 34:18,

24:20, 35:7, 45:22, 45:24, 54:22, 81:8, 83:12
**claimed** [2] - 29:11, 83:19
**claims** [9] - 3:10, 13:25, 46:8, 50:17, 73:25, 74:5, 74:9, 78:10, 82:19
**class** [2] - 52:19, 53:1
**clause** [7] - 46:1, 46:5, 57:17, 64:17, 66:13, 71:13, 73:19
**Clause** [20] - 11:25, 13:15, 29:19, 44:16, 44:17, 45:1, 46:24, 47:2, 47:5, 47:8, 47:11, 47:21, 48:19, 49:10, 49:19, 50:10, 50:15, 50:16, 50:24, 51:1
**Clauses** [2] - 50:21, 50:24
**clauses** [5] - 5:7, 78:4
**clear** [11] - 11:11, 15:23, 16:25, 17:1, 21:2, 23:3, 24:17, 29:5, 41:6, 76:22, 87:25
**clearer** [1] - 20:3
**clearly** [5] - 10:5, 10:19, 25:19, 57:3, 73:6
**clerical** [1] - 42:1
**clerk** [1] - 78:18
**Clerk** [1] - 82:23
**CLERK** [3] - 82:24, 83:2, 83:5
**client** [1] - 4:7
**clients** [1] - 61:10
**clue** [3] - 23:22, 24:1, 24:13
**Coal** [1] - 44:23
**Code** [4] - 16:4, 61:22, 71:1, 73:1
**code** [1] - 17:10
**coinciding** [1] - 60:18
**collaboration** [1] - 45:3
**collusively** [1] - 29:12
**combination** [1] - 6:9
**coming** [1] - 85:21
**command** [20] - 59:12, 59:15, 59:19, 60:5, 60:8, 60:17, 62:9, 62:11, 62:13, 62:15, 62:19, 62:20, 62:22, 63:3, 65:19, 66:7, 66:16, 66:21, 88:8
**Command** [2] - 59:17,

4

59:21
**commenced** [1] - 45:8
**commend** [2] - 4:12, 4:13
**comment** [2] - 52:15, 52:22
**commercial** [2] - 73:23, 74:12
**commission** [15] - 7:2, 19:19, 34:1, 36:5, 43:5, 46:17, 47:18, 51:10, 55:4, 65:16, 73:3, 75:8, 76:8, 77:25, 79:24
**commissioner** [1] - 86:23
**COMMISSIONERS** [1] - 1:7
**Commissioners** [6] - 2:6, 54:10, 71:4, 72:1, 76:11, 77:15
**commissioners** [15] - 4:13, 5:25, 6:8, 6:9, 6:17, 7:17, 7:24, 8:5, 43:9, 54:24, 55:1, 55:17, 56:2, 57:9, 83:16
**commissions** [3] - 73:6, 73:8, 78:1
**commit** [1] - 37:21
**committed** [6] - 4:6, 6:7, 6:8, 6:10, 61:11, 86:19
**committing** [2] - 4:1, 82:4
**common** [4] - 19:25, 20:1, 20:5, 25:18
**Communications** [1] - 22:6
**community** [1] - 34:4
**compelling** [1] - 28:11
**compensation** [1] - 66:18
**complain** [2] - 20:23, 88:7
**complaining** [3] - 45:6, 58:9, 58:10
**complaint** [14] - 6:21, 8:5, 12:9, 12:22, 27:23, 29:2, 29:4, 35:1, 59:2, 82:10, 82:11, 86:20, 87:15, 87:17
**complaints** [3] - 36:1, 36:8, 78:14
**complete** [1] - 89:2
**compliance** [3] - 12:23, 13:20, 63:16
**complied** [1] - 13:10
**compliment** [1] -

63:18
**comply** [9] - 8:21, 9:22, 10:7, 12:7, 13:13, 24:3, 25:5, 53:8, 75:14
**complying** [1] - 57:1
**comprehensive** [3] - 51:17, 51:21, 54:6
**concern** [3] - 17:21, 19:2, 19:16
**concerned** [2] - 41:20, 41:24
**concerning** [4] - 47:9, 47:12, 79:6, 79:20
**concerns** [8] - 10:3, 10:4, 17:17, 19:7, 25:6, 25:12, 57:2, 65:13
**conclude** [1] - 30:1
**concluding** [2] - 27:1, 78:3
**conclusion** [3] - 13:1, 13:19, 61:19
**concur** [1] - 26:11
**Condition** [1] - 8:19
**condition** [4] - 11:17, 12:2, 12:9, 12:16
**conditioned** [1] - 12:22
**conditions** [4] - 13:10, 47:24, 73:17, 73:21
**conduct** [19] - 8:25, 11:19, 14:7, 16:7, 17:9, 19:16, 20:12, 20:22, 21:17, 21:22, 23:11, 23:19, 24:24, 25:6, 25:12, 47:17, 62:15, 62:19, 64:16
**conduct'** [1] - 23:17
**conducting** [1] - 19:14
**conducts** [1] - 77:20
**CONFERENCE** [1] - 1:11
**confidence** [2] - 3:21, 21:3
**confirm** [1] - 57:5
**confirming** [1] - 28:25
**conflict** [6] - 11:2, 11:5, 11:13, 11:24, 13:14, 68:3
**conflicts** [1] - 69:11
**confused** [2] - 35:14, 35:16
**congress** [1] - 10:17
**Congress** [2] - 10:23, 17:24
**Congress's** [2] - 11:3, 11:5
**connected** [2] - 69:13, 81:2

**connection** [1] - 57:15
**consensus** [1] - 64:8
**consent** [3] - 62:20, 62:23, 64:10
**consenting** [1] - 21:9
**Conservation** [5] - 51:24, 58:20, 72:4, 72:10, 72:16
**consider** [3] - 19:5, 19:6, 63:2
**consideration** [2] - 18:14, 78:6
**considered** [1] - 17:20
**consistent** [1] - 9:15
**consistently** [1] - 24:14
**conspiring** [1] - 35:6
**constituting** [1] - 8:23
**constitution** [3] - 5:16, 39:5, 39:9
**Constitution** [2] - 5:21, 48:20
**constitutional** [4] - 3:9, 16:13, 73:25, 74:5
**constitutionally** [4] - 4:9, 4:17, 16:17, 22:4
**constitutions** [2] - 16:24, 18:7
**construed** [2] - 34:25, 78:13
**consult** [1] - 25:17
**consultation** [1] - 85:9
**consulting** [1] - 55:1
**Consumer** [1] - 66:23
**consumption** [2] - 25:4, 25:9
**contain** [2] - 24:22, 71:12
**contained** [1] - 78:7
**contemplate** [2] - 40:22, 59:16
**contemplates** [1] - 66:5
**contemporaneously** [1] - 52:6
**content** [13] - 3:17, 5:13, 14:22, 15:4, 15:25, 16:11, 20:11, 28:8, 28:9, 28:17, 28:19, 28:20, 28:23
**content-based** [5] - 16:11, 28:8, 28:9, 28:17, 28:23
**contest** [1] - 55:2
**continue** [3] - 27:6, 31:2, 43:23
**continuing** [4] - 62:5, 69:17, 69:21, 70:15

**contract** [25] - 2:25, 4:4, 5:23, 9:17, 46:1, 46:5, 46:12, 46:25, 47:15, 47:18, 48:3, 48:8, 48:13, 48:24, 49:6, 49:7, 49:11, 50:12, 50:17, 59:3, 77:8, 83:13
**Contract** [10] - 47:2, 47:4, 47:7, 47:11, 49:10, 49:19, 50:10, 50:16, 50:24, 51:1
**contracted** [1] - 59:13
**contracted-for** [1] - 59:13
**contracting** [1] - 47:23
**contracts** [6] - 27:16, 46:7, 47:3, 47:14, 76:24, 77:4
**Contracts** [5] - 46:11, 46:24, 47:20, 48:19, 50:15
**contractual** [2] - 48:22, 49:4
**contrary** [2] - 87:21, 87:24
**contribution** [1] - 44:18
**control** [2] - 9:13, 59:19
**controlled** [1] - 9:2
**convey** [1] - 15:23
**convicted** [4] - 16:7, 18:10, 18:18
**conviction** [1] - 16:13
**cooperation** [2] - 11:17, 63:16
**cooperative** [1] - 60:24
**coordinate** [2] - 11:7, 12:13
**coordinated** [5] - 59:23, 60:9, 60:11, 62:23, 65:19
**coordination** [2] - 59:19, 63:14
**copies** [1] - 51:19
**copy** [2] - 41:7, 61:24
**coroner** [1] - 57:22
**coroner's** [1] - 68:11
**correct** [11] - 3:1, 3:19, 6:15, 24:13, 27:22, 33:24, 38:8, 80:10, 86:14, 86:15, 89:6
**correctly** [3] - 3:23, 7:10, 26:1
**cost** [3] - 51:3, 67:10, 79:4

**costs** [14] - 48:15, 48:16, 50:3, 50:4, 50:8, 50:14, 57:21, 65:4, 65:25, 66:13, 81:14, 82:6
**counsel** [17] - 3:22, 3:25, 4:14, 4:15, 6:1, 6:2, 6:9, 16:16, 17:11, 21:3, 21:18, 31:19, 36:20, 37:10, 55:2, 61:9, 85:10
**counties** [5] - 10:3, 12:18, 39:6, 39:7, 40:7
**COUNTY** [1] - 1:7
**county** [119] - 3:14, 3:18, 3:25, 4:2, 4:5, 4:20, 4:24, 5:2, 5:10, 5:13, 5:14, 5:17, 5:18, 5:19, 6:8, 6:17, 6:24, 7:2, 7:3, 7:11, 7:17, 7:24, 8:2, 8:5, 8:11, 8:15, 8:16, 10:1, 10:2, 10:5, 11:22, 13:17, 16:22, 17:5, 17:10, 17:11, 17:12, 17:16, 18:5, 19:8, 19:19, 21:13, 33:4, 34:19, 36:25, 38:16, 39:17, 39:25, 40:14, 40:18, 42:8, 42:9, 43:8, 46:14, 46:17, 47:15, 47:17, 48:18, 50:20, 50:21, 51:10, 54:23, 55:1, 55:4, 55:16, 55:17, 56:1, 56:6, 56:7, 56:8, 56:14, 56:21, 57:1, 57:8, 57:12, 57:21, 57:25, 58:14, 58:24, 61:16, 62:7, 62:11, 62:15, 62:17, 65:16, 65:23, 66:3, 67:3, 67:5, 67:8, 67:9, 71:21, 73:3, 73:6, 73:7, 73:12, 75:22, 76:8, 76:25, 77:25, 78:1, 78:8, 78:19, 79:24, 80:17, 81:23, 82:4, 83:16, 83:21, 86:23, 87:13, 87:17, 88:2, 88:7, 88:15, 88:21
**County** [28] - 2:5, 8:19, 9:3, 9:11, 11:20, 16:4, 17:6, 39:1, 39:23, 39:25, 51:22, 54:9, 54:11, 60:16, 61:22, 61:24, 71:1, 71:4, 71:25,

5

72:5, 73:1, 74:2, 74:13, 75:8, 75:12, 75:25, 76:11, 77:14
**county's** [3] - 11:1, 28:2, 83:19
**couple** [1] - 74:23
**course** [30] - 2:24, 7:12, 7:23, 7:25, 11:3, 11:10, 23:14, 36:10, 37:20, 49:14, 55:16, 55:23, 56:23, 58:16, 59:10, 62:23, 65:10, 66:6, 67:20, 74:5, 74:23, 75:4, 76:7, 78:15, 79:2, 82:10, 82:12, 83:14, 86:21, 88:6
**COURT** [127] - 1:1, 2:4, 2:23, 7:6, 7:8, 7:10, 25:25, 26:3, 26:9, 26:13, 26:15, 26:24, 28:6, 31:7, 31:19, 31:21, 32:4, 32:7, 32:14, 33:3, 33:12, 33:16, 33:19, 33:22, 33:25, 34:3, 34:7, 34:11, 34:22, 35:3, 35:5, 35:9, 35:16, 35:20, 35:24, 36:4, 36:10, 36:15, 36:18, 36:20, 36:22, 37:1, 37:5, 37:10, 37:12, 37:14, 37:17, 37:20, 38:1, 38:8, 38:12, 38:18, 38:24, 39:5, 39:10, 39:15, 39:21, 40:4, 40:9, 40:12, 41:2, 41:6, 41:12, 41:21, 42:5, 42:11, 42:14, 42:22, 43:2, 43:12, 43:16, 43:19, 43:22, 52:12, 52:14, 52:21, 52:25, 53:6, 53:11, 53:14, 53:17, 53:20, 53:22, 54:1, 54:4, 56:9, 56:11, 56:20, 67:13, 67:16, 67:19, 68:3, 68:6, 68:14, 69:4, 69:7, 70:4, 70:11, 70:14, 76:21, 79:13, 79:18, 80:4, 80:7, 80:11, 80:22, 82:25, 83:3, 83:7, 84:12, 84:18, 84:22, 84:25, 85:7, 85:14, 85:22, 86:1, 86:3, 86:7, 86:10, 86:15, 87:2, 87:8, 87:10, 87:22, 88:4, 88:12

**court** [51] - 2:4, 5:24, 6:7, 10:10, 16:13, 26:25, 30:10, 30:17, 31:1, 31:2, 31:8, 31:15, 32:11, 34:16, 34:17, 36:24, 42:16, 44:5, 44:6, 44:12, 45:5, 45:6, 45:7, 45:8, 45:13, 45:17, 45:20, 45:21, 48:23, 49:5, 50:6, 53:3, 53:7, 53:22, 54:20, 56:17, 57:4, 59:2, 61:13, 76:13, 76:14, 76:15, 76:20, 79:8, 79:21, 87:5, 87:12, 88:10, 89:2
**Court** [78] - 2:20, 13:3, 14:7, 14:11, 14:20, 15:11, 15:16, 21:24, 22:16, 23:11, 24:12, 24:14, 24:20, 24:25, 26:18, 26:21, 27:12, 28:25, 29:1, 29:6, 29:8, 29:22, 30:4, 30:11, 30:15, 30:18, 32:10, 41:24, 42:20, 43:2, 43:5, 43:11, 43:15, 43:24, 44:3, 44:6, 44:13, 44:14, 44:16, 44:24, 45:4, 45:12, 45:15, 45:16, 45:18, 45:20, 45:21, 46:8, 49:12, 49:18, 51:15, 52:1, 52:3, 52:9, 52:11, 52:24, 53:4, 56:17, 59:6, 61:6, 61:7, 61:18, 62:4, 63:1, 69:15, 69:17, 70:12, 70:16, 83:10, 83:25, 84:9, 84:16, 84:19, 85:2, 85:19, 86:5, 86:13
**Court's** [9] - 3:22, 3:24, 6:15, 6:20, 21:20, 27:4, 29:20, 61:11, 85:11
**court's** [1] - 51:11
**court-ordered** [1] - 2:4
**courthouse** [1] - 21:19
**courts** [6] - 30:5, 30:6, 45:14, 79:8, 79:22
**cover** [7] - 10:9, 17:19, 48:15, 60:23, 72:2, 73:23, 74:17
**covered** [1] - 78:23
**covers** [1] - 17:17
**crafted** [1] - 35:10

