# EXHIBIT JJ

# COMPREHENSIVE FESTIVAL ORDINANCE WAIVER, LAW ENFORCEMENT AND SETTLEMENT AGREEMENT BETWEEN BLACK ROCK CITY LLC AND PERSHING COUNTY, NEVADA

This Comprehensive Festival Ordinance Waiver, Law Enforcement and Settlement Agreement is hereby entered into by and between Black Rock City, LLC and Pershing County, Nevada (as well as its officials executing this agreement) (collectively, the "Parties"), on the effective dates indicated herein and continuing throughout the term defined herein.

## RECITALS

A.  Each year since 1998, Black Rock City, LLC (or its predecessors) has held the eight-day Burning Man Event in the area commonly called the Black Rock Desert, a site on public land formally known as the Black Rock Conservation Area and managed by the United States Department of Interior Bureau of Land Management. The Black Rock Desert is located partially within Pershing County, Nevada.

B.  BRC holds the Burning Man Event pursuant to a permit issued by the BLM. The BLM permit generally requires BRC to obtain law enforcement services for the Event from the County. Pursuant to this requirement, BRC and the County enter into an agreement whereby BRC pays, and the County supplies, such services for the Event.

C.  In 2004, Pershing County amended Pershing County Code Chapter 5.16, the Pershing County Festival Ordinance ("Festival Ordinance"), to require that a fee be paid to the County for any event occurring in the County where more than 1,000 people attend.

D.  A dispute arose between BRC and the County regarding the 2004 amendment to the ordinance, which dispute resulted in that certain "Agreement and Settlement" between the Parties executed November 14, 2005 (the "2005 Settlement Agreement"). The 2005 Settlement exempted the Burning Man Event from the application of Section 5.16 of the Festival Ordinance.

E.  Operating under the 2005 Settlement Agreement, BRC continued to hold the Burning Man Event in the Black Rock Desert. Further disputes arose between the parties regarding the fees charged to BRC for the provision by the County of law enforcement services and the proper amounts of donations under the 2005 Settlement Agreement. The parties dispute whether in January 2011, they entered into the "Amended and Restatement Agreement and Settlement" (the "2011 Settlement Agreement"), which purported to resolve their then-current disputes regarding law enforcement fees and donation amounts..

F.  Beginning in late 2011, the Pershing County Commissioners, District Attorney and other public officials within Pershing County including District Judge Richard Wagner made a variety of public statements indicating that they believed minors should not be present at the Burning Man Event. Judge Wagner also made statements that the 2005 and 2011 Settlement Agreements were invalid.

G.  In 2012, the Pershing County Commissioners amended the County's Festival Ordinance to increase the fees demanded for the Event, and the Sheriff also substantially

increased the fees demanded to be paid under the law enforcement agreement. The Parties dispute the reasons for these events.

H.     In 2012, the County demanded that BRC agree to revoke the 2005 and 2011 Settlement Agreements, and BRC refused to do so.

I.     On May 15, 2012, the District Attorney filed a Petition for Writ of Certiorari, Mandamus and/or Prohibition in Nevada State Court (the "State Petition") seeking to invalidate the 2005 and 2011 Settlement Agreements based on a claim that the Settlement Agreements violated state law. The Petition named the County Commissioners as Defendants. BRC was not named as a party, and BRC was not served with the State Petition. The County Commissioners, after consulting with independent counsel, declined to contest the requested writ, and a judgment was entered by Judge Richard Wagner (who, during County Commission meetings, had previously made public statements about the presence of minors at the Event and the invalidity of the Settlement Agreements) purporting to invalidate the 2005 and 2011 Settlement Agreements.

J.     On August 16, 2012, BRC filed a lawsuit in the United States District Court for the District of Nevada against the Pershing County Board of Commissioners, among others, alleging violations of the First Amendment to the Constitution and breach of contract, *Black Rock City, L.L.C v. Pershing County Bd of Comms.*, No. 3:12-cv-00435-RCJ-(VPC) (the "Federal Case").