**crafting** [1] - 35:11
**create** [2] - 19:21, 23:10
**credit** [1] - 56:12
**crimes** [4] - 16:8, 16:13, 50:8
**criminal** [3] - 18:23, 57:3, 60:23
**critical** [1] - 28:15
**criticism** [1] - 24:15
**criticisms** [1] - 86:17
**current** [1] - 38:23

---

# D

**damage** [3] - 73:25, 83:15, 83:19
**damages** [3] - 7:17, 7:20, 73:24
**dancers** [1] - 17:9
**danger** [1] - 24:17
**dangerous** [1] - 25:11
**date** [5] - 36:12, 70:21, 82:22, 82:23, 85:21
**days** [7] - 63:7, 63:9, 64:3, 64:6, 64:17, 64:22, 81:17
**death** [1] - 73:24
**decide** [1] - 30:2
**decision** [3] - 4:11, 75:24, 76:10
**decisions** [2] - 50:6, 82:12
**declaratory** [3] - 7:23, 7:25, 8:6
**declare** [1] - 43:7
**declaring** [1] - 21:5
**declined** [1] - 55:2
**decree** [1] - 31:4
**defeat** [2] - 21:4, 27:25
**defend** [1] - 36:16
**defendant** [1] - 58:9
**Defendant** [1] - 29:12
**defendants** [12] - 2:19, 14:4, 20:20, 27:15, 29:13, 29:23, 30:12, 32:22, 44:1, 46:5, 46:7, 54:24
**Defendants** [1] - 1:8
**DEFENDANTS** [1] - 1:19
**defense** [1] - 6:1
**define** [1] - 19:24
**defines** [1] - 58:16
**definition** [1] - 19:23
**delete** [2] - 32:7, 59:2
**delighted** [1] - 57:16
**delinquency** [5] - 5:11, 13:18, 24:5,

60:2
**demands** [1] - 78:10
**denial** [2] - 43:7, 44:12
**denied** [3] - 6:21, 84:9, 84:10
**deny** [1] - 53:5
**department** [2] - 9:18, 74:10
**departments** [1] - 48:7
**deputy** [1] - 40:23
**described** [1] - 85:4
**describes** [1] - 11:14
**Desert** [1] - 20:25
**desert** [1] - 58:25
**detail** [3] - 3:7, 14:11, 38:21
**details** [1] - 63:25
**detention** [1] - 57:14
**determined** [4] - 10:16, 30:6, 60:24, 66:19
**determines** [1] - 58:1
**dictate** [1] - 49:16
**different** [7] - 48:23, 49:5, 68:2
**differentiates** [1] - 28:19
**difficult** [2] - 20:21, 87:3
**direct** [3] - 9:20, 24:20, 59:14
**directly** [5] - 16:12, 19:4, 28:15, 48:17, 86:17
**disagree** [5] - 34:9, 39:4, 40:11, 41:10, 41:11
**disapprove** [1] - 86:17
**discharges** [2] - 74:3, 78:8
**disciplinary** [2] - 35:1, 78:14
**disclose** [2] - 58:10, 63:10
**discretion** [3] - 40:7, 55:18, 71:4
**discuss** [2] - 63:10, 63:24
**discussed** [1] - 10:15
**disgusted** [1] - 61:5
**dismiss** [3] - 3:11, 14:8, 21:24, 22:16, 23:11, 24:12, 26:18, 26:19, 27:13, 27:20, 29:8, 41:17, 42:17, 42:18, 42:24, 42:25, 46:8, 86:6, 86:8
**dismissal** [15] - 3:2, 3:5, 6:21, 6:25, 26:22, 28:1, 36:13,

43:6, 43:7, 51:14, 52:4, 82:15, 83:22, 84:6, 84:14
**dismissed** [4] - 6:21, 7:2, 45:24, 55:10
**dismisses** [5] - 14:7, 29:22, 30:11, 43:24, 45:22
**disorderly** [2] - 8:25, 23:11
**displace** [1] - 32:11
**display** [4] - 5:15, 15:2, 21:8, 60:4
**displayed** [1] - 23:2
**dispute** [5] - 7:15, 13:4, 76:7
**disputes** [4] - 69:12, 76:1, 76:2, 87:1
**disputing** [1] - 76:4
**distinction** [2] - 21:11, 21:13
**DISTRICT** [3] - 1:1, 1:1, 1:2
**District** [10] - 45:4, 54:10, 54:11, 54:18, 57:25, 58:10, 61:7, 69:15, 69:17
**district** [11] - 9:13, 31:1, 31:2, 36:24, 45:8, 76:13, 76:14, 76:15, 76:20, 85:19
**district's** [1] - 85:24
**disturbance** [2] - 23:10, 24:24
**doctrine** [1] - 30:5
**Doctrine** [4] - 10:20, 30:3, 30:9, 49:15
**document** [1] - 6:23
**dollar** [1] - 74:25
**dollars** [3] - 74:19, 74:23
**done** [3] - 38:4, 38:5, 61:17
**door** [1] - 21:19
**doubt** [2] - 39:12, 56:17
**down** [7] - 30:1, 53:18, 53:20, 54:1, 54:4, 58:8, 85:3
**drafted** [1] - 63:18
**drawn** [2] - 22:10, 22:13
**drug** [1] - 25:20
**drugs** [2] - 18:15, 25:11
**duality** [1] - 30:3
**due** [5] - 29:10, 31:9, 32:15, 69:7, 70:14
**Due** [4] - 29:18, 44:15, 44:17, 45:1

6

**duly** [1] - 32:8
**duly-elected** [1] - 32:8
**duration** [2] - 77:13, 88:21
**duress** [1] - 8:11
**during** [6] - 55:4, 60:17, 72:14, 72:17, 74:23, 88:15
**duties** [8] - 6:2, 10:6, 24:11, 31:9, 32:11, 64:12, 64:19, 67:7
**duty** [9] - 5:20, 13:21, 17:24, 17:25, 24:5, 24:6, 46:13, 47:19, 48:3

## E

**early** [1] - 85:21
**economic** [4] - 49:14, 49:24, 50:11, 51:2
**economics** [1] - 73:9
**economy** [1] - 50:3
**educate** [1] - 3:5
**education** [1] - 41:23
**effect** [7] - 4:3, 4:7, 39:15, 47:20, 67:23, 68:7, 72:25
**effecting** [1] - 50:7
**effective** [3] - 26:22, 39:7, 84:15
**effects** [1] - 47:7
**effort** [2] - 60:24, 62:23
**either** [5] - 11:21, 28:17, 32:11, 35:9, 60:1
**elected** [5] - 30:24, 31:4, 32:8, 79:19, 79:25
**election** [2] - 73:8, 86:22
**ELMORE** [2] - 1:16, 2:15
**Elmore** [1] - 2:15
**elsewhere** [1] - 76:3
**emergency** [2] - 59:19, 86:4
**employees** [2] - 74:14, 78:9
**enable** [1] - 63:15
**enacting** [3] - 28:18, 47:6, 56:2
**end** [1] - 42:22
**endangerment** [1] - 63:4
**ended** [1] - 75:18
**enforce** [30] - 4:20, 5:3, 5:10, 5:18, 9:11, 9:18, 13:22, 17:12,

24:5, 24:6, 25:20, 25:21, 26:7, 38:16, 39:16, 40:19, 41:1, 41:18, 42:20, 46:15, 47:16, 48:4, 52:1, 62:5, 63:4, 71:24, 81:7, 81:10, 87:18, 88:5
**enforced** [1] - 21:7
**Enforcement** [1] - 70:2
**enforcement** [43] - 8:13, 8:14, 11:8, 11:21, 11:23, 12:1, 12:14, 25:19, 50:4, 51:3, 51:18, 51:22, 52:17, 54:7, 55:25, 56:25, 57:22, 59:13, 59:18, 60:14, 62:6, 62:7, 62:10, 63:11, 63:14, 63:20, 64:5, 64:12, 68:10, 68:11, 69:6, 69:19, 69:25, 70:7, 70:18, 70:20, 72:14, 79:1, 81:6, 81:21, 88:1, 88:3
**enforces** [1] - 71:15
**enforcing** [5] - 5:2, 13:17, 87:13
**enhance** [2] - 63:14, 63:16
**enjoyment** [1] - 20:10
**enter** [12] - 4:19, 4:23, 8:12, 43:15, 52:4, 68:18, 76:23, 77:3, 77:8, 84:1, 84:21, 87:17
**entered** [6] - 42:7, 42:10, 43:16, 51:17, 55:3, 56:6
**entering** [1] - 56:2
**enters** [1] - 10:1
**entertainment** [3] - 21:23, 22:15, 23:1
**entire** [2] - 10:19, 70:2
**entitled** [3] - 70:2, 82:11, 89:7
**entity** [1] - 19:10
**envelope** [1] - 4:16
**equal** [1] - 39:6
**equivalent** [1] - 24:7
**error** [2] - 3:4, 42:1
**especially** [1] - 49:11
**essential** [1] - 49:11
**essentially** [1] - 11:16
**established** [2] - 30:4, 47:1
**et** [2] - 1:7, 9:5
**ethical** [1] - 36:8
**ethics** [3] - 34:25,

36:1, 78:13
**event** [62] - 5:7, 8:18, 10:2, 11:19, 12:8, 14:7, 16:6, 18:16, 19:14, 19:15, 19:21, 20:22, 22:24, 23:10, 25:17, 36:22, 39:2, 39:17, 39:23, 40:1, 48:17, 51:23, 54:14, 55:6, 56:15, 57:15, 57:16, 58:4, 58:19, 59:18, 59:20, 59:23, 60:13, 60:18, 60:19, 60:20, 61:8, 62:8, 63:7, 63:9, 63:11, 63:14, 63:20, 64:3, 64:6, 64:7, 64:23, 72:3, 72:7, 72:14, 72:16, 72:18, 72:24, 73:4, 75:10, 77:1, 77:18, 77:22, 79:6, 79:20, 88:17, 89:1
**events** [4] - 5:19, 10:18, 60:22, 60:23, 71:17, 71:19
**evidence** [5] - 22:19, 23:14, 23:15, 42:10, 43:3
**evidenced** [1] - 76:3
**evil** [1] - 24:18
**ex** [1] - 45:2
**exactly** [1] - 68:4
**exalt** [1] - 28:18
**example** [11] - 5:4, 5:14, 14:24, 17:5, 48:2, 48:4, 68:16, 76:4, 76:7, 80:13
**exceeded** [1] - 74:24
**except** [6] - 14:22, 16:1, 42:24, 57:16, 69:14, 73:20
**exception** [1] - 22:1
**excited** [1] - 58:23
**excluding** [1] - 72:18
**exclusive** [3] - 69:12, 69:17, 78:22
**excuse** [2] - 33:4, 87:8
**exempt** [16] - 18:21, 19:2, 39:2, 39:17, 40:8, 51:19, 55:18, 56:15, 56:22, 56:25, 59:8, 61:23, 65:10, 70:25, 71:5, 73:4
**exempted** [1] - 65:17
**exemption** [25] - 17:16, 19:7, 40:21, 42:4, 42:5, 42:12, 43:4, 43:8, 51:8, 51:12, 55:25, 56:2, 56:7, 61:21, 62:3,

66:2, 67:12, 67:22, 68:1, 68:20, 70:7, 70:8, 74:1, 79:5, 83:23
**exempts** [1] - 10:1
**exercise** [1] - 49:9
**exercised** [2] - 64:11, 80:13
**exercising** [1] - 80:16
**Exhibit** [5] - 12:9, 12:22, 61:25, 69:14, 81:3
**exhibit** [3] - 21:21, 22:16, 23:1
**exhibit...** [1] - 21:23
**exhibiting** [1] - 8:23
**exhibition** [3] - 21:23, 22:15, 22:25
**exhibitions** [1] - 8:24
**exist** [1] - 75:23
**existing** [2] - 46:25, 48:3
**expect** [3] - 4:15, 74:6, 74:9
**expend** [1] - 65:5
**expenses** [2] - 8:14, 57:15
**expensive** [1] - 50:4
**experience** [1] - 76:25
**expert** [2] - 81:14, 82:1
**explain** [2] - 31:11, 87:22
**explained** [1] - 3:8
**explanation** [2] - 3:8, 35:12
**explicit** [3] - 11:21, 12:15, 17:8
**exposure** [3] - 15:8, 15:9, 22:11
**express** [1] - 12:2
**expressed** [2] - 39:11, 65:13
**expressing** [1] - 57:2
**expression** [1] - 28:9
**expressive** [9] - 14:6, 15:5, 15:21, 17:2, 17:3, 17:7, 20:11, 20:22, 21:16
**expressly** [3] - 17:18, 62:14, 62:18
**extend** [1] - 78:12
**extended** [1] - 72:21
**extent** [7] - 11:1, 13:5, 17:3, 34:24, 57:16, 65:4, 66:6
**extraordinary** [1] - 44:13
**extremely** [1] - 50:5
**Exxon** [1] - 45:12