K.     On May 27, 2013, the Nevada Legislature passed, and on June 1, 2013, the Nevada Governor signed, Nevada Assembly Bill 374. AB374 provides that notwithstanding the provisions of NRS 244.354 through 244.3548, inclusive, a board of county commissioners may, in its discretion, agree to exempt any assembly from regulation under the provisions of NRS 244.354 to NRS 244.3548 (and any county ordinance enacted pursuant thereto) where such assembly occurs on public lands and the assembly organizer obtains a permit from a federal agency to hold the assembly, and AB374 also provides for the validity and enforcement of such an exemption and of a law enforcement agreement beyond the terms of any board of county commissioners enacting such exemption and/or entering into such agreement.

NOW THEREFORE, the Parties desire to enter into this agreement pursuant to NRS 244.165 (*see Clark County v. Lewis*, 498 P.2d 363, 365 (Nev. 1972)) and pursuant to AB374 to compromise, settle and resolve all disputes among them, including the Federal Case, in a lasting fashion that will provide for the Burning Man Event to continue to be held in the Black Rock Desert and for Pershing County, working with BLM, to supply reasonable law enforcement services needed for the Event, and to that end the Parties hereby enter into the following agreement.

## AGREEMENT

1.     Definitions.

The following terms are specially defined terms as used herein, and such definitions apply throughout this agreement wherever these terms are found, including the recitals. The definitions herein shall control as to the interpretation of this Agreement, except to the extent that

there is any conflict in the definitions applicable to Section 2, in which case the definitions of Exhibit A shall control in interpreting Section 2.

- 1.1 **AAR (After Action Report)** shall mean and refer to a report made in writing by the Sheriff to BRC, providing all information in County possession relating to warnings and citations issued to, and arrests or detentions of, attendants at the Burning Man Event, and actual expenses incurred in connection with the Event, except to the extent the release of such information is prohibited by federal or state law.

- 1.2 **AB374** is legislation passed by the Nevada Legislature on May 27, 2013 and signed by the Nevada Governor on June 1, 2013, providing for Nevada counties to exempt outdoor assemblies, such as the Burning Man Event, from state and county licensing requirements that apply to outdoor assemblies, and that makes enforceable such exemptions beyond the terms of office of the public officials granting them..

- 1.3 **BRC** means Black Rock City LLC and all subsidiaries, affiliates, predecessors, successors and assigns.

- 1.4 **Board, Board of County Commissioners, County Commissioners, or Commissioners** means the Pershing County, Nevada Board of Commissioners, and each member thereof.

- 1.5 **BLM** means the Bureau of Land Management of the Department of Interior of the United States.

- 1.6 **BLM Permit** means any Special Recreation Permit issued by BLM to BRC for the purpose of holding a Burning Man Event in the Black Rock National Conservation Area.

- 1.7 **Burning Man Event or Event** is an assembly (within the meaning of NRS 244.3542) sponsored by BRC customarily occurring each year during a period of eight days prior to and including Labor Day on public land encompassed in whole or in part by the Black Rock Conservation Area managed by the BLM; any assembly sponsored by BRC on public land encompassed in whole or in part by the Black Rock Conservation Area shall qualify as a Burning Man Event so long as it occurs during a two-week period at any time from June 1 through and including Labor Day (the first Monday in September).

- 1.8 **County** means Pershing County, Nevada.

- 1.9 **Integrated Command** means a system of law enforcement at the Event which provides for the command, control, and coordination of emergency response to incidents that occur at the Event. Under the Integrated Command structure, the BLM and Sheriff's Office provide a coordinated response to situations at the Event. Each agency is responsible for the enforcement of specific laws pertaining to their specific jurisdictional oversight (BLM—federal and Pershing

County Sheriff's Office---State). The Integrated Command occurs during the set period of time coinciding with the Event in the geographical area of the Event. The number of officers needed for policing the Event is determined through a cooperative effort between the BLM and the Sheriff's Office, with input from BRC.