**eye** [1] - 37:24

## F

**face** [10] - 14:3, 14:21, 14:22, 15:1, 15:25, 20:2, 20:6, 20:14, 28:20, 82:16
**facial** [10] - 3:11, 14:11, 21:24, 22:16, 22:18, 23:12, 23:25, 24:12, 24:25, 27:21
**facially** [3] - 3:14, 14:15, 27:9
**facie** [1] - 49:19
**fact** [15] - 5:17, 10:6, 13:7, 15:8, 17:11, 28:25, 41:11, 41:13, 82:21, 83:11
**fair** [1] - 46:20
**faith** [2] - 3:22, 21:3
**fall** [2] - 49:15, 49:16
**far** [4] - 4:16, 20:25, 24:18, 38:4
**fashion** [1] - 52:8
**fault** [1] - 72:19
**FCC** [1] - 22:6
**February** [5] - 6:22, 83:1, 83:5, 83:6, 85:21
**federal** [55] - 4:21, 6:7, 9:18, 9:22, 10:8, 10:10, 11:1, 11:18, 11:19, 11:24, 12:11, 12:16, 12:23, 13:18, 16:23, 17:17, 18:1, 18:6, 19:9, 25:20, 26:8, 30:5, 31:2, 33:5, 34:16, 34:17, 35:13, 35:25, 40:2, 44:15, 45:9, 45:17, 46:15, 50:6, 51:11, 55:21, 57:18, 59:2, 59:8, 60:16, 61:7, 61:13, 65:11, 65:13, 71:11, 71:14, 71:19, 71:22, 76:14, 78:11, 86:24, 87:5, 87:12
**federally** [1] - 24:9
**fee** [8] - 8:15, 9:4, 31:25, 66:8, 66:9, 66:10, 81:18
**feel-good** [1] - 80:23
**fees** [10] - 9:7, 27:10, 48:6, 68:12, 75:21, 81:14, 81:19, 81:24, 82:1
**Feldman** [2] - 30:3, 30:8
**felony** [1] - 16:8

7

**felt** [1] - 36:9
**festival** [1] - 23:9
**Festival** [21] - 8:19, 9:3, 9:5, 12:15, 12:17, 14:2, 14:5, 14:20, 16:10, 16:21, 18:4, 19:23, 21:25, 22:12, 27:11, 27:16, 40:1, 50:18, 51:17, 54:6
**few** [3] - 41:2, 57:20, 74:21
**field** [4] - 10:19, 10:23, 11:12, 17:25
**Field** [1] - 10:20
**fifth** [5] - 23:5, 23:7, 29:10, 43:24, 45:22
**fifty** - 56:13, 67:13, 77:24
**figured** [1] - 16:16
**file** [12] - 34:12, 35:22, 38:10, 76:12, 80:8, 81:1, 82:10, 82:11, 84:22, 84:25, 85:14, 86:4
**filed** [11] - 6:22, 7:3, 7:8, 8:10, 26:22, 52:6, 54:19, 59:1, 79:14, 84:4, 84:6
**filing** [4] - 36:11, 42:1, 42:3, 42:19
**final** [1] - 87:4
**finally** [1] - 87:4
**finder** [1] - 83:11
**findings** [2] - 40:15, 42:10
**fine** [2] - 73:18, 81:25
**finish** [2] - 27:1, 78:3
**first** [10] - 3:4, 6:20, 8:8, 19:13, 41:14, 48:23, 48:24, 49:5, 49:6, 72:22
**First** [27] - 3:16, 5:12, 7:24, 13:25, 14:3, 14:15, 14:24, 15:6, 15:15, 15:22, 16:2, 18:7, 19:17, 20:2, 20:6, 20:12, 20:14, 20:17, 24:15, 25:7, 25:13, 27:8, 28:21, 81:21, 82:3, 82:16, 87:16
**five** [5] - 18:15, 58:6, 66:8, 67:1, 75:20
**fixed** [1] - 48:16
**flat** [1] - 16:19
**folks** [2] - 86:18, 88:17
**follow** [2] - 3:22, 63:23
**follow-up** [1] - 63:23
**followed** [1] - 8:4

**following** [3] - 63:21, 73:17, 73:21
**footnote** [3] - 3:17, 20:15, 20:19
**FOR** [2] - 1:14, 1:19
**Forbearance** [2] - 50:21, 50:24
**force** [4] - 39:23, 50:8, 74:6, 75:18
**foregoing** [1] - 89:6
**Forest** [1] - 71:2
**form** [1] - 43:14
**formally** [1] - 84:6
**former** [1] - 78:8
**forms** [1] - 15:7
**forward** [1] - 8:1
**four** [2] - 66:8, 72:19
**Fourteenth** [2] - 13:25, 29:19
**fourth** [4] - 14:1, 14:9, 21:21, 27:7
**framework** [1] - 51:21
**Francisco** [1] - 1:15
**fraud** [8] - 6:7, 6:8, 6:10, 43:4, 43:5, 51:9, 61:18, 83:24
**free** [2] - 51:9, 58:24
**frequently** [2] - 22:21, 22:22
**front** [4] - 21:16, 32:25, 76:8, 88:5
**fulfill** [2] - 46:14
**full** [2] - 3:7, 46:20
**fully** [7] - 14:24, 16:2, 62:1, 62:3, 72:13, 78:7, 80:22
**funny** [1] - 71:12
**furthermore** [2] - 12:6, 24:23
**future** [10] - 49:8, 56:22, 68:18, 73:13, 77:14, 78:1, 80:5, 88:5
**fuzzy** [1] - 80:23

**G**

**gambling** [1] - 15:18
**game** [1] - 86:11
**general** [5] - 50:18, 63:7, 71:22, 73:23, 74:12
**General** [1] - 37:2
**General's** [1] - 36:23
**generally** [8] - 20:13, 23:17, 32:12, 37:3, 47:6, 49:15, 64:17, 80:12
**gentleman** [1] - 75:17
**geographical** [1] -

60:19
**given** [5] - 22:7, 43:4, 85:18, 85:23, 86:15
**governed** [2] - 69:9, 78:21
**governing** [2] - 48:7, 78:20
**government** [2] - 28:12, 40:2
**governor** [1] - 55:13
**governs** [1] - 71:15
**graduate** [2] - 12:4, 68:7
**grand** [1] - 77:7
**grant** [1] - 80:11
**granted** [3] - 10:25, 70:8, 74:1
**granting** [3] - 10:18, 17:16, 19:6
**great** [2] - 3:7, 3:10
**Griener** [3] - 1:22, 89:8, 89:8
**Gross** [1] - 2:13
**grounds** [4] - 46:19, 57:7, 76:3, 82:16
**group** [1] - 56:15
**guess** [1] - 16:25
**guilty** [2] - 16:16, 18:15

**H**

**handled** [1] - 39:19
**Hart** [1] - 2:16
**head** [2] - 41:9, 41:22
**hear** [4] - 31:4, 33:6, 86:17, 86:22
**heard** [5] - 7:5, 30:21, 31:25, 38:4, 75:18
**hearing** [4] - 2:5, 32:8, 72:1, 85:3
**hearings** [1] - 42:9
**heck** [2] - 15:8, 17:8
**held** [6] - 24:14, 42:9, 72:1, 72:8, 72:16, 72:19
**help** [1] - 88:17
**hence** [1] - 72:23
**hereby** [2] - 52:2, 61:25
**herein** [6] - 62:2, 69:20, 69:25, 70:18, 77:11, 78:7
**hereto** [1] - 61:25
**herewith** [1] - 52:6
**Herrington** [1] - 2:10
**hidden** [1] - 39:11
**higher** [1] - 9:6
**highway** [1] - 71:21
**himself** [1] - 29:16

**hire** [1] - 4:13
**history** [1] - 18:12
**hold** [3] - 55:22, 61:4, 71:11
**holding** [1] - 58:19
**holidays** [2] - 85:18, 85:25
**Holland** [1] - 2:15
**honestly** [1] - 52:7
**Honor** [58] - 2:9, 2:12, 2:17, 2:18, 7:4, 7:5, 7:7, 7:9, 25:23, 26:11, 26:14, 26:17, 28:5, 31:6, 32:3, 32:13, 32:18, 33:10, 33:15, 34:2, 34:10, 37:7, 37:11, 37:13, 37:19, 39:13, 40:6, 41:10, 41:20, 41:24, 42:15, 43:1, 43:10, 43:18, 52:19, 53:2, 53:10, 53:24, 54:2, 56:19, 67:11, 67:18, 67:25, 68:23, 69:2, 70:3, 70:6, 70:13, 79:12, 79:17, 80:3, 84:3, 84:19, 85:1, 85:11, 85:17, 86:25, 87:24
**HONORABLE** [1] - 1:2
**hope** [5] - 15:22, 21:11, 28:3, 28:6, 32:4, 76:21, 77:2, 88:4
**hopefully** [3] - 21:3, 21:11, 22:7
**hosted** [1] - 72:3
**hour** [1] - 6:13
**hourly** [2] - 37:18, 76:6
**house** [1] - 17:6
**however...** [1] - 18:9
**hundred** [2] - 66:9, 77:7
**Hurst** [1] - 2:10
**HURST** [52] - 1:14, 2:9, 7:4, 7:7, 7:9, 26:11, 26:14, 26:17, 41:20, 41:24, 42:7, 42:13, 42:15, 42:25, 43:10, 43:13, 43:18, 43:20, 52:11, 52:13, 52:19, 52:23, 53:2, 53:10, 53:12, 53:16, 53:19, 53:21, 53:24, 54:2, 69:1, 69:5, 70:1, 70:6, 70:12, 84:3, 84:14, 84:19, 84:23, 85:1, 85:11, 85:17, 85:23, 86:2,

86:5, 86:8, 86:13, 86:25, 87:3, 87:9, 87:19, 87:24

**I**

**idea** [1] - 66:2
**ignored** [2] - 86:18, 88:7
**illegal** [18] - 2:25, 3:1, 4:4, 4:5, 5:23, 6:14, 8:25, 9:1, 26:4, 27:4, 32:16, 46:12, 48:13, 58:15, 61:2, 66:17, 74:7, 75:2
**immediate** [1] - 23:19
**immediately** [1] - 63:22
**immunity** [6] - 7:13, 7:15, 7:19, 33:20, 33:23, 34:3
**impacts** [2] - 76:25, 77:5
**impairing** [1] - 46:10
**impairs** [3] - 46:13, 48:21, 49:3
**impede** [1] - 11:2, 11:5
**implement** [1] - 39:16
**implicate** [3] - 19:16, 25:6, 25:13
**implicating** [1] - 11:25
**implicitly** [2] - 52:17, 53:8
**implies** [1] - 5:5
**implying** [1] - 59:24
**important** [2] - 19:11, 33:8
**importing** [1] - 24:7
**impose** [7] - 8:17, 9:6, 16:11, 50:6, 56:18, 59:14, 67:7
**imposed** [3] - 10:3, 13:10, 74:3
**imposes** [3] - 9:3, 39:16, 46:13
**imposing** [1] - 9:11
**imposition** [1] - 16:18
**imprimatur** [1] - 4:4
**improper** [1] - 14:5
**inability** [1] - 12:3
**inadequate** [2] - 75:1, 75:2
**inappropriate** [1] - 36:9
**incidentally** [1] - 47:13
**incidents** [1] - 59:20
**include** [5] - 5:1, 57:17, 64:14, 76:5,

8

88:20
**included** [1] - 66:15
**includes** [1] - 17:4
**including** [11] - 2:19, 17:2, 21:16, 35:25, 54:11, 71:13, 78:15, 81:3, 81:11, 81:14, 88:25
**inclusive** [1] - 55:15
**incomplete** [1] - 72:12
**inconsistent** [2] - 8:18, 19:3
**inconvenience** [1] - 24:19
**incorporated** [5] - 62:1, 67:24, 68:19, 70:5, 70:22
**incorporates** [1] - 42:12
**incorporating** [1] - 68:7
**incorporation** [1] - 79:4
**incorrect** [4] - 16:19, 26:16, 27:23, 38:9
**indecent** [5] - 8:24, 21:22, 22:5, 22:9, 22:25
**indefinite** [1] - 56:22
**independent** [1] - 55:2
**independently** [1] - 51:9
**Index** [1] - 66:24
**index** [1] - 67:10
**indicate** [2] - 29:23, 30:13
**indicated** [1] - 84:20
**indicating** [1] - 54:13
**individual** [4] - 7:17, 7:24, 80:25, 83:16
**inflation** [2] - 66:23, 66:25
**influence** [1] - 51:11
**information** [7] - 57:12, 57:18, 57:25, 58:14, 63:15, 64:24, 65:1
**inhibit** [1] - 83:20
**initial** [3] - 42:1, 42:3, 66:1
**injunction** [1] - 81:23
**injunctive** [2] - 81:9, 83:10
**injuries** [1] - 45:6
**injury** [3] - 73:24, 74:20, 75:19
**innocent** [1] - 22:22
**innocuous** [1] - 22:22
**input** [5] - 61:1, 62:25, 63:2, 65:21, 88:8

**inquire** [1] - 25:23
**inquiry** [2] - 48:22, 49:4
**insist** [1] - 82:2
**insofar** [2] - 49:23, 51:1
**instance** [2] - 48:25, 49:7
**instant** [1] - 51:16
**instead** [4] - 7:3, 9:10, 42:19, 51:12
**instituted** [2] - 27:11, 27:16
**instructing** [1] - 29:7
**instruction** [4] - 3:24, 20:17, 29:20, 44:22
**instructions** [1] - 3:22
**instructive** [2] - 19:11, 22:7
**insulated** [1] - 23:18
**insulting** [1] - 32:5
**insults** [3] - 5:23, 5:24, 5:25
**insurance** [8] - 73:14, 73:16, 73:20, 73:23, 74:16, 75:3, 75:11, 75:13
**insured** [4] - 74:4, 75:6, 75:7, 75:13
**insuring** [1] - 75:7
**integrated** [16] - 59:11, 59:15, 59:16, 59:17, 60:5, 60:8, 60:17, 62:9, 62:12, 62:15, 62:19, 62:22, 65:19, 66:16, 66:22, 88:8
**Integrated** [1] - 59:21
**intelligence** [4] - 5:24, 5:25, 32:5
**intend** [2] - 3:19, 22:1
**intended** [5] - 23:16, 31:12, 39:23, 68:24, 73:12
**intending** [2] - 15:23, 38:10
**intent** [8] - 32:18, 38:25, 39:1, 39:12, 73:7, 80:20, 80:23
**interest** [5] - 28:12, 28:15, 75:20, 87:9
**interesting** [2] - 13:2, 72:20
**interests** [1] - 4:14
**interfere** [1] - 5:6
**interference** [1] - 20:9
**internal** [1] - 23:18
**interpret** [5] - 3:23, 19:1, 19:3, 26:1, 38:6