1.10 **May.** The word "may" as used throughout this document indicates discretion and does not require action.

1.11 **Peak Population** shall be defined as the maximum population of Black Rock City at any time during the Burning Man Event, as required by the BLM Special Recreation Permit.

1.12 **Separate Command** means a system of law enforcement whereby the BLM and Sheriff each separately coordinate their own respective commands and enforce the laws independently and within their respective jurisdictions, with the agencies each using their own independent dispatch system.

1.13 **Sheriff** means the Pershing County Sheriff.

2. Exemption from Pershing County Code Chapter 5.16

    2.1 That certain "Agreement to Exempt Black Rock City From Other Provisions Of Pershing County Code 5.16" (a copy of which is attached hereto as Exhibit A) ("Exemption Agreement") is hereby incorporated by reference as though fully restated herein.

    2.2 Upon the occurrence of a condition subsequent to this agreement that the amendment of Pershing County Code 5.16.230 to change the hiatus period referred to in that section from two to four years becomes effective, the Exemption Agreement likewise shall be automatically deemed to be amended so that the exemption shall automatically terminate if the Burning Man Event is not held for a period of four consecutive years on public lands managed by BLM and that events cancelled due to force majeure shall not count against this four-year period.

3. Law Enforcement Services

    3.1 The County will provide for the enforcement of state and local laws at the Event pursuant to the BLM permit, as part of an Integrated Command with BLM law enforcement personnel or, if both BRC and the County agree, as a Separate Command. If BLM refuses expressly and in writing to conduct an Integrated Command with County, then BRC shall not withhold its consent to a Separate Command.

    3.2 At least 30 days prior to the Event, the Sheriff will meet with BRC to disclose and discuss law enforcement priorities for that year. The purpose of the meeting will be to enhance Event coordination between law enforcement and BRC, and to

enable BRC to provide targeted information to participants to enhance compliance and cooperation with patrolling officers. If law enforcement priorities for the Event change following the meeting, the Sheriff will immediately notify BRC of the nature of the change in priorities and will arrange for a follow-up meeting with BRC as soon as reasonably possible to discuss the details.

3.3 Within three days of the Event, the Sheriff and BRC will meet to prepare a joint press release about the law enforcement activities at that year's Event. The press release will reflect a consensus view of the Parties. At the same meeting, the Sheriff and BRC will compile a list of media to receive the press release.

3.4 Within five days of the Event, the Sheriff and BRC will jointly submit the press release to the news organizations on the media list.

3.5 The Sheriff shall, within fourteen days after the Event, provide an After-Action Report. If the information for the After-Action Report is not yet available at that time, then Sheriff shall provide the information as soon as it becomes available.

3.6 The Sheriff's failure to comply strictly with the deadlines set forth in this Section shall not be considered a material breach by County of this agreement.

4. Payments

4.1 The maximum payment by BRC for all services of any kind supplied by the County or any of its officers, employees or contractors in connection with the Event, whether directly or indirectly (and other than Coroner Services, which are addressed in Section 4), shall be calculated as follows, and shall be divided by the County among its departments, agencies or nonprofit organizations as it deems appropriate in its sole and absolute discretion.

4.2 Each year that the Event is held in the County and the County supplies any law enforcement services to the Event other than Coroner Services, the base payment to the County by BRC will be determined based upon the Peak Population Chart below. The base payment chart will be selected based upon the command status of the officers supplied by the Sheriff.

| Peak Population | Base Payment (Integrated Command) |
|---|---|
| 1 to 59,999 | $230,000 |
| 60,000 to 69,999 | $240,000 |
| 70,000 to 79,999 | $275,000 |
| 80,000 to 89,999 | $335,000 |
| 90,000 to 99,999 | $375,000 |

| Peak Population | Base Payment (Separate Command) |
|---|---|
| 1 to 59,999 | $375,000 |
| 60,000 to 69,999 | $400,000 |
| 70,000 to 79,999 | $425,000 |
| 80,000 to 89,999 | $500,000 |
| 90,000 to 99,999 | $600,000 |

4.3 The base payment shall be determined by taking the Base Payment associated with the applicable range of Peak Population and command status, and then adjusting for inflation using the Consumer Price Index ("CPI"), assuming that 2014 is the Base Year. This shall be known as the "Inflation Adjusted Payment."