**interpretation** [12] - 6:15, 9:25, 10:14, 16:19, 26:12, 26:15, 35:15, 41:5, 56:13, 57:5, 67:9, 76:16
**interpreted** [8] - 4:8, 4:9, 4:10, 22:3, 56:20, 65:22, 69:9, 78:22
**interpreting** [2] - 4:2, 17:14
**interprets** [1] - 81:17
**intervene** [2] - 44:7, 44:10
**intervening** [1] - 73:8
**invalid** [20] - 3:9, 14:15, 14:18, 15:14, 27:17, 28:8, 32:16, 43:7, 46:12, 46:16, 46:18, 46:23, 47:18, 54:16, 56:23, 57:7, 61:2, 61:21, 63:6, 64:1
**invalidate** [3] - 43:3, 54:21, 55:8
**invalidates** [1] - 46:25
**invalidity** [1] - 55:7
**inviting** [1] - 45:8
**invoke** [2] - 21:20, 80:20
**invoking** [1] - 40:1
**involved** [5] - 15:18, 39:14, 39:19, 61:17, 76:18
**issue** [6] - 4:12, 7:15, 22:12, 28:4, 30:9, 44:15
**issued** [4] - 3:2, 31:22, 32:20, 57:13
**issues** [5] - 11:4, 30:6, 30:14, 44:3, 80:21
**itself** [5] - 10:2, 13:20, 17:16, 31:3, 67:6

**J**

**Joe** [1] - 47:16
**joined** [1] - 34:18
**joining** [1] - 34:14
**joint** [2] - 62:23, 64:4
**jointly** [1] - 52:3
**joke** [1] - 59:9
**JONES** [1] - 1:2
**Judge** [32] - 30:22, 30:23, 31:23, 32:1, 32:7, 32:10, 32:11, 32:14, 32:20, 32:23, 33:6, 33:9, 33:10, 34:12, 34:14, 34:16, 34:22, 34:25, 36:6,

36:12, 37:4, 37:5, 54:12, 54:15, 55:3, 78:12, 79:9, 79:22, 80:15, 80:17, 81:3, 82:24
**JUDGE** [1] - 1:2
**judge** [22] - 2:15, 29:15, 30:24, 31:4, 31:14, 31:24, 32:1, 32:8, 33:5, 35:13, 38:1, 38:2, 38:18, 44:18, 44:20, 57:4, 61:7, 79:11, 79:19, 79:25, 80:14, 86:24
**judged** [1] - 14:18
**judges** [2] - 33:21, 36:24
**judgment** [14] - 3:3, 28:1, 29:4, 30:16, 31:23, 38:10, 44:11, 45:7, 55:3, 75:17, 82:18, 83:18, 84:3, 85:20
**judgment'** [1] - 45:9
**judicial** [5] - 29:24, 29:25, 30:13, 44:2, 76:12
**juncture** [1] - 34:13
**June** [1] - 55:13
**jurisdiction** [26] - 26:20, 26:21, 42:20, 43:15, 44:14, 45:11, 45:20, 45:24, 52:1, 52:5, 52:16, 53:4, 53:7, 62:5, 65:12, 65:20, 69:18, 69:21, 70:15, 71:15, 71:19, 78:24, 79:7, 79:21, 84:10, 84:16
**jurisdictional** [1] - 60:15
**jury** [5] - 38:1, 74:22, 83:6, 83:8, 83:13
**justifies** [1] - 57:21
**justifying** [1] - 47:25
**juvenile** [1] - 60:1

**K**

**keep** [2] - 61:3, 68:22
**kind** [3] - 4:3, 5:2, 53:3
**kinds** [1] - 67:6
**known** [1] - 72:2
**Kolvet** [1] - 2:18
**KOLVET** [74] - 1:19, 2:17, 25:23, 26:2, 26:6, 28:5, 31:6, 31:11, 31:20, 32:3, 32:6, 32:13, 32:18, 33:10, 33:14, 33:17,

33:20, 33:24, 34:2, 34:6, 34:9, 34:21, 34:23, 35:4, 35:7, 35:14, 35:19, 35:23, 36:2, 36:6, 36:13, 36:17, 36:19, 36:21, 36:23, 37:3, 37:7, 37:11, 37:13, 37:16, 37:19, 37:23, 38:3, 38:9, 39:8, 39:13, 39:18, 39:24, 40:6, 40:11, 40:17, 41:4, 41:10, 41:13, 56:8, 56:10, 56:19, 67:11, 67:14, 67:18, 67:25, 68:4, 68:9, 68:23, 76:18, 79:12, 79:16, 80:3, 80:5, 80:10, 80:19
**Kolvet's** [1] - 26:12

**L**

**lacks** [2] - 79:7, 79:21
**land** [10] - 11:1, 11:18, 11:20, 11:24, 12:16, 19:9, 20:10, 71:16, 72:5
**Land** [8] - 58:17, 72:6, 72:11, 72:13, 73:15, 73:19, 75:3, 75:5
**landowners** [1] - 21:1
**lands** [10] - 55:20, 65:11, 71:9, 71:18, 71:19, 71:22, 71:23, 72:9
**language** [7] - 34:23, 35:10, 38:21, 45:25, 65:19, 80:19, 80:20
**lascivious** [1] - 64:16
**last** [8] - 19:11, 25:8, 35:17, 54:4, 67:19, 70:9, 74:23, 75:18
**late** [2] - 36:12, 54:9
**latter** [3] - 48:23, 49:5, 49:17
**laughing** [3] - 5:8, 13:23, 38:19
**law** [75] - 4:21, 5:21, 8:13, 9:18, 10:8, 11:8, 11:14, 11:20, 11:23, 12:1, 12:4, 12:14, 14:15, 19:25, 20:1, 20:5, 22:17, 25:1, 25:5, 26:8, 28:17, 29:19, 31:7, 31:13, 32:9, 32:17, 40:24, 41:19, 46:8, 46:10, 46:14, 46:15,

47:16, 47:17, 51:3,
51:18, 51:22, 53:15,
54:6, 54:23, 55:25,
56:25, 57:18, 57:22,
59:12, 59:17, 62:6,
62:10, 63:11, 63:14,
63:20, 64:5, 67:4,
68:6, 68:10, 68:11,
69:6, 69:19, 69:24,
70:6, 70:17, 70:20,
72:14, 78:18, 78:20,
78:22, 78:25, 79:25,
80:1, 80:17, 80:20,
88:1, 88:3
**Law** [4] - 1:14, 1:16,
1:19, 70:2
**law's** [1] - 14:18
**laws** [30] - 9:23, 11:1,
11:4, 12:7, 12:11,
12:23, 13:5, 13:12,
13:14, 13:18, 13:19,
13:20, 23:17, 24:5,
25:21, 40:19, 41:1,
48:3, 48:4, 60:14,
62:8, 63:4, 69:10,
69:11, 71:16, 71:24,
87:13, 87:18
**lawsuit** [11] - 24:2,
31:13, 33:14, 34:15,
35:5, 36:11, 37:12,
41:17, 48:12, 61:16,
81:1
**lawsuits** [4] - 35:25,
37:6, 37:9, 78:15
**lawyer** [1] - 78:17
**least** [5] - 32:12, 63:6,
63:9, 64:18, 65:4
**leave** [2] - 7:2, 37:2
**legal** [2] - 57:2, 57:24
**legislate** [1] - 39:6
**legislation** [7] - 18:20,
19:4, 47:7, 47:9,
47:12, 56:5, 56:14
**legislature** [14] - 4:22,
12:18, 15:19, 38:14,
38:25, 39:5, 39:11,
39:22, 55:12, 71:2,
73:7, 73:11, 73:12,
87:6
**legislatures** [1] - 49:8
**legitimate** [3] - 47:8,
47:12, 50:19
**length** [1] - 28:14
**less** [3] - 13:9, 74:18,
74:22
**lest** [1] - 23:12
**lewd** [7] - 8:24, 16:7,
21:17, 21:22, 22:15,
22:25, 64:15
**liability** [1] - 35:5,

73:23, 74:12
**license** [8] - 8:14,
16:5, 16:6, 16:16,
16:22, 18:5, 19:15,
20:8
**License** [2] - 8:20, 9:3
**licensed** [5] - 19:9,
23:9, 37:21, 37:24,
40:2
**licensee** [3] - 9:17,
9:22, 10:2
**light** [1] - 22:3
**likely** [3] - 22:21,
24:17, 27:22
**limit** [1] - 24:22
**limitation** [6] - 56:18,
60:21, 60:22, 74:25,
81:11, 88:25
**limitations** [4] - 5:18,
15:12, 37:8, 78:19
**limited** [4] - 21:8,
69:21, 70:16, 70:20
**limiting** [1] - 21:15
**limits** [1] - 47:2
**line** [13] - 4:19, 6:6,
18:15, 26:4, 26:10,
58:6, 61:8, 77:7,
82:14, 86:18, 87:12
**liquidation** [1] - 66:12
**liquor** [1] - 9:1
**listen** [2] - 27:6, 63:1
**literature** [1] - 86:22
**litigated** [1] - 29:12
**litigation** [2] - 51:17,
88:19
**living** [2] - 67:10, 79:4
**LLC** [1] - 1:4
**local** [23] - 4:21, 9:17,
9:18, 9:23, 10:8,
11:7, 11:14, 11:17,
12:1, 12:7, 12:11,
12:14, 12:23, 13:5,
13:12, 13:13, 13:17,
23:23, 25:20, 46:15,
59:9, 62:8, 65:14
**lock** [1] - 73:4
**long-term** [1] - 51:21
**looking** [5] - 21:17,
61:6, 67:18, 68:22,
88:14
**looks** [1] - 29:1
**loser** [1] - 45:5
**Lovelock** [1] - 2:21
**low** [1] - 59:5
**lower** [1] - 66:17

---

## M

**ma'am** [12] - 26:13,
26:24, 42:24, 43:16,

43:17, 52:7, 53:14,
54:1, 69:7, 70:14,
87:8, 87:23
**machines** [1] - 15:18
**Madam** [1] - 82:23
**magnitude** [1] - 47:20
**main** [4] - 28:17, 51:7,
65:7, 65:8
**maintain** [3] - 73:22,
74:11, 75:11
**maintains** [1] - 77:19
**major** [2] - 17:14, 56:5
**malpractice** [7] - 4:1,
4:6, 13:24, 37:22,
37:24, 61:12, 86:19
**Man** [13] - 38:16,
51:23, 54:14, 57:14,
58:19, 72:3, 72:7,
72:15, 72:18, 72:24,
77:1, 77:18, 77:22
**managed** [4] - 72:5,
72:8, 72:10, 72:13
**Management** [8] -
58:17, 72:6, 72:11,
72:13, 73:15, 73:19,
75:3, 75:5
**manages** [1] - 77:21
**mandamus** [1] - 54:19
**mandate** [2] - 48:5,
59:6
**mandated** [4] - 10:7,
12:17, 12:18, 65:14
**mandates** [3] - 17:15,
19:6, 55:16
**mandating** [2] - 31:8,
59:3
**mandatory** [3] - 17:18,
19:8, 71:13
**Mann** [4] - 13:18,
18:18, 24:6, 24:7
**manner** [3] - 19:21,
26:14, 44:21
**Margaret** [2] - 1:22,
89:8
**marijuana** [1] - 58:7
**mark** [1] - 73:14
**Massey** [1] - 44:23
**material** [3] - 22:11,
51:25, 82:21
**matter** [11] - 26:17,
31:25, 32:8, 50:18,
79:7, 81:25, 82:13,
84:17, 85:12, 87:1,
89:7
**matters** [3] - 69:14,
85:4, 88:24
**mealy** [2] - 52:8, 52:15
**mealy-mouthed** [2] -
52:8, 52:15
**mean** [5] - 5:9, 27:21,

56:21, 57:10, 60:11
**meaning** [1] - 19:25
**means** [6] - 13:9,
58:17, 58:18, 59:17,
60:11, 62:25
**meant** [1] - 31:15
**meet** [3] - 50:2, 63:10,
64:4
**meeting** [3] - 63:13,
63:21, 63:23
**meetings** [1] - 55:5
**memo** [1] - 78:18
**merits** [1] - 82:12
**message** [1] - 15:23
**met** [3] - 10:4, 19:8,
40:14
**middle** [2] - 38:14,
54:2
**might** [3] - 11:24,
13:3, 20:17
**million** [9] - 74:18,
74:19, 74:22, 74:25,
75:15, 75:19, 75:20,
75:21
**mind** [2] - 46:9, 57:4
**mine** [1] - 3:4
**minor** [4] - 21:16,
24:5, 60:2, 60:3
**minors** [9] - 5:19,
15:13, 15:17, 15:20,
16:18, 24:8, 54:13,
55:6, 88:16
**minute** [1] - 70:23
**minutes** [6] - 35:17,
41:3, 57:20, 58:14,
61:4, 67:20
**misapprehension** [1]
- 41:25
**miscalculations** [1] -
4:1
**misconduct** [4] -
29:24, 30:1, 30:13,
44:2
**misimpression** [1] -
52:25
**misinterpretation** [4] -
16:15, 18:1, 57:3,
83:24
**misinterpreted** [7] -
20:16, 27:4, 38:20,
56:5, 61:11, 65:9,
71:8
**misinterpreting** [2] -
4:6, 86:19
**misread** [2] - 27:19,
29:6
**misrepresented** [2] -
6:16, 61:10
**missed** [4] - 14:10,
23:4, 30:2, 30:9