4.4 BRC shall make the Inflation Adjusted Payment in three installments. The first installment, for $75,000 (under Integrated Command, or $100K under Separate Command), shall be made on April 1.

4.5 The second installment of the Inflation Adjusted Payment, in the amount of $75,000 (under Integrated Command, or $100K under Separate Command), shall be made on August 1.

4.6 The third installment of the Inflation Adjusted Payment, calculated by subtracting $150,000 (under Integrated Command, or $200K under Separate Command) from the final calculation of the Inflation Adjusted Payment based upon the actual Peak Population at that year's event, shall be made on October 15.

4.7 In the event that County has to prosecute crimes arising at the Event which are punishable as a Category A felony under NRS 200.030(4); NRS 200.030(5); NRS 200.320; NRS 200.340; NRS 200.366(1); NRS 200.366(2); NRS 200.400; NRS 200.508; NRS 202.445(3); NRS 202.445(4); NRS 202.446(1); NRS 202.850(2); NRS 196.1685 or NRS 484.37955, BRC agrees to reimburse County the reasonable costs incurred by County in connection with such prosecution(s) for: expenses for witnesses, including statutory, travel, per diem, and costs of lodging; jury fees; expert witness fees; toxicology and laboratory fees; forensic fees; defense counsel fees; and other trial related costs. Any such payments shall be based upon complete documentation of such expenses supplied by County to BRC, and under no circumstances shall such expenses include capital or fixed costs.

5. Settlement Of Litigation

5.1 County agrees that for the duration of this agreement, it shall not attempt to separately regulate any matters addressed by the BLM Permit, including without limitation the use of alcohol and presence of children at the Event.

6BRC and Pershing Settlement Agreement

5.2 Upon duly authorized execution of this agreement by all Parties, the Parties shall file it with the United States District Court pursuant to a Stipulation for Settlement and Request for Dismissal in accordance with the terms herein.

5.3 In consideration of the payment and other promises contained herein, BRC fully releases and discharges the County, its present and former officers, employees, and agents, from any and all claims, demands, and causes of action against any of them arising out or related to the Federal Case. This release does not extend to Judge Richard Wagner, and shall not be construed to bar any ethics or disciplinary complaints or other proceedings that BRC may choose to pursue against Wagner.

5.4 In consideration of the payment and the other promises contained herein, County, Sheriff and Board of Commissioners, on behalf of themselves and all County officers, employees and agents, hereby fully releases, discharges, and covenants not to sue BRC, its members, employees, officers and agents, from any and all claims, demands, and causes of action against any of them based on any events or occurrences prior to the date of execution of this agreement.

6. Miscellaneous

   6.1 Governing Law and Venue

This agreement shall be governed and interpreted under the laws of the United States and the State of Nevada without recourse to conflicts of laws principles. The exclusive venue for any disputes between the Parties arising under or connected to this agreement (except for the matters specified in Exhibit A) shall be the United States District Court for the District of Nevada. The parties further agree that the United States District Court has continuing and exclusive jurisdiction over all terms of this agreement for the ten-year term of the law enforcement services agreed to be supplied herein. In the event that any action concerning this agreement lacks subject matter jurisdiction in such Court and must proceed in the Nevada state courts, the Parties agree that Judge Richard Wagner shall be preempted therefrom. In addition, the undersigned persons agree, in their official and individual capacities, that they shall not file or prosecute any lawsuit, petition or other proceeding arising under or connected to this agreement (including Exhibit A) before Judge Wagner.