**missing** [1] - 67:20
**mistake** [5] - 3:19,
3:20, 3:21, 17:13,
17:14
**mob** [1] - 47:15
**Mobile** [1] - 45:12
**modify** [3] - 23:22,
24:1, 47:3
**moment** [12] - 38:21,
39:22, 40:16, 51:6,
56:4, 58:22, 65:8,
65:15, 71:8, 75:6,
82:24, 88:13
**MONDAY** [1] - 2:1
**monologue** [1] - 42:23
**months** [1] - 25:17
**morning** [3] - 2:9,
2:12, 2:17
**most** [3] - 3:11, 14:20,
19:11
**mostly** [2] - 14:22,
15:25
**motion** [24] - 6:24,
26:18, 26:19, 28:1,
31:24, 42:17, 42:18,
42:19, 53:5, 82:17,
82:19, 84:4, 84:10,
84:22, 84:25, 85:12,
85:15, 85:18, 85:20,
85:24, 86:4, 86:5,
86:8
**motions** [1] - 38:10
**motivate** [1] - 10:13
**motivation** [1] - 60:2
**mouthed** [2] - 52:8,
52:15
**move** [2] - 44:7, 44:10
**movie** [1] - 17:6
**MR** [75] - 2:12, 2:15,
2:17, 25:23, 26:2,
26:6, 28:5, 31:6,
31:11, 31:20, 32:3,
32:6, 32:13, 32:18,
33:10, 33:14, 33:17,
33:20, 33:24, 34:2,
34:6, 34:9, 34:21,
34:23, 35:4, 35:7,
35:14, 35:19, 35:23,
36:2, 36:6, 36:13,
36:17, 36:19, 36:21,
36:23, 37:3, 37:7,
37:11, 37:13, 37:16,
37:19, 37:23, 38:3,
38:9, 38:13, 38:23,
39:4, 39:8, 39:13,
39:18, 39:24, 40:6,
40:11, 40:17, 41:4,
41:10, 41:13, 56:8,
56:10, 56:19, 67:11,
67:14, 67:18, 67:25,

68:4, 68:9, 68:23, 76:18, 79:12, 79:16, 80:3, 80:5, 80:10, 80:19

**MS** [51] - 2:9, 7:4, 7:7, 7:9, 26:11, 26:14, 26:17, 41:20, 41:24, 42:7, 42:13, 42:15, 42:25, 43:10, 43:13, 43:18, 43:20, 52:11, 52:13, 52:19, 52:23, 53:2, 53:10, 53:12, 53:16, 53:19, 53:21, 53:24, 54:2, 69:1, 69:5, 70:1, 70:6, 70:12, 84:3, 84:14, 84:19, 84:23, 85:1, 85:11, 85:17, 85:23, 86:2, 86:5, 86:8, 86:13, 86:25, 87:3, 87:9, 87:19, 87:24

**must** [11] - 12:10, 23:17, 25:5, 30:17, 44:5, 45:13, 48:10, 53:8, 74:21, 79:8, 79:21

**mutual** [2] - 77:12, 87:7

**N**

**name** [4] - 2:10, 7:23, 8:5, 74:13
**named** [4] - 7:10, 54:23, 54:24, 75:12
**namely** [1] - 76:4
**naming** [1] - 75:6
**narcotics** [1] - 25:11
**narrowly** [2] - 22:10, 28:11
**National** [1] - 58:20
**nature** [1] - 63:22
**necessity** [1] - 88:6
**need** [4] - 18:25, 22:19, 70:23, 71:7
**needed** [1] - 60:20
**negate** [1] - 59:25
**negotiate** [1] - 87:4
**negotiated** [2] - 3:1, 66:11
**negotiations** [1] - 76:19
**neutral** [2] - 14:22, 16:1
**NEVADA** [2] - 1:1, 2:1
**Nevada** [32] - 1:7, 1:17, 1:20, 1:23, 5:21, 6:10, 7:13, 7:14, 8:21, 15:19, 18:19, 19:3, 29:19,

30:17, 31:1, 31:7, 31:13, 32:9, 32:10, 32:17, 41:1, 44:6, 44:13, 45:16, 55:12, 55:14, 69:10, 69:16, 71:2, 79:8, 79:22, 87:6
**never** [2] - 38:5, 79:16, 84:6
**nevertheless** [1] - 62:18
**new** [19] - 4:7, 4:11, 18:18, 18:22, 19:3, 19:6, 40:13, 40:15, 47:17, 48:14, 50:1, 56:14, 65:9, 65:22, 66:5, 67:9, 73:3, 74:4, 77:25
**next** [10] - 6:13, 10:14, 12:20, 15:18, 54:17, 59:11, 63:6, 64:1, 64:21, 86:22
**nexus** [1] - 83:19
**night** [1] - 67:20
**Ninth** [10] - 11:11, 14:14, 15:11, 15:17, 45:17, 81:17, 81:22, 84:24, 85:13, 87:22
**nobody** [1] - 58:25
**nonsense** [1] - 31:5
**nonviolative** [1] - 23:23
**noon** [1] - 61:3
**normal** [4] - 4:24, 85:19, 85:23, 87:13
**normally** [2] - 76:15, 82:6
**notably** [1] - 23:20
**note** [1] - 7:1
**noted** [1] - 8:11
**notes** [1] - 6:19
**nothing** [13] - 18:11, 25:16, 32:19, 32:20, 32:25, 41:18, 46:17, 57:19, 64:17, 66:4, 66:10, 66:25, 88:1
**notice** [1] - 85:24
**notify** [1] - 63:22
**notwithstanding** [2] - 55:14, 71:3
**November** [1] - 1:6
**NOVEMBER** [1] - 2:1
**now-days** [1] - 81:17
**nowhere** [1] - 79:2
**NRS** [1] - 55:19
**nude** [2] - 17:9, 58:25
**nudity** [8] - 5:15, 15:3, 15:5, 15:7, 15:10, 17:2, 21:5, 60:4
**nuisance** [8] - 8:23,

19:22, 20:1, 20:5, 20:9, 20:18, 20:24, 21:6
**nuisances** [1] - 20:13
**number** [16] - 4:2, 5:18, 6:23, 14:17, 30:15, 33:6, 33:7, 44:3, 46:18, 46:22, 54:17, 60:19, 62:6, 73:14, 74:24, 83:20
**numerous** [2] - 22:20, 22:21

**O**

**obey** [1] - 9:22
**objection** [6] - 40:18, 43:17, 51:13, 53:18, 65:7, 65:8
**objectionable** [7] - 27:18, 57:7, 59:11, 64:21, 66:15, 66:18, 78:3
**objections** [4] - 43:20, 84:2, 84:18, 88:9
**objects** [1] - 70:1
**obligated** [4] - 5:3, 5:18, 15:9, 77:8
**Obligation** [1] - 46:11
**obligation** [8] - 5:20, 9:11, 24:10, 36:15, 37:2, 39:17, 51:5, 88:7
**obligations** [6] - 8:17, 48:22, 49:4, 50:7, 51:2, 74:3
**obscene** [1] - 8:24
**obscenity** [5] - 14:25, 15:2, 16:3, 16:7, 16:18
**observance** [3] - 12:15, 13:7, 13:12
**observe** [1] - 12:10
**obtain** [5] - 12:1, 45:9, 73:22, 74:11, 75:11
**obtains** [2] - 55:21, 71:10
**obvious** [2] - 3:25, 41:9
**obviously** [9] - 5:25, 6:16, 19:5, 20:16, 53:5, 58:2, 65:23, 82:9, 84:10
**occupied** [1] - 10:23
**occur** [2] - 3:18, 59:20
**occurred** [1] - 38:13
**occurrence** [1] - 74:19
**occurs** [4] - 20:24, 55:20, 60:17, 71:9
**October** [1] - 72:23

**OF** [4] - 1:1, 1:7, 1:11
**offenses** [1] - 16:9, 40:19
**offensive** [2] - 21:20, 23:10
**office** [12] - 59:13, 59:22, 60:9, 60:25, 62:24, 64:10, 64:12, 65:5, 65:20, 65:21, 67:7, 87:25
**Office** [1] - 36:23
**officer** [1] - 53:22
**officers** [5] - 36:24, 60:20, 63:17, 74:13, 78:9
**offices** [1] - 78:2
**Official** [2] - 1:22, 89:9
**official** [2] - 80:25, 83:17
**officials** [1] - 54:11
**old** [2] - 50:3, 50:12
**omitted** [1] - 42:4
**one** [51] - 3:12, 3:17, 4:2, 4:17, 5:7, 7:1, 17:18, 18:16, 21:12, 22:1, 25:8, 29:21, 30:15, 31:13, 32:22, 33:6, 39:2, 39:16, 39:17, 44:4, 44:19, 45:2, 45:3, 46:2, 46:19, 48:2, 56:4, 61:19, 63:19, 64:21, 66:7, 68:7, 68:24, 70:1, 70:4, 70:24, 74:5, 74:18, 74:19, 74:25, 75:9, 78:23, 80:1, 81:19, 81:22, 81:23, 82:17, 83:12, 83:20
**ones** [5] - 57:6, 65:7, 65:8, 65:9, 80:5
**operates** [1] - 77:20
**opinions** [1] - 33:17
**opposed** [1] - 8:5
**oral** [2] - 85:12, 85:15
**order** [44] - 3:2, 3:9, 3:23, 4:2, 4:3, 4:11, 6:16, 6:20, 6:22, 6:23, 7:1, 8:7, 10:15, 12:3, 13:3, 15:23, 17:1, 18:2, 21:12, 22:2, 23:3, 24:10, 24:22, 26:1, 27:5, 27:19, 32:24, 33:4, 39:1, 41:14, 43:3, 43:6, 43:25, 46:3, 51:11, 52:4, 55:10, 82:14, 83:22, 84:23, 86:11, 86:16, 86:18, 87:6

**ordered** [4] - 2:4, 10:10, 33:5, 35:13
**ordering** [1] - 59:7
**orders** [2] - 61:11, 85:3
**ordinance** [27] - 3:9, 3:12, 3:13, 3:14, 3:15, 5:5, 12:19, 14:22, 15:25, 17:18, 18:8, 22:23, 23:8, 23:23, 24:2, 24:3, 24:21, 28:14, 46:25, 47:20, 48:14, 48:18, 55:17, 57:1, 65:14, 77:15, 77:17
**Ordinance** [19] - 9:5, 12:15, 12:17, 14:3, 14:5, 14:21, 16:11, 16:21, 18:4, 19:24, 21:25, 22:12, 27:11, 27:16, 40:1, 50:18, 50:19, 51:18, 54:6
**ordinances** [4] - 12:24, 17:5, 17:12, 59:9
**ordinarily** [1] - 28:8
**organization** [1] - 77:19
**organized** [1] - 72:7
**organizer** [3] - 55:21, 71:10, 74:13
**organizes** [1] - 77:21
**original** [1] - 81:9
**originally** [1] - 70:8
**originally-granted** [1] - 70:8
**Orrick** [1] - 2:10
**otherwise** [6] - 47:8, 47:12, 52:24, 65:12, 77:10, 83:3
**out-of-control** [1] - 9:13
**outdoor** [1] - 10:24
**outlaw** [1] - 28:2
**outside** [1] - 36:20
**over-interpreted** [1] - 4:8
**oversight** [1] - 60:16
**own** [5] - 2:20, 47:3, 48:22, 49:4, 87:15
**owners** [1] - 18:12

**P**

**page** [6] - 8:9, 10:15, 10:22, 16:20, 19:12, 54:17
**paragraph** [9] - 8:9, 10:22, 12:20, 19:11, 55:10, 69:2, 76:23,

77:10, 78:5
**parenthetically** [1] - 79:10
**Park** [1] - 71:23
**park** [1] - 9:5
**Part** [1] - 27:14
**part** [11] - 8:14, 14:8, 14:20, 36:25, 40:23, 62:9, 68:13, 70:7, 70:8, 73:16, 75:3
**parte** [1] - 45:3
**partially** [3] - 6:20, 6:21, 15:5
**participants** [4] - 20:23, 58:4, 63:16
**particular** [8] - 3:15, 3:17, 10:1, 16:10, 20:7, 32:12, 48:16, 79:25
**parties** [29] - 3:5, 6:24, 8:11, 25:16, 33:8, 44:19, 47:4, 47:23, 51:16, 53:12, 53:16, 53:21, 64:8, 69:2, 69:5, 69:13, 69:16, 70:10, 72:6, 72:21, 76:23, 77:3, 77:12, 79:9, 79:22, 80:17, 81:6, 86:25, 87:7
**parts** [1] - 64:2
**party** [12] - 29:15, 31:13, 33:11, 36:6, 44:9, 45:3, 45:19, 54:25, 81:13, 81:16, 81:17, 81:19
**pass** [6] - 5:5, 12:19, 46:24, 47:19, 48:18, 55:16
**pass...any** [1] - 46:10
**passed** [4] - 18:20, 18:22, 51:9, 55:13
**passing** [1] - 17:22
**past** [1] - 29:4
**patrol** [1] - 40:24
**patrolling** [1] - 63:17
**patrolmen** [1] - 71:21
**patrons** [1] - 17:10
**pause** [1] - 58:22
**pay** [4] - 11:23, 31:17, 31:25, 82:4
**paying** [1] - 31:14
**payment** [13] - 4:25, 9:20, 59:14, 66:7, 66:19, 66:20, 66:25, 76:1, 76:4, 76:6, 76:24, 77:4, 78:6
**payments** [1] - 66:1
**peace** [1] - 23:19
**peak** [2] - 66:14, 66:21
**pedophile** [2] - 18:17,

25:22
**penalties** [1] - 18:23
**pending** [2] - 85:12, 85:20
**people** [1] - 58:4
**percent** [1] - 74:7
**perception** [1] - 20:25
**perfectly** [1] - 22:22
**perforatory** [1] - 73:19
**perform** [1] - 59:7
**performance** [1] - 81:8
**performing** [1] - 17:9
**period** [5] - 56:15, 56:16, 60:18, 70:16, 72:17
**periods** [2] - 72:18, 76:9
**permanent** [1] - 75:19
**permissible** [2] - 15:22, 82:5
**permissive** [1] - 13:8
**permit** [42] - 8:10, 8:18, 9:9, 9:16, 9:21, 10:7, 10:25, 11:2, 11:5, 11:8, 11:13, 11:16, 12:2, 12:8, 12:10, 12:14, 12:21, 13:13, 13:20, 17:6, 17:17, 17:24, 18:11, 19:9, 29:8, 30:21, 48:9, 55:21, 55:22, 58:4, 58:16, 58:18, 59:12, 59:16, 62:9, 62:17, 65:18, 71:10, 75:10, 77:17, 88:25
**permits** [5] - 4:24, 10:18, 13:6, 13:8, 77:19
**permitted** [4] - 11:19, 22:24, 46:20, 65:22
**permittee** [3] - 9:16, 9:22, 57:1
**permitting** [5] - 8:25, 9:1, 64:15, 73:16, 75:4
**perpetrator** [1] - 40:25
**perpetuities** [1] - 56:24
**Pershing** [23] - 2:5, 9:11, 11:20, 16:4, 39:1, 39:23, 39:25, 51:22, 54:9, 54:11, 60:16, 61:21, 61:24, 71:1, 71:25, 72:4, 73:1, 74:2, 74:13, 75:8, 75:12, 75:25, 77:14
**PERSHING** [1] - 1:7
**person** [5] - 18:10,