   6.2 Entire Agreement

This is the entire agreement by the Parties with respect to any of the subject matter addressed herein, and supersedes all prior or contemporaneous discussion, communication or agreements, express or implied, written or oral, by or between the Parties as it pertains to any of the subject matter. This is a fully integrated agreement. The parties' course of conduct prior to 2013 included many disputes, and there is no last uncontested position with respect to which a course of conduct may be determined. Accordingly, in the event of ambiguity, course of conduct prior to 2013 shall not be used to interpret this agreement. This agreement is the product of an arm's-length negotiation in which both sides were ably represented by counsel, and had an opportunity to ask all questions and receive all advice necessary to understand the rights and obligations

imposed by this agreement. Neither party shall be considered the "drafter" for purposes of the doctrine of *contra proferentum*.

    6.3    Modification/Waiver

This agreement shall not be amended except in a writing duly authorized and signed by both Parties which expressly states it is intended to be an amendment to this agreement. No breach of this agreement may be waived except in a writing duly authorized and signed by the Party claiming injury from the breach. No waiver of any breach shall imply a waiver of any subsequent breach, even if they are of like kind or degree.

    6.4    Essence of the Bargain.

Except as otherwise indicated, each and all of promises set forth in this agreement and the Exhibits hereto form the essence of the bargain set forth in this agreement and are not severable from the remainder of this agreement; any attempt by a party to abrogate any of the promises herein shall entitle the other party to terminate this agreement for material breach, without prejudice to any other remedies.

    6.5    Enforcement

The Parties agree that any action to enforce this agreement is properly the subject of a claim for specific performance and/or injunctive relief. In any action to enforce this agreement, including without limitation an action regarding any termination of this agreement, the prevailing party shall recover its reasonable attorneys' fees and costs, including any fees of expert witnesses.

7. Authority and Execution.

    7.1    This agreement may be executed in counterparts, and such counterparts may be exchanged by electronic means.

    7.2    This agreement shall become valid and effective upon the chair of the Pershing County Board of Commissioners signing this agreement, and the Pershing County Clerk attesting to that signature.

    7.3    Each person executing this agreement on behalf of another party hereto represents and warrants that such party has duly authorized him or her to affix his or her signature.

    7.4    Each person executing this agreement on behalf of himself, herself or another party hereto represents and warrants that this agreement is duly authorized.

    7.5    Specifically, though without limitation, the person(s) executing this agreement on behalf of the County represent(s) and warrant(s) as follows:



(a) The Pershing County Board of Commissioners has held one or more public meetings and the members have exercised their informed and good faith judgment regarding the subject matters of this agreement;

(b) The agreement was voted upon and passed by a majority of the Pershing County Board of Commissioners in an open meeting;

Dated this ___ day of September, 2013

X _____
Darin Bloyed
Chairman

X _____
Pat Irwin
Commissioner

X _____
Carol Shank
Commissioner

X _____
James Shirley, Esq.
District Attorney

Pershing County Commissioners' signatures attested to by:

X _____
Lacey Donaldson
Clerk/Treasurer

Dated this 18th day of September, 2013

X _____
Raymond Allen
Government and Legal Affairs Manager

# AGREEMENT TO EXEMPT BLACK ROCK CITY FROM OTHER PROVISIONS OF PERSHING COUNTY CODE 5.16

WHEREAS, the Nevada State Legislature has recognized that, notwithstanding the provisions of NRS 244.354 through 244.3548 inclusive, a board of county commissioners may, at its discretion, agree to exempt any assembly from the regulation under the provisions of NRS 244-354 to NRS 244.3548 and the county ordinance enacted pursuant to those statutory provisions if the assembly occurs on public lands and the assembly organizer obtains an annual permit from a federal agency to hold the assembly.

WHEREAS, the Board of Pershing County Commissioners held a public hearing, received evidence and entered the appropriate findings to exercise its discretion.

WHEREAS, during hearings on AB374, the Board of Pershing County Commissioners committed to the Nevada Legislature to grant such an exemption to Black Rock City, LLC.

WHEREAS, the agreement was voted upon by the Board of Pershing County Commissioners in an open meeting and passed by a majority vote.