18:16, 23:6, 23:8, 77:19
**personal** [2] - 45:4, 74:20
**personnel** [1] - 62:10
**persons** [2] - 24:7, 80:24
**pertaining** [1] - 60:15
**pertains** [1] - 11:14
**petition** [13] - 29:11, 30:17, 31:8, 31:22, 32:9, 32:10, 44:5, 54:19, 54:23, 55:1, 76:12, 79:13, 81:1
**place** [3] - 24:21, 27:17, 41:18
**places** [1] - 15:7
**placing** [1] - 3:21
**plain** [1] - 45:25
**plainly** [1] - 14:19
**plaintiff** [32] - 1:5, 2:11, 2:16, 8:10, 8:15, 8:16, 8:17, 8:20, 9:4, 11:7, 11:19, 11:23, 12:7, 13:6, 14:2, 14:4, 27:7, 28:21, 28:22, 29:15, 30:16, 44:5, 44:9, 45:5, 45:13, 45:19, 46:4, 49:18, 49:24, 50:11, 50:25, 51:9
**PLAINTIFF** [1] - 1:14
**plaintiff's** [5] - 4:15, 6:1, 10:25, 21:18, 51:2
**plaintiffs** [3] - 27:14, 36:3, 37:9
**planning** [2] - 83:7, 83:8
**play** [4] - 21:23, 22:15, 22:25, 86:11
**playa** [1] - 40:23
**plead** [1] - 7:3
**pleadings** [1] - 6:4
**plus** [1] - 46:22
**point** [7] - 8:8, 12:25, 19:4, 35:15, 41:2, 41:19
**pointed** [1] - 37:8
**points** [2] - 9:8, 38:11
**police** [10] - 4:25, 9:12, 9:19, 48:7, 49:9, 50:4, 50:7, 50:19, 68:20, 74:10
**policing** [1] - 60:20
**policy** [1] - 75:13
**population** [2] - 66:14, 66:21
**portion** [1] - 68:11

**position** [2] - 53:25, 58:3
**possession** [6] - 9:1, 9:2, 25:4, 25:10, 57:12, 58:14
**possible** [5] - 13:13, 18:9, 20:7, 63:24, 65:2
**possibly** [1] - 4:9
**potential** [1] - 77:6
**potentially** [3] - 8:1, 9:6, 88:22
**power** [6] - 38:15, 47:2, 49:9, 50:19, 50:22, 64:18
**Powers** [1] - 49:15
**powers** [1] - 9:19
**practically** [1] - 82:15
**practices** [1] - 9:15
**pre** [1] - 48:3
**pre-existing** [1] - 48:3
**preclude** [2] - 36:7, 36:11
**precluding** [1] - 31:17
**preempt** [3] - 10:19, 31:14, 80:12
**preempted** [5] - 11:4, 17:25, 79:23, 80:1, 80:18
**preemption** [8] - 10:15, 10:16, 11:12, 11:13, 80:9, 80:14, 80:16, 80:21
**Preemption** [1] - 10:20
**preface** [1] - 6:18
**prejudice** [5] - 26:20, 42:24, 42:25, 51:14, 52:4
**premises** [1] - 23:9
**premises'** [1] - 23:7
**premises...** [1] - 12:12
**prepare** [2] - 64:4, 78:18
**presence** [3] - 55:6, 59:1, 89:1
**present** [8] - 2:21, 5:19, 23:20, 24:17, 45:2, 54:14, 78:8, 85:18
**presented** [3] - 5:4, 32:23, 86:9
**presenting** [1] - 17:8
**preserve** [3] - 53:24, 82:20, 84:2
**preserved** [2] - 3:12
**preside** [1] - 31:16
**press** [4] - 64:4, 64:6, 64:7, 64:19
**presumably** [6] -

16:14, 19:25, 22:8, 35:12, 64:13, 79:4
**presumptively** [1] - 28:7
**pretext** [1] - 61:12
**pretextural** [2] - 61:13, 61:16
**pretty** [1] - 23:3
**prevailed** [1] - 6:1
**prevailing** [5] - 81:13, 81:16, 81:17, 81:19, 81:24
**preventing** [1] - 22:10
**previous** [2] - 32:19, 32:21
**previously** [4] - 30:6, 31:22, 32:1, 55:5
**previously-determined** [1] - 30:6
**previously-issued** [1] - 31:22
**Price** [1] - 66:24
**prices** [1] - 59:5
**prima** [1] - 49:19
**primary** [3] - 28:2, 83:8, 86:20
**principles** [1] - 69:11
**print** [2] - 20:4, 30:8
**priorities** [7] - 25:19, 63:11, 63:20, 63:23, 64:11, 64:19, 64:20
**private** [4] - 8:23, 19:21, 21:1, 37:10, 47:4, 47:13, 47:15
**privilege** [2] - 33:25, 34:3
**probable** [1] - 66:13
**problem** [5] - 3:6, 7:19, 10:14, 58:21, 65:24
**problems** [1] - 82:8
**procedure** [1] - 32:14
**proceed** [6] - 3:2, 3:6, 10:15, 29:4, 79:8, 79:21
**proceeding** [8] - 30:10, 31:5, 32:25, 33:7, 41:25, 44:8, 61:13, 81:2
**proceedings** [11] - 33:11, 35:1, 35:3, 35:4, 35:25, 43:8, 44:10, 45:7, 78:15, 84:20, 89:6
**process** [9] - 10:18, 18:13, 29:10, 31:10, 32:15, 38:15, 39:19, 73:16, 75:4
**Process** [2] - 29:18,

44:16, 44:17, 45:1
**produce** [1] - 24:17
**profanity...unless** [1] - 24:16
**prohibit** [6] - 13:17, 15:20, 16:17, 17:19, 23:13, 47:5
**prohibited** [7] - 5:15, 22:9, 25:2, 25:11, 39:25, 57:18, 88:14
**prohibiting** [5] - 5:22, 15:13, 40:19, 67:4, 88:16
**prohibition** [8] - 5:2, 15:14, 15:17, 20:1, 20:5, 20:13, 20:18, 54:20
**prohibitive** [1] - 24:9
**prohibits** [5] - 8:22, 16:22, 18:5, 19:13, 24:24
**promises** [1] - 78:7
**promote** [1] - 28:11
**promoted** [1] - 72:7
**promotes** [1] - 77:20
**proof** [5] - 7:18, 7:20, 28:3, 49:25, 83:18
**proper** [1] - 30:25
**properly** [5] - 30:14, 30:24, 31:4, 44:3, 81:7
**properly-elected** [2] - 30:24, 31:4
**property** [1] - 73:25
**proposed** [4] - 2:6, 27:3, 29:6, 52:4
**prosecute** [1] - 81:1
**prosecuted** [1] - 58:8
**prosecution** [1] - 58:13
**prospectively** [1] - 8:1
**prostitution** [1] - 24:8
**protect** [2] - 58:3
**protected** [17] - 14:6, 14:24, 15:6, 16:2, 16:23, 18:6, 21:15, 21:17, 22:5, 23:13, 25:1, 27:12, 28:2, 28:9, 28:15, 83:20
**protection** [1] - 13:19
**protections** [2] - 16:14, 18:7
**protects** [1] - 24:15
**prove** [1] - 73:10
**proven** [1] - 28:25
**provide** [15] - 9:4, 33:6, 46:21, 50:14, 56:24, 59:22, 60:9, 62:7, 63:15, 64:23, 65:1, 68:16, 73:4,

76:24, 77:4
**provided** [4] - 56:13, 65:17, 77:10, 85:5
**provides** [6] - 51:21, 51:25, 55:14, 55:24, 59:18, 76:7
**providing** [5] - 10:17, 10:18, 16:5, 57:12, 57:22
**provision** [28] - 23:12, 23:21, 24:23, 25:2, 25:5, 25:12, 35:17, 48:9, 58:15, 59:3, 59:11, 61:21, 63:6, 63:7, 63:18, 64:1, 64:13, 65:3, 68:20, 69:22, 72:20, 75:6, 75:7, 75:22, 81:24, 87:19, 87:20, 88:14
**provisions** [11] - 19:16, 36:1, 40:13, 55:15, 55:19, 61:24, 71:1, 71:3, 71:6, 77:17, 81:18
**public** [27] - 5:15, 8:23, 15:2, 15:7, 15:10, 19:21, 21:1, 21:5, 21:8, 24:19, 25:18, 25:19, 42:9, 47:9, 47:13, 47:25, 49:16, 54:10, 54:12, 55:5, 55:20, 60:4, 71:9, 71:16, 72:1, 72:5, 72:9
**publication** [1] - 64:11
**publicly** [1] - 22:24
**pure** [4] - 19:16, 25:6, 25:12, 29:1
**purport** [2] - 5:9, 13:17
**purported** [1] - 49:7
**purporting** [1] - 55:7
**purpose** [13] - 14:6, 22:10, 22:13, 23:1, 27:12, 27:17, 28:2, 28:18, 28:23, 47:25, 58:19, 63:13
**purposes** [5] - 11:3, 11:6, 24:8, 53:25
**pursuant** [2] - 26:22, 62:8
**pursue** [2] - 9:19, 78:16
**pursuing** [1] - 36:8
**pushing** [1] - 4:16
**put** [3] - 20:4, 47:21, 82:2

## Q

**qualified** [1] - 33:25
**questions** [1] - 82:21
**quite** [2] - 52:7, 87:3
**quote** [2] - 60:23, 62:24

## R

**raised** [3] - 17:17, 19:7, 38:11
**range** [1] - 66:21
**rated** [1] - 17:6
**rather** [2] - 8:13, 16:12
**RDR** [2] - 1:22, 89:8
**RE** [1] - 1:11
**reach** [2] - 3:23, 87:5
**reached** [2] - 41:15, 87:15
**reaching** [1] - 84:4
**read** [23] - 6:3, 6:13, 12:3, 26:10, 27:2, 29:18, 29:20, 29:25, 30:19, 40:9, 40:10, 40:13, 41:8, 41:22, 47:10, 49:1, 57:20, 65:23, 69:8, 70:13, 71:7, 87:14, 87:15
**reading** [5] - 12:4, 13:1, 13:2, 19:18, 26:6
**real** [5] - 7:21, 7:22, 8:3, 58:21, 59:9
**realize** [1] - 28:3
**realized** [1] - 73:9
**really** [2] - 13:24, 58:25
**reason** [2] - 6:11, 42:18
**reasonable** [9] - 46:20, 47:24, 48:5, 48:15, 50:8, 56:15, 56:16, 77:7, 81:13
**reasonably** [5] - 4:9, 48:10, 50:13, 51:5, 63:24
**reasons** [2] - 46:22, 86:16
**received** [2] - 42:10, 44:18
**recess** [3] - 88:10, 88:11, 89:3
**recitals** [1] - 54:17
**recitations** [1] - 54:8
**recognized** [1] - 71:3
**recommend** [1] - 36:5
**reconsider** [1] - 85:3
**record** [15] - 5:8, 6:5, 6:22, 9:12, 13:23,

17:19, 38:18, 43:14, 53:25, 82:18, 88:12, 88:20, 89:2, 89:6
**recounted** [1] - 27:14
**recourse** [1] - 69:11
**recover** [1] - 81:13
**recreation** [1] - 58:18
**recusal** [6] - 30:15, 44:4, 44:11, 44:15, 44:17, 45:2
**recused** [2] - 29:16, 31:24
**refer** [1] - 57:11
**reference** [7] - 62:1, 67:24, 68:4, 69:1, 70:5, 70:17, 70:22
**referenced** [1] - 69:22
**referral** [2] - 61:8, 61:19
**referring** [1] - 32:6
**reflect** [4] - 5:8, 13:23, 38:18, 64:7
**reflects** [1] - 30:4
**refuse** [1] - 62:18
**refused** [1] - 58:10
**refuses** [1] - 62:14
**regard** [1] - 72:14
**regarding** [1] - 81:12
**regulate** [12] - 5:13, 15:2, 15:4, 15:6, 15:8, 15:9, 47:3, 65:12, 71:17, 71:18, 88:24
**regulates** [1] - 71:15
**regulating** [1] - 3:16
**regulation** [5] - 10:24, 15:1, 55:19, 65:13, 71:5
**regulations** [6] - 12:11, 12:24, 14:23, 15:21, 16:1, 28:7
**regulatory** [1] - 10:17
**REID** [1] - 1:16
**Reid** [1] - 2:16
**reimbursement** [1] - 65:25
**rejection** [1] - 45:9
**related** [6] - 14:23, 16:1, 32:24, 42:1, 42:3, 78:11
**relating** [2] - 57:13, 74:1
**relation** [2] - 14:19, 25:3
**relative** [1] - 18:16
**release** [5] - 33:8, 34:12, 34:16, 34:24, 36:1, 37:5, 57:17, 57:25, 58:1, 58:2, 64:4, 64:6, 64:7,

64:19, 78:12
**releases** [1] - 78:7
**relief** [16] - 7:21, 7:22, 7:23, 8:1, 8:2, 8:3, 8:6, 30:16, 43:11, 43:14, 43:15, 44:11, 81:9, 83:8, 83:9, 83:10
**remaining** [1] - 84:20
**remains** [2] - 72:25, 87:25
**remember** [3] - 12:17, 49:25, 67:22
**remind** [4] - 10:20, 51:4, 61:6, 62:24
**remove** [2] - 79:14
**render** [1] - 66:3
**rendered** [1] - 45:7
**rendering** [1] - 82:13
**RENO** [1] - 2:1
**Reno** [4] - 1:7, 1:17, 1:20, 1:23
**repealing** [1] - 47:5
**repeated** [1] - 52:14
**repeating** [1] - 29:17
**replacement** [1] - 4:13
**Report** [4] - 57:10, 57:21, 64:23, 64:24
**report** [2] - 57:11, 73:11
**Reported** [1] - 1:22
**Reporter** [2] - 1:22, 89:9
**reports** [1] - 58:12
**represent** [1] - 39:22
**representation** [2] - 37:21, 37:23
**representing** [2] - 4:14, 38:3
**represents** [1] - 36:24
**repudiated** [1] - 27:15
**repudiates** [2] - 48:21, 49:3
**repudiating** [1] - 46:6
**repudiation** [4] - 49:22, 49:23, 50:23, 51:1
**request** [5] - 2:6, 36:3, 84:19, 84:24, 85:2
**requested** [4] - 52:3, 55:3, 83:9, 85:14
**requesting** [4] - 7:22, 8:3, 42:15
**require** [12] - 4:12, 13:7, 44:17, 45:1, 48:8, 49:10, 73:16, 73:20, 75:3, 75:5, 75:7, 77:16
**required** [19] - 9:16, 9:20, 9:21, 11:6,