WHEREAS, the agreement shall become valid and effective upon the chairman of the board of county commissioners signing the Exemption Agreement and the clerk attesting to that signature.

WHEREAS, the agreement shall cover the assembly known as the "Burning Man Event" which is hosted by Black Rock City, LLC each year in the Black Rock Conservation Area in Pershing County, which is public land managed by the Bureau of Land Management.

WHEREAS, the Black Rock Event generally occurs in the eight days prior to and including Labor Day each year.

1

The Board of Pershing County Commissioners, having authority to bind Pershing County, a political subdivision of the State of Nevada and Black Rock City, LLC do hereby enter into this agreement with respect to the assembly known as the "Burning Man Event" which is held in the Black Rock Conservation Area of Pershing County during the week preceding Labor Day each year. The parties agree to the following terms and conditions:

1. The Burning Man Event which is organized, promoted, and managed by the Black Rock City, LCC, is an assembly which is held: (a) On public lands, specifically the Black Rock Conservation Area, which is managed by the Bureau of Land Management; and (b) During the week preceding and including Labor Day each year.

2. This agreement is subject to the Burning Man Event being held in the Black Rock Conservation Area of Pershing County during an eight to fourteen day period during the months of July and August and during the Labor Day Weekend in September.

3. Excluding periods when the Burning Man Event is not held due to flooding or some other similar Act of God and in the event that the Burning Man Event is not held for a period of two consecutive years on public lands managed by the Bureau of Land Management, this agreement shall be rescinded automatically.

4. Unless extended in writing by the parties, this agreement shall terminate on the 1st day of October, 2063.

5. The Burning Man Event, while this agreement remains in effect, shall not be subject to the requirements of Pershing County Code 5.16.010 to 5.16.220 *inclusive* unless otherwise declared by the Legislature of the State of Nevada.

6. In the event that the Burning Man Event is held in Pershing County in a location or at a time not contemplated by this agreement, the agreement shall not apply to the particular event which is not held and Black Rock City, LLC shall be required to comply with

the assembly law provisions in Pershing County Code 5.16 or obtain a separate exemption agreement.

7. If the Bureau of Land Management does not require insurance as part of its permitting process, the following conditions apply:

A. Black Rock City, LLC shall obtain and maintain for each assembly sufficient Commercial General Liability Insurance to cover damages resulting from: (a) Bodily injury incurred during the assembly, including wrongful death; (b) Property damage at or during the assembly; and (c) Constitutional or other claims based upon or relating to the exemption granted by Pershing County which discharges the assembly from the obligations imposed under NRS 244.354 to NRS 244.3548 and PCC Chapter 5.16; and

B. The assembly organizer shall name Pershing County, its officers and employees as an additional insured under the Commercial General Liability Insurance;

C. The amount of the insurance shall be sufficient to cover the size and scope of the assembly, but shall not be less than $1,000,000.00 for each occurrence and $1,000,000.00 for each personal injury;

D. The agreement is subject to insurance being obtained and maintained for each and every event; and

E. Black Rock City, LLC shall provide Pershing County with the standard Accord Certificate of Insurance form showing: (1) The specific limits of insurance; (2) Coverage modifications; (3) Appropriate endorsements; (4) Showing Pershing County, its officials and employees as additional insured parties under the policy; and (5) Stating that the insurance policies are to be endorsed to require the insurer to provide notice to Pershing County within thirty days of cancellation, non-renewal or any material reduction in insurance coverage;

8. In the event that the BLM Permit requires that Black Rock City to obtain and maintain insurance that the Pershing County shall be named as an additional insured on the Insurance Policy required by BLM and BRC shall comply with subsection (7)(E) above; and

9. In the event that a death occurs at any Burning Man Event, the county coroner or Sheriff acting as county coroner must be called upon to provide services and that:

A. The Sheriff or coroner may submit a bill to Black Rock City, LLC for: (1) The reasonable services related to responding to the call for a Coroner, including wages, mileage, per diem and other similar expenses; (2) Providing services relating to the death, including but not limited to an autopsy, transport of the body, and other expenses; and (3) Any other reasonable costs associated with providing coroner's services;

B. Black Rock City, LLC shall pay the bill within thirty days of billing;

C. In the event that Black Rock City, LLC disputes the bill:

(1) Black Rock City, LLC shall pay the bill within thirty days as required by this agreement and shall include a letter explaining in clear detail that the bill is contested, the basis on which the bill is contested, and detailed a claim for actual amount that would need be refunded if the Sheriff or coroner agrees to the claim;

(2) The Sheriff or coroner shall notify Black Rock City, LLC in writing within thirty days of any decision made on the contested amount of the bill and shall either refund such portions as are contested or deny the refund amount; and

(3) If the Sheriff or coroner denies the refund amount and Black Rock City desires to contest the Sheriff's/coroner's decision, Black Rock City, LLC shall request a hearing in writing before the Board of County Commissioners within two weeks of written

4

notification of the denial by filing the written request with the Pershing County Clerk/Treasurer;

(4) The request must set forth the specific facts relating to the dispute and propose a resolution to the dispute;

(5) The Board of Pershing County Commissioners shall hold a hearing to review the Sheriff's Decision;

(6) Within fifteen days of the hearing before the Board of Pershing County Commissioners, the Board of Pershing County Commissioners shall issue a written ruling denying the Black Rock City, LLC's Request, granting the Assembly Organizer's Request, or make some other determination;

(7) If the Black Rock City, LLC is aggrieved by the decision of the Board of Pershing County Commissioners, the Black Rock City, LLC shall file a petition for judicial review in the District Court within the time period set by law and shall have such rights for administrative review as set forth in chapter 233B; and

(8) Failure of Black Rock City, LLC to comply with any of the time frames set forth above shall constitute jurisdictional grounds for denying the requested relief sought by Black Rock City, LLC.

10. This Agreement shall be binding upon and benefit the County and BRC, as well as their successors and assigns as it relates to the Burning Man Event as described herein.

11. Definitions. As used herein, the following terms are defined as follows:

A. "Assembly" has the meaning ascribed to it in NRS 244.3542.

B. "BLM" means the Bureau of Land Management.

C. "Sheriff" means the Pershing County Sheriff.

D. "Board," "Board of County Commissioners," "County Commissioners," or "Commissioners means the Board of Pershing County Commissioners.

E. "County" means Pershing County.

F. "May" is discretionary and does not require action.

G. "BRC" means Black Rock City, LLC.

12. The Parties may enter in to a separate contract(s) that will provide for payment for anticipated impacts that the County will experience as a result of the Burning Man Event.

13. Unless otherwise provided for herein, any amendments to this Amended Agreement must be in writing, signed by duly authorized representatives of the Parties, and must state that the Parties intend to amend the Amended Agreement.

14. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada without reference to its conflict of laws principles.

15. This Amended Agreement constitutes the entire agreement between the Parties on the topics addressed herein and supersedes any and all other agreements the Parties, unless expressly stated otherwise herein.

16. Unless otherwise provided herein, this Agreement may be rescinded or amended only by mutual written agreement of the parties to this Agreement. For the duration of this Agreement, no future Pershing County Board of Commissioners may adopt an ordinance requiring, or in any other way require: (a) the application of the provisions of NRS 244.354 to 244.3548, inclusive, to the Burning Man Event, Black Rock City, LLC, or any other

6

person or organization who permits, maintains, promotes, conducts, advertises, operates, undertakes, organizes, manages or sells or gives away tickets to the Burning Man Event; or (b) any changes to the terms of this Agreement.

This Agreement is voluntarily entered into by the Parties on this 3rd Day of July, 2013.

_____
Ray Allen
Director, Government Affairs
Black Rock City, LLC


_____
Darin Bloyed, Chairman
Pershing County Board of Commissioners


Attested to by

_____
Lacey Donaldson

7