11:22, 12:6, 13:11,
13:20, 29:7, 32:9,
40:15, 48:8, 48:9,
50:14, 64:10, 65:18,
75:13, 85:8, 85:20
**requirement** [10] - 9:4,
12:1, 12:13, 21:8,
23:7, 23:18, 23:20,
25:8, 57:19, 66:17
**requirements** [4] -
4:24, 8:17, 9:9, 73:1
**requires** [11] - 8:20,
9:25, 10:2, 16:12,
18:11, 46:21, 50:13,
53:3, 59:12, 62:23,
75:10
**requiring** [3] - 25:16,
52:20, 77:15
**rescinded** [1] - 77:11
**resents** [1] - 61:18
**reserve** [1] - 35:12
**Reserved** [1] - 49:15
**resolution** [2] - 3:23,
63:12
**resolve** [2] - 3:6, 13:4
**respect** [4] - 3:10,
68:20, 69:7, 70:14
**respective** [2] - 61:9,
61:19
**respectively** [1] - 14:2
**respects** [1] - 30:14
**respond** [2] - 18:25,
85:6
**response** [3] - 6:24,
59:23, 60:10
**responses** [1] - 59:20
**responsibilities** [1] -
47:23
**responsibility** [1] -
88:3
**responsible** [3] - 60:7,
60:14, 87:25
**responsive** [1] - 52:23
**rest** [1] - 71:12
**restated** [1] - 62:1
**restrict** [6] - 17:2,
17:3, 17:7, 17:8,
22:24, 37:8
**restricting** [1] - 21:14
**restrictions** [3] -
15:12, 16:12, 28:9
**restrictive** [2] - 13:6,
13:10
**result** [6] - 13:24,
20:12, 50:6, 59:4,
74:22, 77:1
**resulted** [2] - 74:22,
75:17
**resulting** [1] - 73:24
**retain** [7] - 26:20,

26:21, 42:20, 52:1,
52:16, 53:4, 84:10
**retained** [1] - 36:22,
37:12, 53:7
**retaining** [1] - 52:5
**retains** [2] - 19:25,
62:4
**retention** [2] - 37:14,
37:17
**retroactive** [1] - 47:7
**revelation** [1] - 66:12
**review** [15] - 2:6,
18:11, 21:12, 25:25,
28:8, 30:10, 30:20,
45:8, 45:10, 45:18,
54:5, 65:6, 76:12,
76:16, 82:17
**REVIEW** [1] - 1:11
**reviewed** [1] - 8:7
**revise** [1] - 27:5
**Revised** [1] - 8:21
**revised** [1] - 22:2
**revocation** [1] - 16:5
**revoke** [1] - 20:8
**revoking** [2] - 16:22,
18:5
**RICHARD** [1] - 1:16
**Richard** [5] - 54:12,
55:4, 78:12, 79:9,
79:22
**Rick** [1] - 2:15
**rid** [2] - 36:13, 82:15
**ridiculous** [1] - 6:4
**ridiculously** [1] - 59:4
**rights** [6] - 7:25,
29:11, 31:10, 32:15,
47:23, 87:13
**road** [1] - 58:8
**ROBERT** [1] - 1:2
**Rock** [34] - 1:4, 2:5,
2:11, 2:14, 4:4,
18:12, 18:16, 20:24,
51:23, 53:25, 54:7,
58:2, 58:9, 58:20,
58:23, 59:24, 61:23,
70:25, 72:3, 72:4,
72:8, 72:9, 72:16,
73:21, 74:11, 75:11,
75:24, 76:2, 76:10,
76:11, 77:18, 84:8,
85:5
**rolls** [1] - 80:15
**Rooker** [3] - 30:3,
30:8, 45:23
**Rooker-Feldman** [2] -
30:3, 30:8
**route** [1] - 45:5
**routine** [1] - 40:24
**rule** [9] - 3:2, 30:16,
44:21, 53:8, 56:23,

80:17, 82:17, 85:24
**Rule** [2] - 26:22, 28:22
**ruled** [1] - 44:16
**rules** [2] - 21:4, 38:6
**ruling** [12] - 11:9,
11:11, 11:14, 38:7,
45:14, 45:21, 53:7,
85:12, 85:15, 85:16,
86:5, 86:7
**rulings** [3] - 14:12,
86:10, 86:13
**run** [2] - 18:17, 77:7
**running** [1] - 58:24

## S

**Sable** [1] - 22:5
**sad** [1] - 29:1
**sale** [3] - 15:20, 25:5,
25:10
**San** [1] - 1:15
**sat** [1] - 80:2
**satisfied** [1] - 13:9
**satisfies** [2] - 17:16,
65:13
**saw** [2] - 79:2, 79:3
**scepticism** [1] - 29:1
**schedule** [4] - 4:25,
85:8, 85:19, 85:24
**scheduled** [1] - 82:21
**schedules** [1] - 75:14
**school** [2] - 53:15,
68:7
**scope** [2] - 21:8, 74:17
**scrutiny** [2] - 28:10,
29:7
**seated** [4] - 6:18, 8:12,
27:5, 43:23
**second** [3] - 19:13,
42:4, 42:5
**seconded** [1] - 52:14
**secondly** [1] - 40:22
**Section** [1] - 75:14
**section** [5] - 8:21,
16:10, 19:13, 70:2,
87:24
**sections** [1] - 74:4
**security** [1] - 53:22
**see** [9] - 24:21, 26:9,
42:22, 51:13, 71:8,
75:25, 82:18, 86:16,
87:7
**seek** [1] - 83:15
**seeking** [4] - 4:16,
10:9, 13:3, 54:20
**sees** [1] - 40:24
**selected** [1] - 80:14
**selectivity** [1] - 10:4
**selling** [1] - 19:14
**sells** [1] - 77:21

**sense** [1] - 34:10
**sentence** [3] - 54:3,
70:12, 72:12
**separate** [15] - 12:13,
16:12, 36:11, 42:8,
62:11, 62:13, 62:20,
63:3, 66:7, 66:22,
68:16, 68:18, 68:19,
76:24, 77:3
**separately** [2] - 19:24,
88:24
**serious** [4] - 24:18,
29:24, 30:13, 44:2
**serve** [1] - 22:10
**served** [1] - 54:25
**service** [4] - 59:7,
62:17, 68:17, 77:9
**Service** [2] - 71:23
**services** [34] - 4:25,
5:1, 11:8, 11:21,
11:23, 12:1, 46:21,
48:6, 48:9, 48:10,
48:12, 51:3, 51:22,
56:25, 57:22, 59:3,
59:14, 60:22, 62:6,
66:3, 67:5, 68:21,
69:6, 69:19, 69:25,
70:7, 70:18, 70:20,
72:14, 73:4, 73:5,
79:1
**Services** [1] - 70:3
**set** [7] - 14:16, 31:22,
31:24, 44:8, 60:18,
83:1, 85:3
**settle** [2] - 10:9, 13:4
**SETTLEMENT** [1] -
1:11
**settlement** [47] - 2:6,
2:24, 4:5, 6:14, 10:5,
10:10, 10:11, 13:16,
25:14, 26:19, 27:3,
29:6, 30:20, 42:9,
42:11, 42:16, 51:6,
51:12, 51:18, 51:20,
51:24, 52:2, 52:5,
52:9, 52:13, 52:20,
53:3, 54:7, 54:16,
54:21, 54:22, 55:7,
61:14, 62:4, 68:2,
68:19, 70:9, 70:10,
78:4, 81:4, 84:5,
84:7, 84:9, 87:4,
87:14, 88:6, 88:19
**seven** [2] - 73:14
**seventh** [3] - 25:8,
25:10
**several** [3] - 4:1,
30:13, 41:8
**sewage** [1] - 57:2
**sewer** [2] - 68:17, 77:7

**sex** [2] - 15:13, 17:10
**sexual** [3] - 17:4, 22:9,
24:8
**sexually** [1] - 17:8
**sexually-explicit** [1] -
17:8
**shall** [29] - 34:25,
40:9, 40:10, 40:13,
52:1, 52:3, 57:10,
64:22, 64:25, 66:19,
69:9, 69:14, 72:2,
72:22, 72:25, 73:22,
74:11, 74:13, 74:16,
74:18, 75:12, 75:14,
76:12, 78:13, 78:21,
79:23, 81:1, 81:13,
88:23
**sheriff** [11] - 25:15,
46:14, 57:11, 63:10,
63:21, 64:3, 64:20,
64:22, 64:25, 76:5,
88:2
**sheriff's** [19] - 9:17,
40:23, 59:13, 59:22,
59:25, 60:9, 60:25,
62:24, 64:10, 64:11,
65:5, 65:20, 65:21,
78:1, 87:25
**Shirley** [4] - 2:19,
29:12, 32:22, 39:20
**shops** [1] - 15:13
**short** [1] - 49:9
**shorten** [2] - 86:1,
86:3
**shorter** [1] - 88:23
**show** [7] - 17:9, 20:21,
21:21, 21:23, 22:15,
22:25, 26:4
**shown** [1] - 24:17
**side** [1] - 78:17
**sides** [2] - 33:8, 64:9
**signature** [2] - 10:12,
86:21
**signatures** [2] - 43:8,
57:8
**signed** [3] - 55:13,
86:23
**significant** [2] - 25:1,
60:23
**silence** [1] - 11:22
**similar** [2] - 38:17,
66:15
**similarly** [1] - 45:1
**simple** [1] - 47:21
**simply** [11] - 13:8,
21:2, 21:5, 27:24,
29:17, 31:25, 42:16,
43:7, 45:4, 50:1,
57:6
**sincerity** [1] - 87:10

**sit** [9] - 6:3, 6:12, 6:13, 27:2, 53:18, 53:20, 54:1, 54:4, 59:7
**situations** [2] - 59:23, 60:13
**six** [1] - 75:21
**sixth** [2] - 25:4, 46:4
**size** [1] - 74:17
**skipped** [2] - 13:2, 19:18
**So-and-So** [1] - 47:16
**sole** [1] - 65:20
**someone** [1] - 58:6
**somewhat** [1] - 35:14
**somewhere** [1] - 58:8
**soon** [2] - 63:24, 65:1
**sorry** [6] - 6:23, 34:18, 37:16, 48:14, 52:7, 60:1
**sought** [1] - 32:23
**South** [1] - 1:23
**sovereign** [3] - 7:12, 7:14, 7:19
**sovereignty** [1] - 49:12
**speaks** [1] - 56:12
**special** [7] - 48:9, 48:16, 58:18, 66:3, 71:17, 71:18, 77:17
**specific** [6] - 10:25, 11:12, 56:25, 60:14, 60:15, 81:8
**specifically** [12] - 8:19, 11:6, 12:6, 13:11, 16:21, 18:4, 42:11, 43:3, 43:6, 48:17, 68:14, 72:9
**specified** [2] - 69:14, 72:18
**speech** [29] - 3:16, 14:6, 14:23, 16:2, 16:23, 17:2, 17:3, 17:7, 18:6, 20:11, 20:22, 21:15, 21:16, 21:17, 22:5, 22:8, 22:9, 23:13, 24:16, 25:2, 25:3, 27:12, 27:18, 28:3, 28:19, 28:20, 35:6, 58:24, 83:20
**spent** [1] - 35:17
**spite** [1] - 50:3
**sponte** [1] - 85:3
**stage** [1] - 29:8
**stand** [3] - 39:21, 82:3, 84:8
**standing** [1] - 15:18
**stands** [1] - 88:5
**start** [2] - 10:22, 38:15
**state** [110] - 4:7, 4:19,

4:20, 4:22, 6:6, 9:13, 9:18, 9:23, 9:25, 10:8, 12:7, 12:11, 12:18, 12:23, 13:18, 13:21, 16:15, 16:23, 17:15, 18:6, 18:14, 18:15, 18:19, 19:1, 19:5, 19:6, 19:8, 24:7, 24:9, 25:5, 25:20, 26:8, 28:16, 30:6, 30:10, 30:15, 30:17, 31:1, 31:4, 31:8, 34:17, 35:25, 36:24, 37:1, 39:6, 39:11, 39:22, 40:24, 41:18, 44:4, 44:5, 44:6, 44:11, 44:18, 45:5, 45:6, 45:7, 45:13, 45:14, 45:20, 45:21, 46:7, 46:14, 46:15, 47:16, 48:5, 48:7, 48:21, 49:3, 49:10, 50:13, 51:4, 54:20, 54:23, 54:25, 55:16, 56:14, 56:17, 56:21, 57:18, 58:6, 59:9, 61:9, 61:20, 62:8, 65:9, 65:14, 65:22, 67:3, 67:4, 71:21, 71:24, 73:10, 73:12, 76:15, 76:19, 77:25, 79:8, 79:22, 79:25, 80:1, 80:8, 80:16, 80:20, 83:24, 86:19, 87:12, 88:1
**State** [7] - 6:10, 7:13, 18:18, 30:25, 31:14, 41:1, 69:10
**state's** [2] - 48:24, 49:6
**state-court** [2] - 45:5, 45:6
**state-mandated** [1] - 65:14
**state...shall** [1] - 46:10
**statement** [6] - 25:18, 27:20, 29:16, 29:17, 39:12, 87:11
**statements** [4] - 34:4, 54:13, 54:15, 55:5
**STATES** [1] - 1:1
**states** [3] - 12:10, 47:2, 47:5
**States** [6] - 5:22, 9:16, 61:7, 69:10, 69:15, 69:17
**status** [2] - 2:4, 66:22
**STATUS** [1] - 1:11
**statute** [47] - 4:7, 7:14,

9:25, 10:3, 10:4, 16:15, 17:15, 18:1, 18:14, 18:19, 18:21, 18:22, 19:1, 19:3, 19:6, 19:8, 24:13, 30:16, 38:20, 38:22, 38:23, 39:6, 39:16, 39:25, 40:4, 40:14, 40:15, 44:4, 50:13, 56:16, 56:21, 65:9, 65:22, 66:5, 67:3, 67:5, 67:9, 71:7, 73:3, 74:4, 77:25, 78:19, 80:8, 83:24, 86:20
**Statutes** [1] - 8:21
**statutes** [11] - 5:10, 5:11, 24:7, 25:22, 47:6, 48:5, 48:7, 51:4, 65:23, 67:6
**stay** [3] - 84:20, 85:12, 86:4
**still** [3] - 29:5, 75:20, 79:11
**stipulated** [1] - 52:2
**stipulation** [8] - 26:21, 32:8, 42:2, 42:3, 42:19, 51:14, 84:5, 84:14
**stood** [1] - 73:2
**store** [1] - 17:8
**Street** [1] - 1:23
**strict** [2] - 28:10, 29:7
**strikes** [1] - 83:23
**striking** [1] - 57:8
**stringent** [1] - 50:7
**strip** [1] - 50:21
**stripped** [1] - 49:23
**stripping** [1] - 50:11
**strong** [1] - 33:17
**strongly** [1] - 76:3
**struck** [1] - 29:14
**structure** [2] - 59:21, 60:8
**student** [1] - 12:4
**stuff** [1] - 67:21
**sua** [1] - 85:2
**subdivision** [1] - 7:13
**subject** [6] - 14:12, 72:15, 72:25, 79:7, 81:8, 81:25
**subsection** [2] - 21:25, 22:12
**subsequent** [2] - 53:6, 73:6, 73:7
**subsequently** [1] - 40:7
**substances** [1] - 9:2
**substantial** [2] - 14:17, 23:13

**substantive** [1] - 24:18
**successful** [1] - 83:21
**sued** [1] - 34:19
**sufficient** [5] - 7:18, 29:3, 73:22, 74:12, 74:17
**sufficiently** [4] - 27:15, 27:25, 28:21, 50:25
**suggest** [2] - 53:14, 85:9
**suggested** [1] - 17:20
**suggesting** [2] - 23:24, 32:2
**suggests** [2] - 35:11, 76:2
**suit** [1] - 52:20
**summary** [9] - 3:3, 28:1, 29:4, 38:10, 50:23, 82:18, 83:18, 84:3, 85:20
**supplied** [4] - 69:20, 69:25, 70:18, 79:1
**supply** [1] - 51:22
**support** [1] - 43:14
**suppress** [2] - 28:18, 35:6
**suppressing** [4] - 27:12, 27:17, 35:6, 58:24
**Supremacy** [2] - 11:25, 13:15
**Supreme** [15] - 15:11, 15:16, 24:14, 24:20, 30:4, 30:18, 44:6, 44:13, 44:16, 44:24, 45:12, 45:15, 45:16, 45:18, 49:12
**surrenders** [1] - 49:11
**survive** [4] - 28:10, 82:19, 83:15, 83:18
**suspect** [1] - 37:25
**Sutcliffe** [1] - 2:11
**system** [4] - 26:8, 31:15, 59:15, 59:17

**T**

**tailored** [1] - 28:11
**talks** [1] - 34:24
**TAMARA** [1] - 1:16
**Tamara** [1] - 2:16
**targeted** [1] - 63:15
**tempt** [1] - 44:20
**ten** [19] - 35:17, 67:1, 67:12, 67:16, 68:24, 69:1, 69:3, 69:6, 69:19, 69:21, 69:24, 70:9, 70:11, 70:16,

70:17, 70:20, 78:25, 79:3, 88:23
**ten-year** [10] - 69:1, 69:3, 69:6, 69:19, 69:24, 70:16, 70:17, 70:20, 78:25, 79:3
**term** [17] - 51:21, 51:25, 56:24, 65:25, 67:1, 67:23, 68:24, 69:2, 69:3, 69:19, 69:24, 70:17, 70:20, 78:25, 79:3, 79:5, 88:15
**terminate** [1] - 72:22
**termination** [2] - 70:21, 81:12
**terms** [8] - 11:21, 56:1, 67:25, 68:9, 69:18, 69:23, 77:23, 78:24
**testify** [2] - 23:15, 82:7
**THE** [132] - 1:2, 1:14, 1:19, 2:4, 2:23, 7:6, 7:8, 7:10, 25:25, 26:3, 26:9, 26:13, 26:15, 26:24, 28:6, 31:7, 31:19, 31:21, 32:4, 32:7, 32:14, 33:3, 33:12, 33:16, 33:19, 33:22, 33:25, 34:3, 34:7, 34:11, 34:22, 35:3, 35:5, 35:9, 35:16, 35:20, 35:24, 36:4, 36:10, 36:15, 36:18, 36:20, 36:22, 37:1, 37:5, 37:10, 37:12, 37:14, 37:17, 37:20, 38:1, 38:8, 38:12, 38:18, 38:24, 39:5, 39:10, 39:15, 39:21, 40:4, 40:9, 40:12, 41:2, 41:6, 41:12, 41:21, 42:5, 42:11, 42:14, 42:22, 43:2, 43:12, 43:16, 43:19, 43:22, 52:12, 52:14, 52:21, 52:25, 53:6, 53:11, 53:14, 53:17, 53:20, 53:22, 54:1, 54:4, 56:9, 56:11, 56:20, 67:13, 67:16, 67:19, 68:3, 68:6, 68:14, 69:4, 69:7, 70:4, 70:11, 70:14, 76:21, 79:13, 79:18, 80:4, 80:7, 80:11, 80:22, 82:24, 82:25, 83:2, 83:3, 83:5, 83:7, 84:12, 84:18, 84:22,

84:25, 85:7, 85:14, 85:22, 86:1, 86:3, 86:7, 86:10, 86:15, 87:2, 87:8, 87:10, 87:22, 88:4, 88:12
themselves [3] - 9:12, 58:3, 67:10
theory [1] - 18:8
thereafter [1] - 47:17
therefore [6] - 8:10, 18:8, 37:5, 45:21, 60:20, 72:6
Therefore [1] - 12:12
therefrom [2] - 79:23, 80:18
they've [2] - 49:21, 63:4
thinks [1] - 52:24
third [3] - 14:1, 14:7, 19:20
Thorndal [1] - 2:18
thousand [1] - 66:9
threat [1] - 40:10
threatens [1] - 23:19
threats [1] - 48:11
three [5] - 62:6, 64:3, 64:6, 64:17, 75:19
throughout [1] - 9:15
tickets [3] - 19:15, 58:11, 77:21
tie [2] - 23:1, 28:14
tobacco [1] - 15:20
today [1] - 86:14
together [1] - 25:17
tons [1] - 58:7
took [2] - 27:19, 29:18
totally [1] - 75:1
trafficking [2] - 18:23, 48:4
trailer [1] - 9:5
transaction [1] - 73:9
TRANSCRIPT [1] - 1:11
transcript [4] - 21:12, 41:8, 41:23, 89:6
transfer [1] - 81:18
transporting [1] - 18:15
trial [7] - 74:22, 82:20, 82:22, 82:23, 83:8, 83:10, 85:21
tribal [1] - 71:18
tried [1] - 16:25
true [4] - 29:23, 30:12, 44:2, 80:9
trying [3] - 24:1, 31:22, 88:15
turn [6] - 6:20, 24:21, 26:3, 51:6, 51:11, 70:23

twenty [1] - 66:8
twenty-five [1] - 66:8
two [7] - 5:18, 8:20, 9:8, 9:9, 25:16, 33:7, 57:5
type [3] - 40:3, 52:20, 66:12
types [2] - 15:21, 48:6

**U**

U.S [9] - 15:16, 30:3, 44:16, 44:24, 45:4, 45:12, 45:15, 45:18, 48:20
ultimate [1] - 23:1
unconstitutional [1] - 14:21
under [58] - 3:9, 5:20, 5:21, 7:12, 7:19, 7:20, 8:11, 11:8, 13:15, 14:15, 14:16, 15:14, 15:22, 18:18, 23:7, 24:10, 28:10, 28:22, 29:18, 30:15, 30:21, 31:7, 31:12, 40:8, 41:25, 44:4, 44:15, 46:7, 50:1, 50:12, 52:25, 55:19, 56:23, 59:21, 60:8, 64:13, 65:20, 67:8, 69:10, 69:13, 70:9, 71:6, 74:4, 76:1, 78:22, 79:24, 80:1, 80:8, 80:16, 81:2, 82:5, 84:10, 84:15, 85:19, 85:24, 88:7
undersigned [1] - 80:24
understood [1] - 39:24
undertakes [1] - 77:20
undoubtedly [1] - 17:3
unfair [1] - 88:17
unfortunately [1] - 50:5
United [6] - 5:22, 9:16, 61:7, 69:10, 69:15, 69:16
UNITED [1] - 1:1
unlawful [1] - 74:7
unless [6] - 20:4, 62:21, 71:19, 72:21, 77:10, 83:3
unlike [2] - 68:15, 68:18
unprotected [1] - 25:3
unquote [1] - 62:25
unreasonable [2] -

74:6, 75:18
unrest [1] - 24:19
up [17] - 2:20, 24:4, 24:6, 25:18, 26:7, 31:9, 37:2, 41:18, 45:18, 50:4, 50:5, 50:9, 61:13, 63:23, 74:25, 75:18, 78:3
upcoming [1] - 85:25
upheld [1] - 15:12
ups [1] - 18:23
upset [3] - 6:5, 6:11
uses [2] - 65:10, 65:11

**V**

valid [12] - 14:17, 14:19, 15:14, 22:19, 27:15, 46:23, 46:25, 48:24, 49:6, 57:24, 63:8, 64:1
validity [1] - 55:24
validly [2] - 79:10, 79:19
validly-elected [1] - 79:19
value [1] - 46:20
variety [2] - 42:10, 54:12
various [5] - 6:24, 48:6, 54:8, 74:4, 85:4
venue [5] - 18:17, 30:25, 69:12, 78:20, 78:22
venues [1] - 18:17
verbal [1] - 24:15
versus [3] - 2:5, 22:6, 62:13
veto [2] - 25:15, 64:18
via [2] - 10:24, 44:13
viable [2] - 25:1, 50:17
view [2] - 64:8, 64:15
violate [7] - 3:16, 20:2, 20:6, 20:14, 20:17, 46:24, 47:20
violated [4] - 29:11, 46:5, 54:23, 81:23
violates [3] - 14:3, 32:17, 51:1
violating [1] - 31:9, 63:5
violation [25] - 5:12, 7:24, 20:13, 21:7, 28:22, 40:24, 40:25, 45:23, 47:19, 48:19, 49:19, 50:10, 50:11, 50:14, 50:25, 51:4, 64:16, 67:4, 67:5, 67:6, 81:21, 82:3,

83:13, 87:16
violations [1] - 57:3
violative [3] - 15:1, 22:21, 23:25
violent [1] - 16:7
Virginia [1] - 1:23
virtually [2] - 6:7, 25:15
visiting [1] - 15:13
void [1] - 45:21
voters [5] - 10:9, 33:4, 35:12
vs [1] - 1:6
vulgar [4] - 8:24, 21:22, 22:14, 22:25

**W**

Wagner [32] - 30:22, 30:23, 31:16, 31:23, 32:1, 32:7, 32:10, 32:11, 32:15, 32:20, 32:23, 33:6, 33:9, 33:10, 34:12, 34:14, 34:16, 34:22, 34:25, 36:6, 36:12, 37:6, 54:12, 54:15, 55:4, 78:12, 78:16, 79:9, 79:23, 80:15, 80:18, 81:3
waived [2] - 34:18, 34:20
waiver [3] - 51:18, 54:6, 78:18
waives [1] - 4:23
walk [2] - 4:19, 60:3
walked [1] - 21:19
waltz [1] - 87:11
waltzed [1] - 6:6
wants [1] - 18:17
warned [4] - 3:17, 20:19, 20:20, 25:20
warning [5] - 20:15, 20:16, 21:2, 64:14
warnings [1] - 57:13
Washoe [1] - 17:6
watch [1] - 59:8
ways [3] - 13:8, 22:9, 23:25
weeks [1] - 25:17
welfare [5] - 47:9, 47:13, 49:16, 57:2
well-established [1] - 30:4
wheel [1] - 80:15
whereas [7] - 51:16, 51:20, 51:24, 71:2, 71:12, 71:25, 72:1
whole [2] - 61:8, 66:2
willingly [1] - 24:3

wishes [2] - 26:21, 53:4
withdrawn [2] - 84:4, 84:6
withhold [1] - 62:19
witness [2] - 82:2, 82:5
witnesses [3] - 58:11, 81:15, 82:1
wonder [1] - 77:24
wonderful [2] - 80:23
word [4] - 19:25, 40:4, 65:10, 65:11
words [8] - 18:10, 21:9, 56:16, 61:1, 62:3, 62:16, 62:21, 64:9
works [1] - 37:3
world [4] - 39:10, 65:6, 73:2, 74:24
writ [7] - 31:22, 32:20, 32:21, 32:23, 44:14, 54:19, 55:3
writing [7] - 57:11, 58:11, 62:14, 62:18, 62:21, 77:21, 85:16
written [6] - 18:14, 77:12, 84:22, 84:25, 86:11, 86:16
wrongful [1] - 73:24
wrote [2] - 30:24, 31:3

**X**

X-rated [1] - 17:6

**Y**

year [14] - 63:12, 66:24, 69:1, 69:3, 69:6, 69:19, 69:24, 70:16, 70:17, 70:20, 72:4, 75:18, 78:25, 79:3
year's [1] - 64:5
years [26] - 13:22, 56:7, 56:13, 67:1, 67:2, 67:10, 67:12, 67:13, 67:16, 67:23, 68:25, 69:22, 70:9, 70:11, 72:19, 72:23, 73:5, 73:6, 73:13, 74:23, 77:14, 77:24, 78:2, 88:22, 88:23
yourself [1] - 73:5
yourselves [1] - 66:11